1  MELINDA HAAG (CABN 132612)
   United States Attorney
2
   J. DOUGLAS WILSON (DCBN 412811)
3  Chief, Criminal Division

4  PETER B. AXELROD (CABN 190843)
   JOHN H. HEMANN (CABN 165823)
5  Assistant United States Attorneys

6  RICHARD S. SCOTT (DCBN 502455)
   Trial Attorney, National Security Division
7
       450 Golden Gate Avenue, Box 36055
8      San Francisco, California 94102-3495
       Telephone: (415) 436-7200
9      Fax: (415) 436-7234
       Peter.Axelrod@usdoj.gov
10     John.Hemann@usdoj.gov

11 Attorneys for Plaintiff

12                   UNITED STATES DISTRICT COURT

13                   NORTHERN DISTRICT OF CALIFORNIA

14                        SAN FRANCISCO DIVISION

15 | UNITED STATES OF AMERICA,         ) Case No. CR 11-0573 JSW
                                       )
16 |     Plaintiff,                    ) UNITED STATES' MOTION IN LIMINE
                                       ) #1 TO ADMIT CO-CONSPIRATOR
17 | v.                                ) STATEMENTS
                                       )
18 | WALTER LIEW; CHRISTINA LIEW; USA  )
   | PERFORMANCE TECHNOLOGY, INC.;     )
19 | AND ROBERT MAEGERLE,              ) Pretrial Conference: December 16, 2013
                                       ) Time:                2:00 p.m.
20                                     )
   |     Defendants.                   )
21                                     )
                                       )
22

23
        PLEASE TAKE NOTICE that on December 16, 2013, at 2:00 p.m., before the Honorable Jeffrey
24
   S. White, United States District Court Judge, United States District Court, 19th Floor, Courtroom 11,
25
   450 Golden Gate Avenue, San Francisco, California, the United States of America ("United States"),
26
   hereby files this motion *in limine* to admit co-conspirator statements pursuant to Fed. R. Evid.
27
   801(d)(2)(E).
28

   UNITED STATES' MIL #1
   Case No. CR 11-0573 JSW

## MEMORANDUM OF POINTS AND AUTHORITIES

The United States hereby moves for an order admitting co-conspirator statements pursuant to Fed. R. Evid. 801(d)(2)(E).

**I.   ARGUMENT**

The United States intends to offer statements made by defendant Hou Shengdong as well as by employees of the defendant Pangang Group companies as co-conspirator statements.[1]  A statement made by a co-conspirator during and in furtherance of the conspiracy is not hearsay and is admissible against other members of the conspiracy.  Fed. R. Evid. 801(d)(2)(E); *Bourjaily v. United States*, 483 U.S. 171, 175 (1987); *United States v. Crespo de Llano*, 838 F.2d 1006, 1017 (9th Cir. 1987).  For the reasons set forth below, the United States requests that this Court admit the co-conspirator statements into evidence.

**A.   Summary of Co-Conspirator Statements To Be Offered at Trial**

In summary, the United States anticipates offering statements by co-conspirators during and in furtherance of the conspiracy, including: (1) documents from defendant and Pangang Group employee Hou Shengdong summarizing meetings with Performance Group (USA) and USAPTI concerning the titanium dioxide projects; (2) documents from defendant and Pangang Group employee Hou Shengdong summarizing meetings with consulting companies concerning the titanium dioxide projects; and (3) internal Pangang Group reports concerning the goals and plans for the acquisition of titanium dioxide technology for China.  Examples of the types of statements which the United States is seeking to admit into evidence are set forth as Exhibits Tabs 1-9 to this motion.[2]

**B.   The United States Has Made a Sufficient Threshold Showing To Conditionally Admit the Co-Conspirator Statements**

To introduce a statement of a co-conspirator into evidence against a defendant, the government need only establish – by a preponderance of the evidence – the existence of the conspiracy; the defendant's connection to it; and that the statement was made during and in furtherance of the

---

[1] The Chinese corporate defendants are: Pangang Group Company, Ltd.; Pangang Group Steel Vanadium and Titanium Company, Ltd.; Pangang Group Titanium Industry Company, Ltd.; and Pangang Group International Economic and Trading Company.  For ease of reference, these defendants will be referred to collectively as the "Pangang Group" in this motion.

[2] The statements set forth in Attachment 1 are not an exclusive list of co-conspirator statements.  Rather, in the course of pretrial preparation, the United States has identified various documents drafted by co-conspirators that the United States anticipates offering as evidence.  This motion addresses several categories of such statements.  The United States reserves the right to offer additional co-conspirator statements beyond those set forth herein.

conspiracy. *Bourjaily*, 483 U.S. at 175-76, 181-82; *United States v. Bridgeforth*, 441 F.3d 864, 869 (9th Cir. 2006); *Crespo de Llano*, 838 F.2d at 1017. In determining whether the requirements of the co-conspirator rule have been met, the Court can rely on any relevant evidence, whether admissible or not, including the co-conspirator statements themselves. *Bourjaily*, 483 U.S. at 175, 178-79.

### 1. Showing the Existence of a Conspiracy

The United States intends to establish the existence of the conspiracies to commit economic espionage and theft of trade secrets through the introduction of witness testimony and documents, including but not limited to the sources set forth below. Defendants Walter Liew, Hou Shengdong, and the Pangang Group are all charged in both the conspiracy to commit economic espionage in Count 1 and the conspiracy to commit theft of trade secrets in Count 2. Defendant Maegerle is charged in the conspiracy to commit theft of trade secrets in Count 2.

Documentary evidence, including contracts between USAPTI and the Pangang Group as well as records of payment by Pangang Group to Walter Liew's companies, Performance Group (USA) and USAPTI, will be introduced to show an agreement to transfer titanium dioxide technology to the Pangang Group in China. In addition, communications from Maegerle to Liew will be introduced to show that DuPont's proprietary and confidential information was provided to Liew to advance the titanium dioxide project with the Pangang Group.

Witness testimony will show that Walter Liew assembled a team of former DuPont employees, including Maegerle, to assist him in his efforts to convey DuPont technology to entities in China. Additional witness testimony will establish that the information provided over the years by Maegerle to Walter Liew and his companies constituted confidential and proprietary information of DuPont, including design information containing numerous features of technology directly misappropriated from DuPont. The proffered evidence thus demonstrates conclusively that both conspiracies, in fact, existed.

### 2. Showing the Defendants' Connection to the Conspiracy

Once a conspiracy is shown, the prosecution need only present slight evidence connecting the defendant to the conspiracy. *Crespo de Llano*, 838 F.2d at 1017 (citation omitted); *United States v. Mason*, 658 F.2d 1263, 1269 (9th Cir. 1981). Recognizing that conspiracies are

generally clandestine agreements not capable of direct proof, the Ninth Circuit has held that proof of a slight connection "may be inferred by circumstantial evidence." *United States v. Reed*, 575 F.3d 900, 923-24 (9th Cir. 2009). The court has further explained that the term "slight connection" means that the defendant need not have known all the conspirators, participated in the conspiracy from its beginning, participated in all its enterprises, or known all its details. *Id*. at 924.

The following evidence will establish the defendants' connections to the conspiracy: (1) Maegerle, who had detailed knowledge of DuPont's titanium dioxide technology and expertise in building titanium dioxide production lines, provided proprietary and confidential DuPont information and photographs to Walter Liew during the negotiation of a contract for titanium dioxide; (2) Walter Liew provided detailed information to Pangang Group regarding the design and construction of the new titanium dioxide facility, including confidential, proprietary information provided to him by Maegerle; (3) During the technology exchanges between Walter Liew's companies and Pangang Group employees, Hou Shengdong and an official from Pangang Group asked Liew for DuPont blueprints and the names of former DuPont employees who would work on the titanium dioxide project; (4) After execution of a contract for a titanium dioxide project, Walter Liew's company held a series of meetings with Pangang Group in San Francisco and in China in order to advance the project; (5) Defendant Walter Liew concealed trade secret material in his residence in Orinda, California.

### 3. Showing that the Statements Were Made During and in Furtherance of the Conspiracy

To be "in furtherance" of a conspiracy, the statements must further the common objectives of the conspiracy or set in motion transactions that are an integral part of the conspiracy. *United States v. Yarborough*, 852 F.2d 1522, 1535-36 (9th Cir. 1988) (citations omitted). Statements made to enlist or further participation in the group's activities; statements intended to prompt action by co-conspirators; and statements made to advise co-conspirators of the group's activities are all recognized to be "in furtherance of" a conspiracy. *Id*. To determine if a statement was made "in furtherance," a court should look to the declarant's intent in making the statement, not the actual effect in advancing the goals of the conspiracy. *United States v. Zavala-Serra*, 853 F.2d 1512, 1516 (9th Cir. 1988). A statement in

UNITED STATES' MIL #1
Case No. CR 11-0573 JSW                 3

furtherance of a conspiracy may be admissible under Fed. R. Evid. 802(d)(2)(E) regardless of whether the agreement is lawful or unlawful and even in the absence of a charged conspiracy. *See* Fed. R. Evid. 801(d)(2)(E), Notes of Committee on the Judiciary, Senate Report No. 93–1277.

Here, the co-conspirator statements were plainly in furtherance of the conspiracy. The statements to be offered represent efforts by the defendants to organize and execute the titanium dioxide projects at the heart of the economic espionage and trade secret theft conspiracies. It also bears noting the circumstances under which the materials discussed below were seized. All of the co-conspirator statements discussed in this motion were in documents located in various guest rooms at the Rodeway Inn in Alameda, California on July 20, 2011, after the FBI located multiple Pangang group employees staying at that establishment while they were in the United States to meet with USAPTI concerning the ongoing titanium dioxide project.[3] Below is a description of certain categories of co-conspirator statements within the Rodeway Inn documents and a brief discussion of how these statements were made during and in furtherance of the conspiracy.

### a. Summaries of Meetings Between Pangang Group and Walter Liew's Companies

Documents located in Room 117 at the Rodeway Inn, a room occupied by defendant Hou Shengdong, a project manager for Pangang Group on the titanium dioxide project, include summaries of meetings between Pangang Group and Walter Liew's companies, Performance Group (USA) and USAPTI. *See* Exhibits 1-4.[4] These documents, which appear to have been drafted by defendant and co-

---

[3] The FBI located the Pangang Group employees at the Rodeway Inn on the same day a search warrant was executed at the Liew residence. During that search, FBI agents found safe deposit box keys. Speaking in Mandarin Chinese, Walter Liew directed his wife, Christina Liew, to deny knowing anything about the keys, and she followed his direction and told the FBI that she did not remember the safe deposit boxes. While the search was ongoing, Christina Liew, unaware she was being surveilled by the FBI, left her residence and drove to the Bank of East Asia branch in Oakland, California. It was subsequently determined that one of the safe deposit box keys located in the search corresponded to a safe deposit box at the Bank of East Asia, and this box was found to contain information regarding USAPTI and USAPTI's relationship with Pangang Group, as well as other records, documents, and objects relevant to the FBI's investigation, to include copies of trade secret materials. After leaving the Bank of East Asia in Oakland, and still under surveillance by the FBI, Christina Liew drove to the Rodeway Inn in Alameda, where seven Pangang Group employees were staying while visiting the area for meetings with USAPTI concerning the titanium dioxide project. The FBI subsequently executed search warrants on the Pangang Group rooms at the Rodeway Inn and found numerous documents, in both electronic and hard copy format, relating to the titanium dioxide project.

[4] Exhibits 1 & 2 were seized from a computer located in Room 117, and a review of the contents of this computer indicated that the device was used by defendant Hou Shengdong. Exhibits 3 & 4 were seized from thumb drives located in Room 117, where Hou Shengdong and another Pangang employee were staying.

UNITED STATES' MIL #1
Case No. CR 11-0573 JSW                4

conspirator Hou Shengdong, describe in detail the information on titanium dioxide manufacturing processes provided by Walter Liew and his companies. The documents make specific reference to DuPont technology and processes, and one document describes the methods by which co-conspirator Pangang Group went about selecting a company with which to contract on a chloride-route titanium dioxide factory in China. Such summaries constitute co-conspirator statements, as they are documents drafted by, and in the possession of, Pangang Group employees and are statements that were made both to prompt action by co-conspirators and to advise co-conspirators of the group's actitivties. *See Yarborough*, 852 F.2d 1535-36. The summaries functioned as progress reports that assisted Pangang Group in keeping the project on schedule and creating records of the work performed by Walter Liew and his companies (and would thus assist in providing additional taskings on the project). The documents summarizing the Pangang Group's interactions with Walter Liew therefore clearly advanced the goals of the conspiracy and should be admitted as co-sonspirator statements. *See Zavala-Serra*, 853 F.2d at 1516.

### b. Summaries of Meetings Between Pangang Group and Titanium Dioxide Consultants

Much like the summaries discussed above, additional summary documents located in Room 117 at the Rodeway Inn constitute co-conspirator statements. *See* Exhibits 5-7.[5] These documents, which appear to be drafted by defendant and co-conspirator Hou Shengdong, summarized meetings and project developments with consulting companies retained to assist with the titanium dioxide projects. These documents provide a review of the consultants' assessments of the titanium dioxide technology already transferred to Pangang Group, including analysis of specific components and subprocesses. *See, e.g.*, Exhibit 5 at 1-3. The summaries address the status of the titanium dioxide projects, including extensive reference to DuPont technology included in the information already provided by defendants Walter Liew and Maegerle. These summaries clearly advanced the goals of the conspiracy, as the meetings described therein were convened to review the information and materials submitted by USAPTI

---

[5] Exhibits 5-7 were seized from a computer located in Room 117, and a review of the contents of this computer indicated that the device was used by defendant Hou Shengdong.

UNITED STATES' MIL #1
Case No. CR 11-0573 JSW  5

regarding the titanium dioxide project and resulted in specific suggestions by the consultants for improving the designs provided by USAPTI.[6]  *See Zavala-Serra*, 853 F.2d at 1516.

### c. Internal Reports from Pangang Group Regarding the Strategic Devlopment of the Titanium Dioxide Industry

Another document located during the search of the Rodeway Inn concerns the Pangang Group's analysis of the worldwide titanium dioxide industry and the Pangang Group's future in that industry. The document was located in Room 208, which was occupied solely by Zhuang Kai, the Chief Executive Officer of the Pangang Group Titanium Industry Company, Ltd.  *See* Exhibit 8.[7]  The report explains the difficulties of acquiring western titanium dioxide technology and specifically notes that DuPont has the "most advanced production technology" and that current Chinese titanium dioxide was "visibly lagging behind DuPont products in both quality and quantity."  *Id.* at 6.  This report serves as a guide for acquisition of titanium dioxide production technology, and functions to prompt action by co-conspirators, *see Yarborough*, 852 F.2d at 1535-36, as it discusses a need in China for the very technology acquired through the conspiracies to obtain confidential, proprietary information regarding the titanium dioxide manufacturing process and thus spells out a motivation for Pangang Group to seek such technology through illicit means.[8]

---

[6] In fact, one of the documents indicates that a consulting company warned Pangang Group that the oxidation reactor was DuPont's proprietary technology.  *See* Exhibit 5 at 1-2.

[7] The report found at Exhibit 8 was seized from a computer located in Room 208, and the occupant of that room, Zhuang Kai, signed the property receipt for the computer at the time of seizure.  An additional internal Pangang Group report, found at Exhibit 9, was located in Room 117 on a computer used by defendant Hou Shengdong.

[8] Even if the Court determines that the reports at Exhibits 8 & 9 do not satisfy the requirements of the co-conspirator rule, the documents should still be admitted into evidence under the residual exception in Fed. R. Evid. 807.

## II. CONCLUSION

For the reasons set forth above, the United States respectfully submits that it has made the necessary preliminary showing under Fed. R. Evid. 801(d)(2)(E) and *United States v. Bourjaily* for this Court to admit the co-conspirator statements.

DATED: November 15, 2013

Respectfully submitted,

MELINDA HAAG
United States Attorney

  /s/
PETER B. AXELROD
JOHN H. HEMANN
Assistant United States Attorneys

RICHARD S. SCOTT
Trial Attorney