PAGES 1 - 83

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

UNITED STATES OF AMERICA,      )
                               )
            PLAINTIFF,         )      NO. CR-11-0573 JSW
                               )
  VS.                          )      THURSDAY, JULY 10, 2014
                               )
WALTER LIEW AND                )      OAKLAND, CALIFORNIA
USA PERFORMANCE                )
TECHNOLOGY, INC.,              )
                               )
            DEFENDANTS.        )      SENTENCE
_____)

**BEFORE THE HONORABLE JEFFREY S. WHITE, JUDGE**

<u>**REPORTER'S TRANSCRIPT OF PROCEEDINGS**</u>

<u>**APPEARANCES:**</u>

**FOR PLAINTIFF:**          MELINDA L. HAAG, ESQUIRE
                            UNITED STATES ATTORNEY
                            450 GOLDEN GATE AVENUE, BOX 36055
                            SAN FRANCISCO, CALIFORNIA  94102
                  BY:  JOHN H. HEMANN,
                       PETER B. AXELROD,
                       RICHARD S. SCOTT,

                       ASSISTANT UNITED STATES ATTORNEYS


**FOR DEFENDANT:**          KEKER & VAN NEST
                            633 BATTERY STREET
                            SAN FRANCISCO, CALIFORNIA 94111
                  BY:  STUART L. GASNER, ESQUIRE
                       SIMONA AGNOLUCCI, ESQUIRE
                       KATHERINE LOVETT, ESQUIRE

**ALSO PRESENT:**           JESSICA GOLDSBERRY, U.S. PROBATION

**REPORTED BY:**            DIANE E. SKILLMAN, CSR 4909, RPR, FCRR
                            OFFICIAL COURT REPORTER

TRANSCRIPT PRODUCED BY COMPUTER-AIDED TRANSCRIPTION

| | |
|---|---|
| 1 | THURSDAY, JULY 10, 2014                                    10:03 A.M. |
| 2 | P R O C E E D I N G S |
| 3 | THE COURT:  GOOD MORNING, EVERYBODY.  PLEASE BE |
| 4 | SEATED. |
| 5 | PLEASE CALL THE CASE. |
| 6 | THE CLERK:  CALLING CASE NUMBER 11-573 UNITED STATES |
| 7 | VERSUS WALTER LIEW AND UNITED STATES VERSUS USA PERFORMANCE |
| 8 | TECHNOLOGY, INC. |
| 9 | COUNSEL, PLEASE STEP FORWARD TO THE PODIUMS AND STATE YOUR |
| 10 | APPEARANCES. |
| 11 | MR. HEMANN:  GOOD MORNING, YOUR HONOR.  JOHN HEMANN |
| 12 | PETE AXELROD AND RICHARD SCOTT FOR THE UNITED STATES. |
| 13 | THE COURT:  GOOD MORNING. |
| 14 | MR. GASNER:  GOOD MORNING, YOUR HONOR.  STUART |
| 15 | GASNER, ALONG WITH SIMONA AGNOLUCCI AND KATHERINE LOVETT FOR |
| 16 | DEFENDANT MR. WALTER LIEW AND DEFENDANT USAPTI. |
| 17 | THE COURT:  GOOD MORNING. |
| 18 | EVERYBODY CAN BE SEATED AT THIS POINT.  I WILL CALL PEOPLE |
| 19 | UP AS NEEDED.  AND I WILL ASK THE PROBATION OFFICER TO BE |
| 20 | SEATED AS WELL DURING THE PROCEEDINGS. |
| 21 | SO WE ARE OBVIOUSLY HERE FOR THE IMPOSITION OF SENTENCE ON |
| 22 | MR. LIEW AND USAPTI.  THE FIRST QUESTION I WANT TO ASK |
| 23 | GOVERNMENT COUNSEL IS, HAS THE GOVERNMENT RECEIVED ALL OF THE |
| 24 | PRESENTENCE REPORTS IN BOTH CASES AS WELL AS ALL OF THE |
| 25 | SENTENCING MEMORANDA AND EXHIBITS? |

1    **MR. HEMANN:**  I BELIEVE SO, YOUR HONOR, YES.

2         **THE COURT:**  DOES THE GOVERNMENT HAVE ANY ADDITIONAL

3    OBJECTIONS TO THE ONES IT'S ALREADY MADE TO THIS COURT?

4         **MR. HEMANN:**  NO, YOUR HONOR.

5         **THE COURT:**  MR. GASNER, SAME QUESTIONS TO YOU AND

6    YOUR TEAM.  HAVE YOU RECEIVED AND GONE OVER WITH YOUR CLIENT

7    THE PRESENTENCE REPORTS FOR BOTH DEFENDANTS?

8         **MR. GASNER:**  YES.

9         **THE COURT:**  YOU HAVE SEEN ALL OF THE MEMORANDA?

10         **MR. GASNER:**  YES.  THE SENTENCING MEMORANDA.  WE JUST

11    RECEIVED YESTERDAY DU PONT'S LETTER THAT HAD BEEN SUBMITTED,

12    BUT I HAVEN'T HAD A CHANCE TO GO OVER THAT WITH MR. LIEW, BUT

13    I DO HAVE IT.

14         **THE COURT:**  OTHER THAN WHAT YOU SUBMITTED IN WRITING,

15    DO YOU HAVE ANY ADDITIONAL OBJECTIONS?

16         **MR. GASNER:**  NO ADDITIONAL OBJECTIONS OTHER THAN IT'S

17    IMPLICIT IN OUR ARGUMENTS TODAY.

18         **THE COURT:**  ALL RIGHT.  VERY WELL.  PLEASE BE SEATED.

19    SO THE COURT'S GOING TO HAVE SOME REMARKS TO MAKE, AND

20    THEN AS NEEDED, I WILL ASK FOR INPUT FROM COUNSEL AND, OF

21    COURSE, WILL PROVIDE THE DEFENDANTS AN OPPORTUNITY TO ELOCUTE

22    OR SPEAK IN REFERENCE TO THEIR SENTENCE, RESPECTIVE SENTENCES.

23    AND SO AS IS THE COURT'S USUAL PRACTICE, I WILL ONLY ALLOW

24    COUNSEL TO ADDRESS THE COURT ON ISSUES THE COURT SPECIFICALLY

25    NEEDS AND WANTS INPUT FROM COUNSEL BECAUSE THE PARTIES HAVE,

1       PUTTING IT MILDLY TO SAY THE PARTIES HAVE SUBMITTED EXTENSIVE

2       BRIEFING AND EXHIBITS WITH RESPECT TO THESE PROCEEDINGS WHICH

3       THE COURT APPRECIATES BECAUSE THE MORE INFORMATION THE BETTER.

4           SO PURSUANT TO THE ORDER ISSUED ON JULY 8TH, 2014, THE

5       COURT HAS CONSIDERED THE PARTIES' REQUEST FOR EVIDENTIARY

6       HEARINGS ON THE ISSUES OF THE AMOUNT OF LOSS AND THE ISSUES

7       PERTAINING TO MR. HOUSTON AND MR. SPITLER, AND IT IS

8       DETERMINED THAT AN EVIDENTIARY HEARING -- DETERMINED, AS SET

9       FORTH IN THAT ORDER, THAT AN EVIDENTIARY HEARING WAS NOT

10      NECESSARY.

11          THE NEXT ISSUE THAT I WANT TO ADDRESS IS THE ISSUE OF

12      VICTIM IMPACT.  SO, BEFORE THE COURT CONTINUES THESE

13      PROCEEDINGS, OR BEGINS THEM IN EARNEST, ARE THERE ANY VICTIMS

14      PRESENT IN COURT WHO WISH TO MAKE A STATEMENT TO THE COURT

15      PURSUANT TO 18, UNITED STATES CODE, SECTION 3771(A)(4) AND

16      PURSUANT TO KENNA V. UNITED STATES DISTRICT COURT FOR THE

17      CENTRAL DISTRICT OF CALIFORNIA, 435 F.3D, 1011 AT 1016 DECIDED

18      BY THE NINTH CIRCUIT IN 2006.

19          MR. HEMANN?

20          **MR. HEMANN:**  YOUR HONOR, WE'RE AWARE THAT ONE OF THE

21      ATTORNEYS FOR DU PONT IS PRESENT.  WE HAVE ASKED HIM WHETHER

22      HE WOULD LIKE TO SPEAK.  HE HAS ADVISED US, UNLESS THE COURT

23      HAS QUESTIONS CONSISTENT WITH THE COURT'S PRACTICE, HE DOESN'T

24      HAVE ANYTHING IN ADDITION TO THE LETTER THAT THE COURT HAS

25      RECEIVED A COPY OF, BUT CERTAINLY IS AVAILABLE TO ANSWER ANY

1    QUESTIONS THAT THE COURT MIGHT HAVE.

2       I'M NOT AWARE OF ANY OTHER VICTIMS WHO ARE IN COURT RIGHT

3    NOW.

4            **THE COURT:**  VERY WELL.  THE COURT DEEMS THAT THE

5    VICTIMS' RIGHTS STATUTE THEN HAS BEEN COMPLIED WITH.

6       NOW, WITH RESPECT -- THE NEXT ISSUE THE COURT WISHES TO

7    ADDRESS ARE THE NUMEROUS OBJECTIONS TO THE PRESENTENCE

8    REPORTS.

9       I WANT TO SAY AS AN ASIDE, THAT WITHOUT INDICATING AT THIS

10   POINT, BECAUSE I HAVEN'T HEARD THE STATEMENTS OF THE

11   DEFENDANTS OR ANY RESPONSES TO ANY QUESTIONS, THE COURT

12   CERTAINLY HASN'T MADE UP HIS MIND FINALLY AS TO WHAT TO DO AS

13   FAR AS SENTENCING, BUT THE COURT'S FOUND THE PRESENTENCE

14   REPORT TO HAVE BEEN DONE IN AN EXCELLENT FASHION,

15   PROFESSIONAL, HELPFUL TO THE COURT, AND I THINK ATTEMPTED TO

16   AND ACHIEVED FAIR REPRESENTATION OF THE PARTIES' RESPECTIVE

17   POSITIONS, ESPECIALLY WITH REGARD TO THEIR FACTUAL OR

18   EVIDENTIARY CONTENTIONS.  AND THE WAY IT WAS PRESENTED BY THE

19   PROBATION OFFICER, IT WAS VERY HELPFUL TO THE COURT AND THE

20   COURT APPRECIATES THAT EXCELLENT WORK.

21      NOW, THE PARTIES HAVE MADE EXTENSIVE OBJECTIONS TO FACTUAL

22   ASSERTIONS IN THE PSR.  SEE DOCKET 853.  ALSO THE DEFENDANTS',

23   WHICH IS THE DEFENDANTS' SENTENCING MEMORANDUM APPENDIX 2,

24   DOCKET NUMBER 857, WHICH IS THE GOVERNMENT'S AMENDED

25   SENTENCING MEMO, AT PAGES 8, LINE 26 THROUGH PAGE 10, LINE 25.

1    THE COURT, IN RESPONSE, STATES THAT IT DID SIT THROUGH

2    THIS TRIAL AND IS AWARE OF THE FACTS THAT ARE IN DISPUTE.  THE

3    COURT WILL ADDRESS DEFENDANTS' OBJECTIONS TO SPECIFIC

4    ENHANCEMENTS WHEN IT RULES ON THE APPLICATION OF THOSE

5    ENHANCEMENTS.

6    THE DEFENDANTS CONTINUE TO ARGUE AGAINST THE JURY'S

7    VERDICT, AND I WANT TO SAY IN RESPONSE TO THAT, THE DEFENDANTS

8    HAVE EVERY RIGHT TO APPEAL THE JURY VERDICT, THE DECISION OF

9    THE JURY AND THE JURY VERDICTS, BUT TO THE EXTENT THAT THEY

10   OBJECT TO FACTS FOUND BY THE JURY, THE COURT OVERRULES THESE

11   OBJECTIONS -- THOSE OBJECTIONS.

12   THE COURT DOES NOT -- THE GOVERNMENT, ON THE OTHER HAND,

13   DOES NOT CLEARLY IDENTIFY EACH AND EVERY STATEMENT IT SEEKS TO

14   STRIKE FROM THE PRESENTENCE REPORT, SO THE COURT SHALL ONLY

15   ADDRESS THE SPECIFIC OBJECTIONS SET FORTH AT PAGE 9, LINES 20

16   THROUGH -- 22 THROUGH PAGE 10, LINE 18 OF ITS SENTENCING

17   MEMORANDUM.

18   THE COURT FINDS SOME OF THOSE OBJECTIONS WELL-TAKEN, AND

19   IT IS NOT CONSIDERED FACTUAL ASSERTIONS THAT CONTRADICT THE

20   JURY'S VERDICT, BUT IT WILL NOT STRIKE THOSE STATEMENTS FROM

21   THE PRESENTENCE REPORT.  TO THE EXTENT THAT THE GOVERNMENT

22   OBJECTS TO THE PROBATION OFFICER'S CHARACTERIZATION OF

23   TESTIMONY, THOSE OBJECTIONS ARE OVERRULED.

24   NOW I WANT TO JUST TALK ABOUT THE PROCEDURE THAT THE COURT

25   INTENDS TO FOLLOW AND THE MANNER IN WHICH THE COURT INTENDS TO

1   PROCEED WITH THE SENTENCING OF THESE TWO DEFENDANTS.  BECAUSE

2   USAPTI AND MR. LIEW RAISE THE SAME OBJECTIONS ABOUT THE AMOUNT

3   OF LOSS ENHANCEMENT, THE COURT WILL ADDRESS THAT ISSUE FIRST,

4   AND ITS RULING SHALL APPLY TO BOTH DEFENDANTS.  THE COURT ALSO

5   WILL ADDRESS THE ISSUES OF FORFEITURE AND RESTITUTION AS

6   PRELIMINARY MATTERS.

7        AFTER THE COURT HAS SET FORTH ITS RULINGS ON THE LOSS

8   ENHANCEMENT, RESTITUTION, AND FORFEITURE, THE COURT WILL

9   PROCEED TO SENTENCING.  IT WILL START, AS IT MUST, BY

10  CALCULATING THE APPLICABLE GUIDELINE RANGE FOR EACH DEFENDANT

11  PURSUANT TO UNITED STATES VERSUS CARTY, C-A-R-T-Y, 520 F.3D

12  984 AT 991 DECIDED BY THE NINTH CIRCUIT IN 2008.

13       BECAUSE OF EX POST FACTO ISSUES, MEANING MAKING SOMETHING

14  A VIOLATION WHICH WASN'T A VIOLATION AT THE TIME THE CONDUCT

15  OCCURRED AS SET FORTH IN THE U.S. CONSTITUTION, THE COURT IS

16  USING THE 2010 UNITED STATES SENTENCING GUIDELINES MANUAL.

17       AFTER THE COURT SETS FORTH ITS RULINGS ON THE APPLICABLE

18  GUIDELINE RANGE, THE COURT WILL GIVE THE DEFENDANTS THEIR

19  OPPORTUNITY TO ELOCUTE OR SPEAK TO THE COURT ABOUT WHAT THEY

20  BELIEVE THE COURT SHOULD CONSIDER ON THEIR BEHALF IN

21  SENTENCING THEM.

22       AFTER THE DEFENDANTS HAVE ELOCUTED, THE COURT WILL IMPOSE

23  SENTENCE AND SET FORTH ITS ANALYSIS OF THE 18, UNITED STATES

24  CODE, SECTION 3553(A) FACTORS THAT IT WILL BE CONSIDERING.

25       THE FIRST ISSUE THE COURT WISHES TO CONSIDER AND WILL

1    CONSIDER IS THE AMOUNT OF LOSS THAT'S SPECIFICALLY UNDER

2    UNITED STATES SENTENCING GUIDELINE SECTION 2B1.1.  I WANT TO

3    FIRST ADDRESS THE BURDEN OF PROOF THAT IS CONTESTED BY THE

4    PARTIES.

5        IN GENERAL, A COURT APPLIES A PREPONDERANCE OF THE

6    EVIDENCE STANDARD WHEN IT FINDS FACTS PERTINENT TO SENTENCING.

7    UNITED STATES VERSUS ARMSTEAD, 552 F.3D 769 AT 776 DECIDED BY

8    THE NINTH CIRCUIT IN 2008.

9        DEFENDANTS ARGUE THAT THE COURT SHOULD REQUIRE THE

10   GOVERNMENT TO PROVE THE AMOUNT OF LOSS BY CLEAR AND CONVINCING

11   EVIDENCE.  THE NINTH CIRCUIT HAS HELD THAT WHEN THE

12   APPLICATION OF A SENTENCING ENHANCEMENT RESULTS IN AN

13   EXTREMELY DISPROPORTIONATE QUOTE -- "EXTREMELY

14   DISPROPORTIONATE SENTENCE" UNQUOTE, THE GOVERNMENT MAY HAVE TO

15   SATISFY BY CLEAR AND CONVINCING STANDARD OF PROOF.  SEE, FOR

16   EXAMPLE, UNITED STATES VERSUS TREADWELL, 593 F.3D 990 AT 1000

17   DECIDED BY THE NINTH CIRCUIT IS 2010 AND UNITED STATES VERSUS

18   JORDAN, J-O-R-D-A-N, 256 F.2D -- F.3D 922 AT 928 DECIDED BY

19   THE NINTH CIRCUIT IN 2001.

20       THE RATIONALE FOR APPLYING THE STANDARD IS ONE OF DUE

21   PROCESS.  QUOTE, "WHERE A SEVERE SENTENCING ENHANCEMENT IS

22   IMPOSED ON THE BASIS OF UNCHARGED OR ACQUITTED CONDUCT, DUE

23   PROCESS MAY REQUIRE CLEAR AND CONVINCING EVIDENCE OF THAT

24   CONDUCT", UNQUOTE.  593 F.3D AT 1,000.

25       SEE ALSO THE TREADWELL CASE NOTING THAT THE COURT MUST

1    LOOK TO THE TOTALITY OF CIRCUMSTANCES TO DETERMINE IF A

2    HEIGHTENED STANDARD OF PROOF OF UNWARRANTED AND -- PROOF OF

3    UNWARRANTED AND LISTING FACTORS IS TO BE CONSIDERED IN THE

4    ANALYSIS.

5        THE NINTH CIRCUIT HAS QUOTE "REPEATEDLY HELD THAT

6    SENTENCING DETERMINATIONS RELATING TO THE EXTENT OF A CRIMINAL

7    CONSPIRACY NEED NOT BE ESTABLISHED BY CLEAR AND CONVINCING

8    EVIDENCE", UNQUOTE.  CITING TREADWELL 593 F.3D AT 1001, WHICH

9    IN TURN CITES UNITED STATES VERSUS BERGER, B-E-R-G-E-R, 587

10   F.3D, 1038 AT 1047 THROUGH 1049 DECIDED BY THE NINTH CIRCUIT

11   IN 2009.  SEE ALSO UNITED STATES V. JENKINS, 633 F.3D, 788 AT

12   808 NOTE 8 DECIDED BY THE NINTH CIRCUIT IN 2011 NOTING THAT

13   THE COURT WAS QUOTE "OVERLY CAUTIOUS" UNQUOTE IN ADOPTING

14   CLEAR AND CONVINCING -- THE CLEAR AND CONVINCING EVIDENCE

15   STANDARD.

16       AND SEE ALSO UNITED STATES VERSUS NOSAL, N-O-S-A-L, 2014

17   WESTLAW 121519 AT ASTERISK 3, NORTHERN DISTRICT OF CALIFORNIA

18   DECIDED JANUARY 23RD, 2014, CITING JENKINS 633 F.3D AT 808

19   NOTE 8, APPLYING THE PREPONDERANCE OF THE EVIDENCE STANDARD

20   WHERE THE DEFENDANT WAS CONVICTED OF CONSPIRACY.

21       THE JURY CONVICTED DEFENDANTS OF, AMONG OTHER THINGS, OF

22   CONSPIRACY TO COMMIT ECONOMIC ESPIONAGE AND CONSPIRACY TO

23   COMMIT THEFT OF TRADE SECRETS.  BASED UPON THE REASONING OF

24   TREADWELL AND BERGER, THE COURT SHALL APPLY THE PREPONDERANCE

25   OF THE EVIDENCE STANDARD TO THE AMOUNT OF LOSS ENHANCEMENT.

1    THE COURT NOW TURNS TO THE CALCULATION OF THE LOSS UNDER

2    THE GUIDELINES.  AND UNDER THE GUIDELINES, THE LOSS IS THE

3    GREATER OF THE ACTUAL OR INTENDED LOSS.  UNITED STATES

4    SENTENCING GUIDELINE SECTION 2B1.1 APPLICATION NOTE 3(A).  THE

5    COURT QUOTE "NEED ONLY MAKE A REASONABLE ESTIMATE OF LOSS"

6    UNQUOTE.  THAT'S THE SAME CITATION, THE APPLICATION NOTE AT

7    3C.

8    QUOTE, "ACTUAL LOSS" UNQUOTE IS THE QUOTE "REASONABLY

9    FORESEEABLE PECUNIARY HARM THAT RESULTED FROM THE OFFENSE"

10   UNQUOTE.  THAT IS, THE MONETARY HARM THAT THE DEFENDANT KNEW

11   OR REASONABLY SHOULD HAVE KNOWN WAS A POTENTIAL RESULT OF THE

12   OFFENSE.  SEE THE SAME CITATION, THE APPLICATION NOTE AT 3(A),

13   1 LITTLE I AND FOUR LITTLE I'S.

14   QUOTE "INTENDED LOSS" UNQUOTE, IS THE QUOTE "PECUNIARY

15   HARM THAT WAS INTENDED TO RESULT FROM THE OFFENSE AND INCLUDES

16   INTENDED PECUNIARY HARM THAT WOULD HAVE BEEN IMPOSSIBLE OR

17   UNLIKELY TO OCCUR.  FOR EXAMPLE, AS IN A GOVERNMENT STING

18   OPERATION OR AN INSURANCE FRAUD IN WHICH THE CLAIM EXCEEDED

19   THE INSURED VALUE", UNQUOTE.  THE SAME CITATION AT APPLICATION

20   NOTE 3(A) TWO LITTLE I'S.

21   IN OTHER WORDS, INTENDED LOSS IS THE AMOUNT OF LOSS THE

22   DEFENDANT QUOTE "PURPOSELY SOUGHT TO INFLICT" UNQUOTE.  SEE,

23   FOR EXAMPLE, UNITED STATES VERSUS TO TORLAI, T-O-R-L-A-I, 728

24   F.3D 932 AT 947 NOTE 14, DECIDED BY THE NINTH CIRCUIT IN 2013

25   QUOTING UNITED STATES VERSUS MANATAU, M-A-N-A-T-A-U, 647 F.3D

1  1048 AT 1050 DECIDED BY THE TENTH CIRCUIT 2011 AND UNITED

2  STATES VERSUS TULANER, T-U-L-A-N-E-R, 512 F.3D 576 AT 581

3  DECIDED BY THE NINTH CIRCUIT IN 2008.

4       THE COURT MAY CONSIDER GAIN AS QUOTE "AN ALTERNATIVE

5  MEASURE OF LOSS", UNQUOTE, BUT QUOTE "ONLY IF THERE IS A LOSS

6  BUT IT IS REASONABLY -- IT REASONABLY CANNOT BE DETERMINED",

7  UNQUOTE.  AND I'M CITING THERE THE UNITED STATES SENTENCING

8  GUIDELINE SECTION 2B1.1, APPLICATION NOTE 3(B).

9       THE APPLICATION NOTES ALSO PROVIDE THAT IN CASES INVOLVING

10  QUOTE "PROPRIETARY INFORMATION" ("E.G. TRADE SECRETS") A COURT

11  MAY CONSIDER QUOTE "THE COST OF DEVELOPING THAT INFORMATION OR

12  THE REDUCTION IN THE VALUE OF THAT INFORMATION THAT RESULTED

13  FROM THE OFFENSE", UNQUOTE, IN ORDER TO DETERMINE A REASONABLE

14  ESTIMATE OF LOSS.  SEE THE SAME CITATION AT APPELLATE NOTE

15  3(C) TWO LITTLE I'S.

16       DEFENDANTS CONTINUE TO DISPUTE THAT DU PONT SUFFERED A

17  LOSS.  ALTHOUGH THE JURY WAS NOT REQUIRED TO CONCLUDE THAT

18  TRADE SECRET 1, THE QUOTE "DU PONT CHLORIDE ROOT PROCESS",

19  UNQUOTE, WAS AN ACTUAL TRADE SECRET, THAT DOES NOT NEGATE A

20  FINDING THAT DU PONT SUFFERED A LOSS AS A RESULT OF

21  DEFENDANTS' CONDUCT.  INDEED, IN ORDER TO CONVICT DEFENDANTS

22  ON COUNTS 6, 7 AND 9, THE JURY HAD TO CONCLUDE THAT TRADE

23  SECRETS 2 THROUGH 4 WERE, IN FACT, TRADE SECRETS AND THAT THE

24  DEFENDANTS KNEW OR INTENDED THAT THE OFFENSE WOULD INJURE DU

25  PONT.  AND I'M CITING THERE FINAL JURY INSTRUCTIONS AT

PAGE 34.

MOREOVER, THE COURT HEARD THE TESTIMONY AT THE TRIAL, AND THE COURT CONCLUDES THAT THE EVIDENCE SHOWS THAT DU PONT, IN FACT, HAS SUFFERED A LOSS.

THE MORE DIFFICULT ISSUE FOR THE COURT AND THE ISSUE THE COURT MUST DECIDE IS HOW TO MEASURE THAT LOSS BECAUSE IT'S HOTLY CONTESTED BY THE PARTIES.  THE GOVERNMENT CONTENDS THAT THE AMOUNT OF THE LOSS CANNOT BE REASONABLY CALCULATED AND URGES THE COURT TO RELY ON DEFENDANTS' GAIN TO MEASURE THE LOSS.  THE PROBATION OFFICER ALSO RECOMMENDS USING GAIN AS THE APPROPRIATE MEASURE OF LOSS.

THE COURT HAS STRUGGLED WITH THIS ISSUE.  NONE OF THE PARTIES TRULY URGED THE COURT TO USE THE QUOTE "INTENDED LOSS" UNQUOTE AS A MEANS TO CALCULATE LOSS.  ALTHOUGH THE GOVERNMENT REFERS TO A TRIAL EXHIBIT, TRIAL EXHIBIT 374, A POWER POINT PRESENTATION ATTACHED TO AN EMAIL FOUND IN MR. LIEW'S POSSESSION, THE COURT FINDS THAT THIS EXHIBIT IS NOT SUFFICIENT TO MAKE A REASONABLE, NONSPECULATIVE CALCULATION BASED UPON THE INTENDED LOSS.

THE DEFENDANTS, ON THE OTHER HAND, URGE THE COURT TO ADOPT MR. COOPER'S CALCULATION OF QUOTE "ACTUAL LOSS" UNQUOTE. HOWEVER, THE COURT DOES NOT FIND MR. COOPER'S CALCULATION OF LOSS TO BE CREDIBLE OR REASONABLE.  INDEED, BASED UPON MR. COOPER'S TESTIMONY AT TRIAL, THE COURT DOES NOT FIND MR. COOPER TO BE A CREDIBLE WITNESS.

1    HAVING CONSIDERED THE TESTIMONY AT TRIAL AND HAVING

2    CONSIDERED DU PONT'S VICTIM IMPACT STATEMENT, THE COURT

3    CONCLUDES THERE IS A REASONED BASIS TO FIND THAT DU PONT'S

4    ACTUAL LOSSES REASONABLY CANNOT BE DETERMINED AT THIS TIME.

5    AND I SAY "AT THIS TIME" BECAUSE THERE ARE ISSUES RELATING TO

6    RESTITUTION.

7        THE COURT CONCLUDES THAT THE ONLY REASONABLE WAY TO

8    CALCULATE LOSS IS TO USE THE DEFENDANTS' GAIN WHICH RANGES

9    BETWEEN 22.5 MILLION, IF EXPENSES ARE DEDUCTED, TO

10   $28 MILLION.  USING EITHER OF THOSE FIGURES RESULTS IN A

11   22-POINT ENHANCEMENT UNDER U.S. SENTENCING GUIDELINE

12   2B1.1(B)(1)(K).

13       ACCORDINGLY, THE COURT APPLIES A 22-POINT ENHANCEMENT FOR

14   THE AMOUNT OF DU PONT'S LOSS IN THIS CASE.

15       NOW THE NEXT ISSUE THAT THE COURT IS GOING TO DEAL WITH IS

16   RESTITUTION.

17       MR. LIEW DOES NOT DISPUTE THE AMOUNT OF RESTITUTION THAT

18   SHOULD BE AWARDED IN CONNECTION WITH THE BANKRUPTCY CHARGES,

19   THE BANKRUPTCY FRAUD CHARGES, OR MAKING FALSE STATEMENTS TO

20   THE BANKRUPTCY COURT AND TRUSTEE.

21       THE PROBATION OFFICER RECOMMENDS AWARDING RESTITUTION AS

22   FOLLOWS ON THOSE CHARGES:  STANE, S-T-A-N-E, CONSULTING

23   $52,356, ADECCO, A-D-E-C-C-O, ENGINEERING AND TECHNICAL

24   $32,571.  LAW OFFICES OF MICHAEL CARROLL, C-A-R-R-O-L-L -- IN

25   THE PRESENTENCE REPORT, THE PROBATION OFFICER RECOMMENDED

1    AWARDING RESTITUTION IN THE AMOUNT OF 49,973 TO THE -- TO

2    THOSE LAW OFFICES.  THE PROBATION OFFICER HAS SINCE BEEN

3    INFORMED BY MR. CARROLL THAT ACCOUNTING FOR INTEREST ON THE

4    OBLIGATION, HE IS SEEKING THE SUM OF $58,881.82.

5         LET ME ASK MR. GASNER, DO THE DEFENDANTS OBJECT TO THE

6    LARGER FIGURE?

7              **MR. GASNER:**  THE 500,000?

8              **THE COURT:**  NO, NO.  58,881 AS OPPOSED TO $49,973.

9              **MR. GASNER:**  NO, YOUR HONOR.

10             **THE COURT:**  ALL RIGHT.  THANK YOU.

11        ALL RIGHT.  THE COURT SHALL ORDER MR. LIEW TO PAY

12   RESTITUTION TO THOSE ENTITIES AS PART OF ITS JUDGMENT AND

13   SHALL SPECIFY THE AMOUNTS TO BE PAID WHEN IT PRONOUNCES THE

14   SENTENCE.

15        THE PARTIES DO DISPUTE WHAT, IF ANY, RESTITUTION COULD BE

16   AWARDED TO DU PONT.  THE PROBATION OFFICER RECOMMENDS ORDERING

17   RESTITUTION IN THE AMOUNT OF $367,679 BASED ON LOSSES INCURRED

18   IN THE FORM OF EMPLOYEE TIME AND LEGAL FEES, AS WELL AS THE

19   COSTS INCURRED IN RESPONDING TO A SUBPOENA, RULE 17(C)

20   SUBPOENA.

21        DU PONT HAS REQUESTED AN ADDITIONAL $28 MILLION IN

22   RESTITUTION.  SEE MR. LIEW'S PSR AT PARAGRAPHS 36 THROUGH 37

23   AND DU PONT VICTIM IMPACT STATEMENT THAT THEY WERE ENTITLED TO

24   FILE AND DID FILE WITH THE PROBATION DEPARTMENT.

25        QUOTE "THE GOAL OF RESTITUTION UNDER THE MANDATORY VICTIMS

1    RESTITUTION ACT IS TO MAKE THE VICTIM WHOLE.  CONSEQUENTLY,

2    ANY AWARD IS LIMITED TO THE VICTIM'S ACTUAL LOSSES", UNQUOTE.

3    AND QUOTE, "THE DISTRICT COURT SHOULD NOT RELY ON ITS

4    CALCULATION OF THE LOSS UNDER THE SENTENCING GUIDELINES TO

5    DETERMINE THE AMOUNT OF RESTITUTION, AS THE TWO MEASURES SERVE

6    DIFFERENT PURPOSES AND UTILIZE DIFFERENT CALCULATION METHODS",

7    UNQUOTE.

8        I WAS CITING THERE UNITED STATES VERSUS -- QUOTING UNITED

9    STATES V. ANDERSON, 741 F.3D 938 AT 951 DECIDED BY THE NINTH

10   CIRCUIT IN 2013.  SEE ALSO UNITED STATES VERSUS FU SHENG KUO,

11   F-U, S-H-E-N-G, K-U-O, 620 F.3D 1158 AT 1156 DECIDED BY THE

12   NINTH CIRCUIT IN 2010 HOLDING THAT QUOTE "A DISTRICT COURT MAY

13   NOT ORDER RESTITUTION TO REFLECT" UNQUOTE A DEFENDANTS'

14   ILL-GOTTEN GAINS.

15       ALTHOUGH THE COURT HAS DETERMINED THAT THE AMOUNT OF LOSS

16   SHOULD BE MEASURED BY DEFENDANTS' GAIN, THE COURT WILL NOT USE

17   THAT FIGURE FOR PURPOSES OF RESTITUTION BECAUSE RESTITUTION

18   MUST BE PREMISED UPON ACTUAL LOSSES.

19       THE GOVERNMENT SUGGESTS THAT THE COURT DEFER RULING ON THE

20   ISSUE OF RESTITUTION TO DU PONT.  IF A VICTIM'S LOSS IS QUOTE

21   "ARE NOT ASCERTAINABLE BY THE DATE THAT IS TEN DAYS PRIOR TO

22   SENTENCING, THE COURT SHALL SET A DATE FOR THE FINAL

23   DETERMINATION OF THE VICTIM'S LOSSES NOT TO EXCEED 30 DAYS

24   AFTER SENTENCING".  AND THERE I -- UNQUOTE.  THERE I WAS

25   QUOTING 18, UNITED STATES CODE, SECTION 3664(D)(5).

1        IF THE GOVERNMENT CONTENDS THAT DU PONT SHOULD BE AWARDED

2    MORE THAN $367,679 IN RESTITUTION, THE COURT SHALL DEFER FINAL

3    RULING ON THE AMOUNT OF RESTITUTION TO BE AWARDED TO DU PONT

4    AND IT SHALL SET THIS MATTER DOWN FOR A RESTITUTION HEARING.

5        SO I'M GOING TO ASK MR. AXELROD, HOW DOES THE GOVERNMENT

6    REQUEST THAT THE COURT PROCEED IN THIS REGARD?

7            MR. HEMANN:  I AM NO MR. AXELROD, YOUR HONOR, BUT

8    IT'S ME.

9        SO, OUR INCLINATION NOW, GIVEN THE COURT'S RULINGS, AND IN

10   LIGHT OF ALL THE FILINGS THAT HAVE BEEN MADE AND OUR

11   CONSULTATION WITH DU PONT, IS TO ENCOURAGE THE COURT AND

12   REQUEST THE COURT ORDER THE $367,000 AS RESTITUTION UNDER THE

13   RESTITUTION STATUTE TODAY, AND WE WOULD WITHDRAW OUR REQUEST

14   FOR A HEARING -- A FURTHER HEARING.

15       THERE IS A CIVIL ACTION PENDING AGAINST MR. LIEW.  AND IF

16   THAT -- THAT MIGHT PROVIDE A VEHICLE FOR ADDITIONAL DISCUSSION

17   OF DAMAGES, BUT IN THE CONTEXT OF THIS CASE, WE THINK THAT THE

18   $367,000 IS APPROPRIATE TODAY.  AND I HAVE CONSULTED WITH

19   MR. CLARK AND HE IS OF THAT VIEW AS WELL.

20           MS. LOVETT:  YOUR HONOR, IF I MAY BRIEFLY BE HEARD.

21           THE COURT:  SURE.

22           MS. LOVETT:  WE -- THE DEFENDANTS WOULD OBJECT TO AN

23   ORDER OF $367,000 IN RESTITUTION.  THE $200,000 THAT DU PONT

24   ASKED FOR FOR VARIOUS HOURS SPENT BY EMPLOYEES OR ATTORNEYS ON

25   THIS CRIMINAL MATTER IS TOO VAGUE TO ORDER RESTITUTION.

1    UNITED STATES V. WAKNINE, W-A-K-N-I-N-E, AND I HAVE THE

2    CITATION IF YOU WOULD LIKE IT, REQUIRES THAT THE VICTIM SHOW

3    THAT THE EXPENSES WERE REASONABLY RELATED TO THE CURRENT CASE.

4       THERE WERE MULTIPLE DEFENDANTS IN THIS CASE.  THE -- DU

5    PONT HAS NOT BEEN SPECIFIC ABOUT HOW THIS $200,000 WAS SPENT.

6    IT'S A BACK-OF-THE-ENVELOPE CALCULATION OF EXACTLY THE KIND

7    THAT WAKNINE DOES NOT ALLOW.

8            THE COURT:  ALL RIGHT.  MR. -- I WAS GOING TO CALL

9    YOU MR. AXELROD AGAIN.  BUT, MR. HEMANN.

10           MR. HEMANN:  YOUR HONOR, WE BELIEVE BASED ON THE

11   SUBMISSIONS OF DU PONT THAT IT IS A REASONABLE ESTIMATE.  IN

12   FACT, I THINK THAT IT IS FAR LESS THAN DU PONT WAS REQUIRED TO

13   SPEND IN CONNECTION WITH THE INVESTIGATION AND PROSECUTION OF

14   THIS CASE.

15      IF THE DEFENDANTS OBJECT, ONE POSSIBILITY IS THAT WE ASK

16   DU PONT TO DO A MORE SPECIFIC CALCULATION.  I THINK THAT

17   THE -- A REASONABLE ESTIMATE IS APPROPRIATE.  I DON'T THINK

18   THE DEFENSE HAS SUGGESTED WHY THIS IS NOT A REASONABLE

19   ESTIMATE OR HOW THIS IS NOT A REASONABLE ESTIMATE.  BUT

20   CERTAINLY ONE POSSIBILITY, YOUR HONOR, IS THAT WE KICK IT DOWN

21   THE ROAD, WE GO THROUGH AND ASK DU PONT TO PUT SOME MORE MEAT

22   ON THE BONES AND MOVE FORWARD IN THAT WAY.  I THINK THE

23   GOVERNMENT DOESN'T BELIEVE THAT THAT'S NECESSARY.

24           THE COURT:  ONE POSSIBILITY, MS. LOVETT, IS THAT THE

25   COURT STICK TO ONE OF THE ALTERNATIVE PLANS, WHICH IS TO SET

1   A, A KIND OF A PLACEHOLDER DATE, AT LEAST, FOR A HEARING,

2   ALLOW FACTUAL PRESENTATIONS BY THE PARTIES ON THIS ISSUE --

3        **MS. LOVETT:**  YES.

4        **THE COURT:**  LET ME FINISH.  I DIDN'T WANT TO

5   INTERRUPT MR. GASNER.

6        **MS. LOVETT:**  APOLOGIES, YOUR HONOR.

7        **THE COURT:**  YOU DON'T HAVE TO APOLOGIZE.  COUNSEL CAN

8   ALWAYS TALK TO EACH OTHER.

9        IS TO DO THAT, GIVE YOU -- GIVE THE DEFENDANTS A CHANCE TO

10  PRESENT THEIR POSITION.  AND THEN IF THE COURT NEEDS AN

11  EVIDENTIARY HEARING, WE CAN USE THAT DATE TO MAKE THE

12  DETERMINATION.

13       THE ONLY AMOUNT THAT WOULD BE IN PLAY, IT SOUNDS LIKE, AM

14  I CORRECT, IS THE $200,000?

15       **MS. LOVETT:**  YOUR HONOR, THAT'S CORRECT.

16       THE CASE THAT I'M SPEAKING OF IS WAKNINE, WHICH IS 543

17  F. 3D 546.  AND IN THAT CASE THE NINTH CIRCUIT HELD THAT THE

18  VICTIM NEEDED TO PROVIDE ITEMIZED LISTS INDICATING HOW THE

19  EXPENSES INCURRED BY THE VICTIM RELATED TO THE CASE AT ISSUE,

20  AND HOW THEY WERE DIRECTLY AND PROXIMATELY CAUSED BY THE

21  DEFENDANT.

22       SO WE WOULD ASK THAT AT THAT FURTHER HEARING -- BEFORE

23  THAT FURTHER HEARING, DU PONT PROVIDE THOSE ITEMIZED LISTS OF

24  HOW THOSE EXPENSES RELATE SO THAT THE COURT CAN MAKE A

25  JUDGMENT ABOUT HOW THEY RELATE TO THIS CASE AND SO THAT WE CAN

1    MAKE ARGUMENT ABOUT HOW THEY RELATE TO THIS CASE.

2           **THE COURT:**  DID YOU WANT TO ADD SOMETHING,

3    MR. GASNER?

4           **MR. GASNER:**  NO, YOUR HONOR, I DON'T THINK WE NEED A

5    WHOLE RESTITUTION HEARING THAT WOULD BE UNLIMITED.  SO I THINK

6    THE COURT'S INSTINCT IS SIMPLY ORDER -- IN LIGHT OF THE

7    GOVERNMENT'S CONCESSION THAT THEY'RE NOT GOING TO BE SEEKING

8    MILLIONS AND MILLIONS OF DOLLARS, TO ENTER THE ORDER OF

9    RESTITUTION FOR THIS LOWER AMOUNT NOW, BUT SUBJECT TO PROVING

10   UP, IF YOU WILL, JUST PROVIDING THE DETAILS --

11          **THE COURT:**  I DON'T THINK THE COURT CAN DO THAT.

12   BEFORE I GET TO -- I'M INCLINED TO SET SOME DATES HERE FOR

13   SUBMISSIONS.

14          **MR. HEMANN:**  YOUR HONOR, IF I CAN ADD ONE VERY BRIEF

15   OBSERVATION THAT I THINK DOVETAILS WITH MR. GASNER'S

16   SUGGESTION, WHICH I TOOK AS A SUGGESTION THAT WE CAP IT HERE

17   AT $367,000.

18          **THE COURT:**  I'M NOT SURE I CAN DO THAT.

19          **MR. HEMANN:**  WE AGREE WITH THAT, YOUR HONOR.  I THINK

20   THAT THE NUMBER COULD GO QUITE A BIT HIGHER.  IF WE GO DOWN

21   THIS ROAD, IT COULD BE $500,000 OR $600,000.

22          **THE COURT:**  HERE'S MY -- LET ME SAY THIS.  AND I SAY

23   THIS WITH GREAT TREPIDATION, BUT IF THE COURT -- IF WE ARE

24   GOING TO BE IN FOR THE PROVERBIAL DIME, WE ARE GOING TO BE IN

25   FOR THE PROVERBIAL DOLLAR.  AND IF WE ARE GOING TO HAVE A

HEARING, THEN I'M GOING TO ALLOW DU PONT TO PROVE UP ALL ITS

DAMAGES WITH NO CAP, AND I WILL THEN CONSIDER WHAT -- ANY

NUMBER FROM 167,000, WHICH IS NOT CONTESTED, TO WHATEVER

NUMBER, YOU KNOW, WHATEVER CARL SAGAN-LIKE NUMBERS DU PONT IS

ABLE TO PROVE UP TO THIS COURT.

    SO IF THAT'S WHAT YOU WANT, MS. LOVETT, THAT'S WHAT YOU'LL

GET.

        **MS. LOVETT:**  IN THAT CASE, YOUR HONOR, WE DO NOT

REQUEST A HEARING, AND WE WILL AGREE TO AN ORDER OF

RESTITUTION TODAY.

        **THE COURT:**  TO THE FULL AMOUNT, THE 367?

        **MS. LOVETT:**  YES, YOUR HONOR.

        **THE COURT:**  VERY WELL.  LET'S MOVE ON.

    LET'S NOT MOVE ON YET BECAUSE I WANT TO ASK MR. HEMANN A

QUESTION.  AND THAT IS, WILL ORDERING RESTITUTION TODAY --

THERE'S BEEN SOME DISCUSSION, AND I HESITATE TO TALK ABOUT

THIS BECAUSE THIS RELATES TO MRS. LIEW AND HER CASE, BUT I CAN

ASK YOU, IN TERMS OF THE COURT MANAGING ITS CALENDAR, IS --

WILL THE ORDER OF RESTITUTION TODAY IMPACT IN ANY WAY

MS. LIEW'S PLEA DATE OR DAY FOR CHANGE OF PLEA THAT THE COURT

PREVIOUSLY ORDERED, FROM YOUR PERSPECTIVE?

        **MR. HEMANN:**  IF ANYTHING, YOUR HONOR, IT WOULD

FURTHER -- MY OPINION IS IT WOULD FURTHER SOLIDIFY THAT DATE.

        **THE COURT:**  OKAY.  I DON'T WANT TO SAY ANYTHING MORE

BECAUSE SHE'S NOT REPRESENTED HERE AND THIS IS NOT ABOUT HER

1    CASE.

2        NOW, I HAVE ANOTHER QUESTION.  THE COURT INTENDS TO MAKE

3    THE AWARD TO DU PONT JOINT AND SEVERAL, BUT I WANT TO ASK THE

4    GOVERNMENT FOR THEIR POSITION ON WHICH, IF ANY, OTHER -- WHICH

5    DEFENDANTS, WHICH OTHER DEFENDANTS' LIABILITY SHOULD BE

6    SHARED?

7        I MEAN, THE CANDIDATES WOULD BE MR. MAEGERLE AND THE OTHER

8    GENTLEMAN, WHOSE NAME I CAN'T REMEMBER AT THIS POINT.

9            **MR. HEMANN:**  MR. CHAO.

10           **THE COURT:**  YES.

11           **MR. HEMANN:**  WE BELIEVE THAT THOSE ARE THE TWO OTHER

12   CANDIDATES AS TO WHOM THE OBLIGATION WOULD RUN, WITH THE

13   FOLLOWING CAVEAT:  I THINK IT WOULD RUN FULLY JOINTLY AND

14   SEVERALLY AS TO MR. MAEGERLE.

15       MR. CHAO PLED AT THE VERY, VERY BEGINNING OF THIS CASE,

16   AND I THINK THAT -- I WOULD HAVE TO LOOK AT THE CASE THAT

17   MS. LOVETT CITED -- BUT IT COULD BE UNDER THAT CASE THAT

18   THE -- THAT THE COSTS THAT DU PONT INCURRED AFTER MR. CHAO

19   PLED ARE NOT REASONABLY ATTRIBUTABLE OR CAUSED BY HIM.

20       SO I THINK THAT THERE ARE SOME COSTS AT THE BEGINNING OF

21   THIS, BUT THEY WOULD BE MINIMAL IN RELATION TO THE 367.  THE

22   LION'S SHARE OF THAT WOULD HAVE COME POST -- POST MR. CHAO'S

23   PLEA.

24           **THE COURT:**  WELL, I THINK IF THERE IS ANY LIABILITY,

25   IT ALL OUGHT TO BE JOINT AND SEVERAL.  I THINK THE ISSUE OF

1    HOW ONE -- HOW THE PARTY, YOU KNOW, THE INJURED PARTY, DU

2    PONT, WOULD EXERCISE THAT, IT CAN CERTAINLY DISCUSS THAT WITH

3    THE GOVERNMENT AND DEFENSE COUNSEL, FOR THAT MATTER --

4              **MR. HEMANN:**  YES, YOUR HONOR.

5              **THE COURT:**  BUT I THINK THE APPROPRIATE WAY TO DO IT

6    IS TO ORDER JOINT AND SEVERAL LIABILITY WITH AT LEAST FOR

7    MR. MAEGERLE AND MR. CHAO, AND THEN YOU CAN -- THE PARTIES CAN

8    SORT THAT OUT LATER.

9              **MR. HEMANN:**  WE HAVE NO OBJECTION, YOUR HONOR.

10             **THE COURT:**  I WANT TO TURN TO FORFEITURE NOW, AND

11   THAT'S THE NEXT ISSUE THE COURT IS GOING TO TURN TO.

12        UNDER CRIMINAL RULE 32.2(B)(1)(B), IF FORFEITURE IS

13   CONTESTED, QUOTE "ON EITHER PARTIES' REQUEST, THE COURT MUST

14   CONDUCT A HEARING AFTER THE VERDICT OR FINDING OF GUILTY",

15   UNQUOTE.

16        BECAUSE NEITHER PARTY ADDRESSED THIS ISSUE IMMEDIATELY

17   FOLLOWING THE VERDICT OR, FOR THAT MATTER, IN THEIR SENTENCING

18   MEMORANDA, THE COURT REQUIRED THE PARTIES TO SUBMIT A JOINT

19   STATEMENT ON THEIR RESPECTIVE POSITIONS ON THIS ISSUE, WHICH

20   THEY DID FILE ON JUNE 23RD, 2014, WHICH IS DOCKET NUMBER 866.

21        THE DEFENDANTS STATE THAT THEY CONTEST FORFEITURE AND ASK

22   THE COURT TO HOLD AN EVIDENTIARY HEARING AFTER MRS. LIEW'S

23   PLEA IS FINALIZED.  HOWEVER, ACCORDING TO COUNSEL FOR

24   MRS. LIEW AND THE GOVERNMENT, HER PLEA CANNOT BE FINALIZED

25   UNTIL MR. LIEW IS SENTENCED.

1        MOREOVER, PURSUANT TO RULE 32.2(B)(4)(B), QUOTE, "THE

2   COURT MUST, UNDERSCORE MUST INCLUDE THE FORFEITURE WHEN ORALLY

3   ANNOUNCING THE SENTENCE OR MUST OTHERWISE ENSURE THAT THE

4   DEFENDANT KNOWS OF THE FORFEITURE AT SENTENCING", UNQUOTE.

5        THE COURT ALSO MUST INCLUDE THE FORFEITURE ORDER DIRECTLY

6   OR BY REFERENCE IN THE JUDGMENT.  THUS, UNLIKE RESTITUTION,

7   THE COURT CANNOT DEFER RESOLUTION OF THIS ISSUE UNTIL AFTER IT

8   SENTENCES THE DEFENDANTS AND WILL NOT CONTINUE THE SENTENCING

9   HEARING FOR FURTHER PROCEEDINGS.

10        THE DEFENDANTS ALSO ARGUE THAT THE AMOUNT OF FORFEITURE

11   THAT THE GOVERNMENT SEEKS WOULD VIOLATE THE EXCESSIVE FINES

12   CLAUSE.

13        QUOTE "THE TOUCHSTONE OF THE CONSTITUTIONAL INQUIRY UNDER"

14   UNQUOTE THAT CLAUSE QUOTE "IS THE PRINCIPLE OF

15   PROPORTIONALITY.  THE AMOUNT OF THE FORFEITURE MUST BEAR SOME

16   RELATIONSHIP TO THE GRAVITY OF THE OFFENSE THAT IS DESIGNED TO

17   PUNISH", UNQUOTE.  AND I'M CITING THERE U.S. VERSUS BAJAKAJIAN

18   B-A-J-A-K-A-J-I-A-N, 524 UNITED STATES 321 AT 334 DECIDED IN

19   1998.

20        THIS ARGUMENT IS PREMISED IN LARGE PART ON DEFENDANTS'

21   CONTINUED ASSERTION THAT THE TRADE SECRETS AT ISSUE LACKED ANY

22   VALUE OR THAT DU PONT SUFFERED ANY HARM AS A RESULT OF THEIR

23   CONDUCT.  DEFENDANTS WERE CONVICTED OF VIOLATING THE ECONOMIC

24   ESPIONAGE ACT.  AS THE COURT WILL DISCUSS LATER IN THESE

25   PROCEEDINGS, CONGRESS HAS DEEMED THESE CRIMES TO BE WORTHY OF

1    SERIOUS PENALTIES.  SEE, FOR EXAMPLE, THE BAJAKAJIAN CASE, 524

2    U.S. AT 339 AT NOTE 14, NOTING THAT THE MAXIMUM PENALTY OF

3    FIVE YEARS AND $250,000 FINE SUGGESTS THAT CONGRESS DID NOT

4    VIEW REPORTING IN THAT CASE -- THE REPORTING OFFENSE AS

5    TRIVIAL.

6         IN ADDITION, AS THE COURT WILL DISCUSS BELOW, THE AMOUNT

7    THAT THE GOVERNMENT SEEKS IN FORFEITURE IS COMPARABLE TO THE

8    MAXIMUM FINE THAT THE COURT COULD IMPOSE ON USAPTI UNDER THE

9    GUIDELINES CALCULATION.

10        MOREOVER, THE DEFENDANTS' ARGUMENT IGNORES THE FACT THAT

11   THE JURY ALSO CONVICTED MR. LIEW ON THE TAX CHARGES.  AND HIS

12   FAILURE TO REPORT THE INCOME EARNED FROM THE TIO2 PROJECTS DID

13   DEPRIVE THE GOVERNMENT TO FUNDS TO WHICH IT OTHERWISE WOULD

14   HAVE BEEN ENTITLED IN THE FORM OF TAX REVENUE.

15        GIVEN ALL THESE CIRCUMSTANCES, THE COURT CANNOT SAY THAT

16   THE AMOUNT OF THE FORFEITURE IN THIS CASE IS QUOTE "GROSSLY

17   DISPROPORTIONAL TO THE GRAVITY" UNQUOTE OF THE DEFENDANTS'

18   OFFENSES.

19        THE DEFENDANTS ALSO ARGUE THAT TO THE EXTENT THE

20   GOVERNMENT SEEKS TO FORFEIT REAL PROPERTY, IT HAS NOT SHOWN

21   THE PROPERTY IN QUESTION CONSTITUTES -- PROPERTIES IN QUESTION

22   CONSTITUTE OR WERE DERIVED FROM PROCEEDS OF THE OFFENSE.  IN

23   ITS ORDER SEEKING A PRELIMINARY ORDER OF FORFEITURE -- IN ITS

24   PROPOSED ORDER SEEKING A PRELIMINARY ORDER OF FORFEITURE, THE

25   GOVERNMENT STATES IT IS SEEKING A MONEY JUDGMENT RATHER THAN

1     FORFEITURE OF SPECIFIC PROPERTY.  SO THE COURT DOES NOT VIEW

2     THAT ISSUE, THE IDENTIFICATION OF SPECIFIC PROPERTY, TO BE IN

3     PLAY HERE.

4        FINALLY, THE DEFENDANTS CONTEND THAT THE GOVERNMENT HAS

5     NOT ESTABLISHED THAT THE FULL AMOUNT OF THE MONEY JUDGMENT THE

6     GOVERNMENT SEEKS TO QUALIFY AS QUOTE "PROCEEDS" UNQUOTE OF THE

7     OFFENSE ON THE BASIS THAT SOME OF THE MONEY MR. LIEW OBTAINED

8     WAS FOR LEGITIMATE TASKS.

9        THE TERM QUOTE "PROCEEDS" UNQUOTE MEANS, QUOTE "PROPERTY

10    OF ANY KIND OBTAINED DIRECTLY OR INDIRECTLY AS THE RESULT OF

11    THE COMMISSION OF THE OFFENSE GIVING RISE TO THE FORFEITURE",

12    UNQUOTE.  I AM CITING THERE 18, UNITED STATES CODE, SECTION

13    981(A)(2)(A).  THE NINTH CIRCUIT HAS CONSTRUED THE TERM

14    BROADLY.  SEE, FOR EXAMPLE, UNITED STATES VERSUS PHILLIPS, 704

15    F.3D 754 AT 771 DECIDED BY THE NINTH CIRCUIT IN 2012, UNITED

16    STATES VERSUS NEWMAN, N-E-W-M-A-N, 659 F.3D 1235 AT 1243

17    DECIDED BY THE NINTH CIRCUIT IN 2011.

18       THE COURT ALSO SAT THROUGH THIS VERY EXTENSIVE TRIAL AND

19    CAREFULLY LISTENED TO THE EVIDENCE, SOME OF WHICH IS NOTED IN

20    THE GOVERNMENT'S APPLICATION FOR FORFEITURE.  GIVEN THE STATE

21    OF THE RECORD REGARDING MR. LIEW'S LACK OF EXPERIENCE WITH

22    TIO2 AND IN LIGHT OF THIS BROAD CONSTRUCTION AND THE FACT THAT

23    PROCEEDS MAY BE OBTAINED QUOTE "INDIRECTLY" UNQUOTE, THE COURT

24    EASILY CONCLUDES THAT NEITHER HE NOR HIS COMPANIES WOULD HAVE

25    RECEIVED THESE CONTRACTS IF HE HAD NOT BROUGHT THE TRADE

1    SECRETS TO THE TABLE.

2        THEREFORE, THE COURT CONCLUDES THE GOVERNMENT HAS MET ITS

3    BURDEN TO SHOW THAT THE SUM OF $27,829,893.67 THAT MR. LIEW

4    AND HIS COMPANIES OBTAINED AS A RESULT OF THE CONTRACTS FOR

5    THE TIO2 PROJECTS REPRESENTS THE PROCEEDS OF THE OFFENSES.

6        NOW, I HAVE A QUESTION FOR THE GOVERNMENT ON THIS AS WELL.

7        WHAT IS YOUR POSITION, MR. AXELROD OR MR. HEMANN, ON

8    WHETHER THE FUNDS OBTAINED BY PERFORMANCE GROUP CAN BE

9    ATTRIBUTED TO USAPTI FOR PURPOSES OF FORFEITURE OR WHETHER THE

10   AMOUNT FOR USAPTI SHOULD BE LOWER.

11       I WILL ASK FOR YOUR POSITION AND I WILL ASK FOR

12   MS. LOVETT'S RESPONSE.

13           **MR. AXELROD:**  I THINK THAT THEY CAN, YOUR HONOR.  I

14   THINK THE EVIDENCE AT TRIAL ESTABLISHED THAT THESE ARE

15   FUNCTIONALLY ONE ENTITY, THAT THEY WERE REPRESENTED TO THE

16   CHINESE AS ONE ENTITY, AND THAT THE NAMES CHANGE, BUT THE

17   EMPLOYEES AND THE WORK THEY DID CONTINUED SO THAT THE FACTUAL

18   BASIS IS THERE TO SHOW THAT ALL OF THE FUNDS THAT WERE THE

19   PROCEEDS OF THIS CRIME CAN BE TREATED INDEPENDENT OF THE

20   SPECIFIC NAME OF THE COMPANIES.

21           **THE COURT:**  ALL RIGHT.  MS. LOVETT?

22           **MS. LOVETT:**  YOUR HONOR, WE WOULD DISAGREE.  USAPTI

23   PERFORMANCE GROUP WERE SEPARATELY REGISTERED WITH THE

24   SECRETARY OF STATE HERE IN CALIFORNIA, THEY REMAIN SEPARATELY

25   REGISTERED.  IT WOULDN'T BE APPROPRIATE TO HAVE THE

1    PERFORMANCE GROUP SUMS IN WHICH PERFORMANCE GROUP IS A

2    SIGNATORY TO THE CONTRACT ATTRIBUTED TO USAPTI.

3         **THE COURT:**  ALL RIGHT.  DO YOU WANT TO SAY ANYTHING

4    IN REPLY?

5         **MR. AXELROD:**  NO, YOUR HONOR.

6         **THE COURT:**  I HAVE ANOTHER QUESTION FOR YOU.  I WILL

7    TAKE THAT UNDER ADVISEMENT.

8       THE COURT, AS WITH THE RESTITUTION, INTENDS TO MAKE THE

9    FORFEITURE AWARD JOINT AND SEVERAL, BUT I'M ASKING THE

10   GOVERNMENT IS THEIR POSITION THE SAME IN THAT THE DEFENDANTS

11   CHAO AND MAEGERLE, THAT THE LIABILITY THAT THE GOVERNMENT IS

12   GOING TO IMPOSE HERE PURSUANT TO THE COMMENTS THAT IT MADE,

13   SHOULD BE JOINT AND SEVERAL WITH THE OTHER NAMED -- THE OTHER

14   DEFENDANTS.

15        **MR. AXELROD:**  SO, TO ANSWER THAT QUESTION, YOUR

16   HONOR, MY UNDERSTANDING, AND I HAVE MR. COUNTRYMAN HERE WHO'S

17   A FORFEITURE EXPERT FROM OUR OFFICE, BUT THE ORDER THAT WE ARE

18   SEEKING IS ACTUALLY A MONEY JUDGMENT THAT IS SPECIFIC TO

19   MR. LIEW.  AND IT WOULD BE JOINT AND SEVERAL AS TO ALL OF THE

20   DEFENDANTS.

21       SO THE -- EXCUSE ME.  I AGREE WITH WHAT THE COURT WAS

22   INTENDING TO DO.

23        **THE COURT:**  HERE'S WHAT I'M GOING TO DO.  I

24   UNDERSTAND THE PARTIES' POSITION ON THIS.  I WANT TO LOOK INTO

25   THIS A LITTLE FURTHER.  I WANT TO TAKE A SHORT BREAK AND

1    CONSIDER THIS.

2         ANYTHING ELSE YOU WANTED TO SAY?

3         **MR. AXELROD:**  I JUST WANTED TO ADD TO ONE OF THE

4    COMMENTS THE COURT MADE ABOUT THE EXCESSIVE FINE ARGUMENT,

5    BECAUSE THERE IS A NINTH CIRCUIT CASE THAT IS SPECIFICALLY ON

6    POINT THAT WE DID NOT RAISE THAT I JUST WANTED TO MENTION TO

7    THE COURT FOR THE RECORD.

8         AND THAT IS THE CASE OF UNITED STATES VERSUS RP, WHICH IS

9    264 F. 3D 860, AT 874 AND 875.  THAT'S A NINTH CIRCUIT CASE

10   THAT SPECIFICALLY SAYS QUOTE "FORFEITURE OF PROCEEDS CANNOT BE

11   CONSIDERED PUNISHMENT AND THUS SUBJECT TO THE EXCESSIVE FINES

12   CLAUSE AS IT SIMPLY PARTS THE OWNER FROM THE FRUITS OF THE

13   CRIMINAL ACTIVITY."

14        AND THEN THE NINTH CIRCUIT GOES ON TO HOLD THAT THE

15   EXCESSIVE FINES CLAUSE DOES NOT PERTAIN TO A FORFEITURE OF

16   PROCEEDS.  SO I JUST WANTED TO MAKE THAT CLEAR FOR THE COURT.

17        **THE COURT:**  ALL RIGHT.  THANK YOU.  I'M GOING TO TAKE

18   A BREAK AND I WANT TO LOOK INTO THIS ISSUE.  AND I'LL COME

19   BACK AND CONTINUE MY DISCUSSION.

20        **MS. LOVETT:**  OKAY.

21        (RECESS TAKEN AT 10:47 A.M.; RESUMED AT 11:05 A.M.)

22        **THE COURT:**  WE ARE BACK IN SESSION.

23        WITH RESPECT TO THE ISSUE THAT WE HAVE BEEN DISCUSSING,

24   THE ISSUE OF LIABILITY OF ONE ALLEGED CO-CONSPIRATOR FOR THE

25   ACTS OF ANOTHER CO-CONSPIRATOR WITHIN THE CONSPIRACY PERIOD AS

1    IT RELATES TO FORFEITURE, I WOULD LIKE TO START WITH

2    MR. COUNTRYMAN WHO IS -- PURPORTS TO BE THE EXPERT ON

3    FORFEITURE.  I SAY "PURPORT" BECAUSE I DON'T WANT HIM TO ASK

4    FOR A RAISE BECAUSE OF THIS.

5        THE QUESTION IS, BASED UPON -- I WILL ASK IF THE

6    DEFENDANTS HAVE A RESPONSE, IS THERE ANY LAW THAT YOU ARE

7    AWARE OF, PREFERABLY SUPREME COURT OR IN THIS CIRCUIT, BUT I

8    WILL TAKE ANYTHING AT THIS POINT, IF THERE'S ANYTHING OUT

9    THERE, AS TO WHETHER FOR PURPOSES OF FORFEITURE, THAT THE ACTS

10   OF ONE CO-CONSPIRATOR -- THAT ONE CO-CONSPIRATOR CAN BE HELD

11   LIABLE FOR THE ACTS OF ANOTHER CO-CONSPIRATOR IF THOSE ACTS

12   OCCURRED WITHIN THE COURSE OF THE CONSPIRACY IRRESPECTIVE OF

13   THE ISSUE OF WHETHER ONE -- ONE ENTITY IS A LEGALLY SEPARATE

14   ENTITY.

15       IN OTHER WORDS, ASSUME FOR PURPOSES OF MY QUESTION THAT WE

16   ARE DEALING WITH TWO SEPARATE CORPORATE ENTITIES RATHER THAN

17   ALTER EGOS, BECAUSE QUITE HONESTLY, THE TESTIMONY AT TRIAL --

18   BECAUSE IT REALLY WASN'T AN ESSENTIAL ELEMENT OF THE CASE OR

19   ANY DEFENSE, WAS NOT REALLY LITIGATED.  SO I WOULD LIKE TO

20   KNOW IF YOU KNOW OF ANY AUTHORITY TO THAT EFFECT THAT THE

21   COURT CAN LOOK AT DURING A LATER PAUSE IN THE PROCEEDINGS.

22       BECAUSE AS YOU KNOW, I'M REQUIRED TO RESOLVE ALL OF THESE

23   ISSUES TODAY GIVEN RULE 32.  THEN I WILL ASK, OF COURSE, IF

24   THE DEFENDANTS KNOW OF ANY AUTHORITY ON THIS ISSUE, BECAUSE I

25   DON'T, QUITE FRANKLY.

1          **MR. COUNTRYMAN:**  MY UNDERSTANDING NEWMAN ADDRESSES

2     THIS, YOUR HONOR.

3          **THE COURT:**  WHAT IS THE CITATION?

4          **MR. COUNTRYMAN:**  IT IS A NINTH CIRCUIT CASE, 659

5     F. 3D 1235.  IF I RECALL CORRECTLY, THAT WAS A FRAUD SCHEME

6     INVOLVING MULTIPLE DEFENDANTS AND BOTH WERE HELD LIABLE FOR

7     THE ENTIRE PROCEEDS OF THE CONSPIRACY.

8       THERE IS ALSO -- THERE'S ALSO AN OUTSIDE OF THE CIRCUIT

9     CASE, UNITED STATES VERSUS ALI, 619 F. 3D, 713 WHERE THERE

10    WERE PEOPLE INVOLVED IN THE FRAUD SCHEME, AND ONE DEFENDANT

11    SOUGHT AN OFFSET DUE TO PAYMENTS.

12      THERE IS ALSO UNITED STATES VERSUS CASEY WHERE THERE WAS A

13    DRUG DEAL --

14          **THE COURT:**  WHAT CIRCUIT --

15          **MR. COUNTRYMAN:**  THAT WAS A SEVENTH CIRCUIT CASE,

16    2010.

17          **THE COURT:**  OKAY.

18          **MR. COUNTRYMAN:**  THERE'S ALSO UNITED STATES VERSUS

19    CASEY, LESS ON POINT, BUT WHERE A DRUG DEALER WAS -- HAD TO

20    PAY HIS -- THE HIGHER-UPS IN HIS DRUG ORGANIZATION.  OF THE

21    $7,000, HE ONLY MADE $200.  THE COURT SAID HE WAS LIABLE FOR

22    THE FULL $7,000.  IT DIDN'T MATTER IF HE CUT A BAD DEAL WITH

23    THE OTHER DRUG DEALER, HE WAS RESPONSIBLE FOR THE ENTIRE

24    AMOUNT.  THAT WAS A NINTH CIRCUIT 444 F. 3D AT 1076 -- LET ME

25    GET THE EXACT CITE.  1037, YOUR HONOR.  THAT IS NINTH CIRCUIT

1    2006.

2              **THE COURT:**  THANK YOU VERY MUCH.

3       MS. LOVETT, DO YOU HAVE ANY CASES THAT YOU WANT THE COURT

4    TO CONSIDER?

5              **MS. LOVETT:**  NO, YOUR HONOR.

6              **THE COURT:**  I THOUGHT YOU KNEW ALL THE NINTH CIRCUIT

7    CASES BY HEART.

8              **MS. LOVETT:**  YOU WOULD THINK.

9              **THE COURT:**  THANK YOU VERY MUCH.

10      I'M GOING TO TAKE THAT UNDER ADVISEMENT BECAUSE I DON'T

11   KNOW THE ANSWER.  I AM GOING TO ASSUME FOR PURPOSES OF MY

12   ANALYSIS THAT THESE ARE SEPARATE LEGAL ENTITIES BECAUSE THIS

13   ISSUE WAS NOT, TO MY RECOLLECTION AND THINKING BACK TO THE

14   TRIAL, REALLY LITIGATED.  AND YOU CAN STILL HAVE ENTITIES THAT

15   ARE ALLEGEDLY CO-CONSPIRATORS AND USING DIFFERENT -- THE SAME

16   EMPLOYEES AND THE SAME PURPOSE AND STILL BE A SEPARATE LEGAL

17   ENTITY.  SO I'M NOT GOING TO HEAR ARGUMENT ON IT.  IT WAS --

18   I'M GOING TO ASSUME FOR THESE PURPOSES THAT THEY WERE SEPARATE

19   LEGAL ENTITIES, WHICH IS WHAT MS. LOVETT URGED ON THE COURT,

20   AND I DON'T THINK THE GOVERNMENT WOULD HAVE MET ITS BURDEN THE

21   OTHER WAY ON THIS ISSUE.

22      THANK YOU.

23      I WILL TAKE THAT ISSUE UNDER ADVISEMENT.  I WANT TO READ

24   THOSE CASES.  AT LEAST MY ALTER EGO WILL BE READING THOSE

25   CASES WHILE I AM IN COURT HERE BECAUSE I CAN'T MULTITASK LIKE

1    THAT.

2         SO I WANT TO PROCEED TO THE SPECIFIC SENTENCING OF

3    MR. LIEW.  AND AS I MENTIONED AT THE BEGINNING OF THE

4    PROCEEDING, THE FIRST ROLE FOR THE COURT, OR JOB FOR THE COURT

5    IS TO DETERMINE WHAT THE GUIDELINE -- PROPER GUIDELINE

6    CALCULATIONS ARE, AND THAT HAS TO BE UNDER CARTY AND GALL AND

7    ITS PROGENY MUST BE THE STARTING POINT.  THE COURT MUST

8    CORRECTLY DETERMINE THAT OFFENSE LEVEL AND CRIMINAL HISTORY

9    CATEGORY BEFORE IT GOES FURTHER IN THE ANALYSIS.

10        SO, WITH RESPECT TO MR. LIEW, IT IS UNDISPUTED THAT HIS

11   CRIMINAL HISTORY CATEGORY IS I.  THE PARTIES ALSO HAVE NOT

12   DISPUTED THE BASE OFFENSE LEVELS FOR EACH OF THE CHARGES.

13        MR. LIEW ALSO DOES NOT CONTEST THE APPLICATION OF THE

14   FOLLOWING ENHANCEMENTS:  FOREIGN GOVERNMENT OR FOREIGN

15   INSTRUMENTALITY, U.S. SENTENCING GUIDELINE SECTION

16   2B1.1(B)(5).  SO FOR THAT, THE ADJUSTMENT IS PLUS TWO POINTS.

17        THE OTHER ONE THAT MR. LIEW DOES NOT CONTEST, THE OTHER

18   ENHANCEMENT OR ADJUSTMENT IS OBSTRUCTION OF JUSTICE UNDER U.S.

19   SENTENCING GUIDELINE 3C1.1, AND FOR THAT THERE'S AN ADDITION

20   OF TWO POINTS.

21        THEREFORE, THE COURT WILL APPLY THESE ENHANCEMENTS.

22        THE COURT SHALL NOW ADDRESS MR. LIEW'S DISPUTES REGARDING

23   THE OTHER ENHANCEMENTS AS THEY ARE SET FORTH IN THE

24   PRESENTENCE REPORT.

25        FIRST, THE LEADER OR ORGANIZER UNDER U.S. SENTENCING

1    GUIDELINE LINE 3B1.1(A) AND THE POSSIBLE UPWARD ADJUSTMENT FOR

2    THAT LEADER OR ORGANIZER ENHANCEMENT IS FOUR POINTS.

3        THE PROBATION OFFICER RECOMMENDS AND THE GOVERNMENT ASKS

4    THAT THE COURT IMPOSE A FOUR-POINT ENHANCEMENT UNDER

5    SENTENCING GUIDELINE 3B1.1(A) WHICH PROVIDES FOR ENHANCEMENTS

6    IF A DEFENDANT HAS AN AGGRAVATING ROLE IN AN OFFENSE.

7    SECTION 3B1.1 PROVIDES THAT QUOTE, "IF THE DEFENDANT WAS AN

8    ORGANIZER OR LEADER OF A CRIMINAL ACTIVITY, THAT INVOLVE FIVE

9    OR MORE PARTICIPANTS OR WAS OTHERWISE EXTENSIVE, INCREASE BY

10   FOUR LEVELS", UNQUOTE.

11       IN ORDER TO EVALUATE A DEFENDANT'S ROLE IN THE OFFENSE,

12   THE COURT CONSIDERS QUOTE, "THE EXERCISE OF DECISION-MAKING

13   AUTHORITY, THE NATURE OF PARTICIPATION IN THE COMMISSION OF

14   THE OFFENSE, THE RECRUITMENT OF ACCOMPLICES, THE CLAIMED RIGHT

15   TO A LARGER SHARE OF THE FRUITS OF THE CRIME, THE DEGREE OF

16   PARTICIPATION IN PLANNING OR ORGANIZING THE OFFENSE, THE

17   NATURE AND SCOPE OF THE ILLEGAL ACTIVITY, AND THE DEGREE OF

18   CONTROL AND AUTHORITY EXERCISED OVER OTHERS", UNQUOTE.  AND

19   THERE I WAS QUOTING SENTENCING GUIDELINE 3B1.1, APPLICATION

20   NOTE 4.

21       BASED ON THE EVIDENCE PRESENTED AT TRIAL, THE COURT

22   CONCLUDES THAT THESE FACTORS WEIGH IN FAVOR OF APPLYING THIS

23   ENHANCEMENT.  MR. LIEW ARGUES THAT THE PANGANG, P-A-N-G-A-N-G

24   DEFENDANTS ARE THE TRUE ORGANIZERS OR LEADERS OF THE OFFENSE.

25       THE COURT REJECTS THIS ARGUMENT.  UNDER THE GUIDELINES,

1    MORE THAN ONE PERSON CAN QUALIFY AS AN ORGANIZER OR LEADER,

2    AND I'M CITING THERE, AGAIN, THE ABOVE-MENTIONED SENTENCING

3    GUIDELINE.

4        MR. LIEW ALSO ARGUES THIS ENHANCEMENT SHOULD NOT APPLY

5    BECAUSE HE DID NOT EXERCISE CONTROL OVER MR. MAEGERLE,

6    M-A-E-G-E-R-L-E, MR. SPITLER, S-P-I-T-L-E-R, OR THE PANGANG

7    DEFENDANTS.  HE ALSO CONTENDS THAT THE ENHANCEMENT SHOULD NOT

8    APPLY MERELY BECAUSE HE MANAGED A BUSINESS.  A, QUOTE,

9    "PARTICIPANT", UNQUOTE, IS A PERSON, QUOTE, "WHO IS CRIMINALLY

10   RESPONSIBLE FOR THE COMMISSION OF THE OFFENSE BUT NEED NOT

11   HAVE BEEN CONVICTED.  A PERSON WHO IS NOT CRIMINALLY

12   RESPONSIBLE FOR THE COMMISSION OF THE OFFENSE IS NOT A

13   PARTICIPANT", UNQUOTE.

14       THERE I WAS CITING GUIDELINE 3B1.1, APPLICATION NOTE 1.

15   PLEASE SEE ALSO UNITED STATES VERSUS SMITH, 719 F.3D 1120 AT

16   1126 DECIDED BY THE NINTH CIRCUIT IN 2013.  AND THE COURT SAID

17   IN SMITH, QUOTE, "ANY PERSON WHO KNOWINGLY ABETS THE

18   DEFENDANT'S CONDUCT QUALIFIES AS A PARTICIPANT", UNQUOTE.

19       THE COURT CONCLUDES THAT THERE IS INSUFFICIENT EVIDENCE IN

20   THE RECORD TO CONCLUDE THAT EACH OF USAPTI'S EMPLOYEES MEET

21   THE GUIDELINE DEFINITION OF PARTICIPANTS.  HOWEVER,

22   SECTION 3B1.1(A) IS WRITTEN IN THE DISJUNCTIVE AND IT PERMITS

23   A COURT TO IMPOSE THE FOUR-POINT ENHANCEMENT IF IT FINDS THAT

24   THE DEFENDANT WAS AN ORGANIZER OR LEADER OF CRIMINAL ACTIVITY

25   THAT INVOLVED FIVE OR MORE PARTICIPANTS OR, UNDERSCORE OR, WAS

1    OTHERWISE EXTENSIVE.

2        IN ORDER TO ASSESS QUOTE "WHETHER AN ORGANIZATION IS

3    OTHERWISE EXTENSIVE, ALL PERSONS INVOLVED DURING THE COURSE OF

4    THE ENTIRE OFFENSE ARE TO BE CONSIDERED.  THUS, A FRAUD THAT

5    INVOLVED ONLY THREE PARTICIPANTS BUT USED THE UNKNOWING

6    SERVICES OF MANY OUTSIDERS COULD BE CONSIDERED EXTENSIVE".

7        AND I'M CITING THERE U.S. SENTENCING GUIDELINES

8    SECTION 3B1.1, APPLICATION NOTE 3, AND THEY STRESS THE WORDS

9    "UNKNOWING SERVICES" IN THAT QUOTATION.

10       BASED UPON THE TESTIMONY PRESENTED AT TRIAL, THE COURT

11   FINDS THAT MR. LIEW DID, IN FACT, UTILIZE HIS EMPLOYEES TO

12   ASSIST IN THE COMMISSION OF THE CHARGED CRIMES.  THUS, EVEN IF

13   THOSE EMPLOYEES WERE NOT QUOTE "PARTICIPANTS" UNQUOTE, AS USED

14   IN THE GUIDELINES, THE COURT FINDS BY A PREPONDERANCE OF THE

15   EVIDENCE THAT THE CRIMINAL ACTIVITY WAS QUOTE "OTHERWISE

16   EXTENSIVE" UNQUOTE.  THEREFORE, THE COURT WILL APPLY THE

17   FOUR-POINT ENHANCEMENT.

18       THE NEXT ENHANCEMENT THAT IS AT ISSUE HERE IS THE

19   SOPHISTICATED MEANS, WHICH IS U.S. SENTENCING GUIDELINE

20   SECTION 2T1.1, WHICH CALLS FOR A TWO-POINT ENHANCEMENT.

21       MR. LIEW ARGUES THAT THE COURT SHOULD NOT APPLY THE

22   TWO-POINT ENHANCEMENT FOR QUOTE, "SOPHISTICATED MEANS" TO THE

23   TAX CHARGES.  QUOTE, "SOPHISTICATED MEANS MEANS ESPECIALLY

24   COMPLEX OR ESPECIALLY INTRICATE OFFENSE CONDUCT PERTAINING TO

25   THE EXECUTION OR CONCEALMENT OF AN OFFENSE.  CONDUCT SUCH AS

1  HIDING ASSETS OR TRANSACTIONS OR BOTH THROUGH THE USE OF

2  FICTITIOUS ENTITIES, CORPORATE SHELLS, OR OFFSHORE FINANCIAL

3  ACCOUNTS ORDINARILY INDICATES SOPHISTICATED MEANS".  AND I

4  WAS -- UNQUOTE.  AND I WAS CITING THERE SENTENCING GUIDELINE

5  2T.1, APPLICATION NOTE 5.

6      ALTHOUGH MR. LIEW ARGUES THAT HE PARTICIPATED IN A JOINT

7  VENTURE WITH HIS BROTHER-IN-LAW AND USED COMPANIES IN

8  SINGAPORE TO DISTRIBUTE JOINT VENTURE PROCEEDS, THE COURT DOES

9  NOT FIND HIS EVIDENCE OF THIS FACT RELIABLE OR CREDIBLE.

10      FURTHER, HAVING HEARD THE EVIDENCE PRESENTED AT TRIAL, THE

11  COURT IS SATISFIED THAT THE EVIDENCE DEMONSTRATED THAT

12  MR. LIEW USED THE SINGAPOREAN COMPANIES AS A MEANS TO HIDE

13  ASSETS AND, THEREFORE, WILL APPLY THIS ENHANCEMENT TO THE TAX

14  CHARGES.

15      SO, IN SUMMARY, THE COURT CALCULATES MR. LIEW'S OFFENSE

16  LEVEL AS FOLLOWS BASED UPON THE ANALYSIS THAT I JUST SET

17  FORTH:

18      SO, WE START WITH THE GROUP ONE OFFENSES, COUNTS I THROUGH

19  14.  THE BASE OFFENSE LEVEL IS SIX, THE AMOUNT OF LOSS

20  ENHANCEMENT IS 22, THE INVOLVEMENT OF OR THE FACTOR OF THE

21  FOREIGN GOVERNMENT OR FOREIGN INSTRUMENTALITY IS PLUS TWO, THE

22  ROLE IN THE OFFENSE ENHANCEMENT IS PLUS FOUR, AND THE

23  OBSTRUCTION OF JUSTICE IS PLUS SIX -- PLUS TWO, EXCUSE ME, FOR

24  A TOTAL ADJUSTED LEVEL OF 36.

25      NOW WITH RESPECT TO GROUP TWO OFFENSES, WHICH IS COUNT 15

THROUGH 19, THE BASE LEVEL OFFENSE LEVEL IS 24, THE CRIMINAL

ACTIVITY ENHANCEMENT IS PLUS TWO, THE SOPHISTICATED MEANS

ENHANCEMENT IS PLUS TWO, FOR AN ADJUSTED OFFENSE LEVEL OF 28.

       FOR THE GROUP THREE OFFENSES, COUNTS 20 THROUGH 22, THE

BASE OFFENSE LEVEL IS SIX, THE AMOUNT OF LOSS ENHANCEMENT IS

TEN, AND THE ADJUSTED OFFENSE LEVEL IS 16.

       THE COURT THEN CONDUCTS ITS MULTIPLE-COUNT ADJUSTMENT.

FOR THE GROUP ONE OF COUNTS, THE ADJUSTED OFFENSE LEVEL IS 36,

WHICH IS ONE UNIT.  FOR GROUP TWO, THE ADJUSTED OFFENSE LEVEL

IS 28 OR .5 UNITS.  FOR GROUP THREE, THE ADJUSTED OFFENSE

LEVEL IS 16 OR ZERO UNITS.  THE TOTAL UNITS ARE 1.5.  THE

GREATER OF THE OFFENSE LEVELS IS 36.  AND UNDER U.S.

SENTENCING GUIDELINE 3D1.4, WE INCREASE THE OFFENSE LEVEL BY

ONE RESULTING IN AN ADJUSTED -- COMBINED ADJUSTED OFFENSE

LEVEL OF 37.  UNDER THE THEN APPLICABLE GUIDELINES THAT WERE

IN EFFECT, THE ONES THAT THE COURT INDICATED IT WOULD FOLLOW,

WITH A CRIMINAL HISTORY CATEGORY OF I AND AN ADJUSTED OFFENSE

LEVEL OF 32, THE GUIDELINE RANGE IS 210 TO 262 MONTHS.

       NOW, I WANT TO DISCUSS USAPTI.  I WANT TO TURN TO THAT

DEFENDANT.

       WITH RESPECT TO USAPTI, THE COURT CONCLUDES THAT THE BASE

OFFENSE LEVEL IS SIX.  FOR THE REASONS DISCUSSED AT THE OUTSET

OF THESE PROCEEDINGS, THE COURT APPLIES A 22-POINT ENHANCEMENT

FOR THE AMOUNT OF LOSS.  USAPTI DOES NOT OBJECT TO THE

TWO-POINT ENHANCEMENT PURSUANT TO GUIDELINE 2B1.1(B)(5)(B),

1    AND THE COURT APPLIES THAT ENHANCEMENT.

2        USAPTI ARGUES THAT IT SHOULD NOT RECEIVE AN ENHANCEMENT TO

3    THE OFFENSE LEVEL OR TO ITS CULPABILITY LEVEL FOR OBSTRUCTION

4    OF JUSTICE PURSUANT TO U.S. SENTENCING GUIDELINE 3C1.1, AND

5    U.S. SENTENCING GUIDELINE 8C2.5(E).

6        SECTION 8C2.5(E) PROVIDES THAT QUOTE, "IF THE ORGANIZATION

7    WILLFULLY OBSTRUCTED OR IMPEDED, ATTEMPTED TO OBSTRUCT OR

8    IMPEDE, OR AIDED AND ABETTED OR ENCOURAGED OBSTRUCTION OF

9    JUSTICE DURING THE INVESTIGATION, PROSECUTION, OR SENTENCING

10   OF THE INSTANT OFFENSE, OR WITH KNOWLEDGE OF -- WITH KNOWLEDGE

11   THEREOF FAILED TO TAKE REASONABLE STEPS TO PREVENT SUCH

12   OBSTRUCTION OR IMPEDANCE OR ATTEMPTED OBSTRUCTION OR

13   IMPEDANCE, ADD THREE POINTS," UNQUOTE TO THE CULPABILITY

14   SCORE.

15       SECTION 3C1.1 CONTAINS SUBSTANTIALLY SIMILAR LANGUAGE AND

16   PROVIDES FOR A TWO-POINT ENHANCEMENT TO THE OFFENSE LEVEL.

17       USAPTI ARGUES THAT IT DOES NOT QUALIFY FOR AN OBSTRUCTION

18   OF JUSTICE ENHANCEMENT BECAUSE IT WAS ONLY CONVICTED ON COUNT

19   10, WHICH RELATED TO A FILING -- TO FILING A FALSE ANSWER IN A

20   RELATED CIVIL CASE.

21       USAPTI CONTENDS THAT THAT EVENT TOOK PLACE LONG BEFORE

22   USAPTI WAS AWARE OF THE CRIMINAL PROCEEDINGS.  QUOTE,

23   "OBSTRUCTIVE CONDUCT CAN VARY WIDELY IN NATURE, DEGREE OF

24   PLANNING, AND SERIOUSNESS.  APPLICATION NOTE 4 SETS FORTH

25   EXAMPLES OF THE TYPES OF CONDUCT TO WHICH THIS ENHANCEMENT IS

1    INTENDED TO APPLY", UNQUOTE.

2        IT'S GUIDELINE -- I WAS JUST QUOTING GUIDELINE 3C1.1,

3    APPLICATION NOTE 3.

4        APPLICATION NOTE 4, IN TURN, INCLUDES QUOTE, "PRODUCING OR

5    ATTEMPTING TO PRODUCE A FALSE, ALTERED, OR COUNTERFEIT

6    DOCUMENT OR RECORD DURING AN OFFICIAL INVESTIGATION OR

7    JUDICIAL PROCEEDING", UNQUOTE, AS AN EXAMPLE OF COVERED

8    CONDUCT.  I WAS QUOTING GUIDELINE 3C1.1, APPLICATION NOTE

9    4(C).

10       THE GOVERNMENT HAS NOT ADDRESSED USAPTI'S OBJECTIONS TO

11   APPLICATION OF THIS ENHANCEMENT.  ON THE FACTS OF THIS CASE,

12   THE COURT CONCLUDES THAT THE GOVERNMENT HAS NOT MET ITS BURDEN

13   TO SHOW THAT BASED ON THE CONDUCT FOR WHICH THE JURY CONVICTED

14   USAPTI, THIS ENHANCEMENT SHOULD APPLY.

15       ACCORDINGLY, THE COURT WILL NOT APPLY A TWO-POINT

16   ENHANCEMENT TO THE OFFENSE LEVEL OR A THREE-POINT ENHANCEMENT

17   TO USAPTI'S CULPABILITY LEVEL.

18       THEREFORE, THE COURT CALCULATES USAPTI'S OFFENSE LEVEL AS

19   FOLLOWS:  BASE OFFENSE LEVEL OF SIX, AN AMOUNT OF LOSS

20   ENHANCEMENT OF 22, THE FOREIGN GOVERNMENT ENHANCEMENT OF TWO,

21   FOR AN ADJUSTED OFFENSE LEVEL OF 30.  BASED UPON THE OFFENSE

22   LEVEL, THE BASE FINE IS $10,500,000.

23       THE COURT FINDS THAT USAPTI'S CULPABILITY LEVEL IS SIX,

24   AND PURSUANT TO GUIDELINE SECTION 8C2.6, WITH A CULPABILITY

25   LEVEL OF SIX, THE MINIMUM MULTIPLIER IS 1.2 AND THE MAXIMUM

1   MULTIPLIER IS 2.4.  THE APPLICABLE GUIDELINE FINE RANGE,

2   THEREFORE, IS $12,600,000 TO $25,200,000.

3       BEFORE THE COURT BEGINS ITS ANALYSIS OF THE

4   SECTION 3553(A) FACTORS HAVING CONCLUDED ITS ANALYSIS UNDER

5   THE GUIDELINES, AND FINALLY IMPOSES SENTENCE ON THE

6   DEFENDANTS, THE COURT WILL NOW PROVIDE MR. LIEW AND USAPTI

7   WITH THEIR OPPORTUNITY TO ELOCUTE TO THE COURT.

8       MR. LIEW, WOULD YOU PLEASE COME FORWARD WITH YOUR COUNSEL.

9       **MR. GASNER:**  THANK YOU, YOUR HONOR.  I APPRECIATE THE

10  OPPORTUNITY TO BE HEARD.

11      I ALSO APPRECIATE THE COURT'S STRUGGLE WITH THE LOSS TO DU

12  PONT ISSUE THAT REALLY IS WHAT HAS US, UNDER THE GUIDELINES,

13  IN THE STRATOSPHERE IN A CASE THAT IT REALLY HINGES ON

14  INTELLECTUAL PROPERTY.

15      THE COURT KNOWS THAT FEDERAL COURTS DEAL WITH INTELLECTUAL

16  PROPERTY THAT IS FAR MORE CUTTING EDGE.  THIS IS A CASE ABOUT

17  WHITE PAINT PIGMENT.  IT HAS BEEN AROUND SINCE THE 1950'S.  I

18  AM SORRY THAT THE COURT DIDN'T FIND MR. COOPER MORE

19  PERSUASIVE, BUT IT WAS UNDISPUTED THAT THERE IS A VAST AMOUNT

20  OF LITERATURE AND PATENTS, BOTH EXPIRED AND UNEXPIRED, THAT

21  ARE OUT THERE.  SO WE ARE TALKING ABOUT TECHNOLOGY THAT HAS

22  BEEN LARGELY DISCLOSED.

23      NOW, THAT'S NOT TO SAY THAT THERE MIGHT NOT BE SOME TRADE

24  SECRETS THAT ARE --

25      **THE COURT:**  I RECENTLY READ IN THE NEWSPAPER SOME LAW

1   FIRM WAS SAYING THAT THE -- COMPARING PUBLICLY DISCLOSED KINDS

2   OF TRADE SECRETS, COMPARING APPLES AND ORANGES IS

3   INAPPROPRIATE.

4       DID I READ THAT SOMEWHERE THAT SOME GREAT LAW FIRM SAID

5   THAT?

6           **MR. GASNER:**  IT WASN'T ME, YOUR HONOR.

7           **THE COURT:**  YOUR FIRM SAID IT.

8           **MR. GASNER:**  WELL, I MEAN IT IS APPLES AND ORANGES IN

9   ONE SENSE AND YOU HAVE TO LOOK AT WHAT THE PATENT DISCLOSURE

10  IS AND WHAT THE TRADE SECRET IS.  YOU CAN'T DO IT IN A KIND OF

11  GENERALIZED WAY, BUT THE FACT IS, AND THE COURT WELL KNOWS, A

12  DISCLOSURE IN A PATENT DOES VITIATE TRADE SECRET PROTECTION

13  FOR WHAT IS DISCLOSED.  THAT IS BEDROCK LAW.

14      IT'S IRONIC, I THINK, IN THIS NEW WORLD OF THE

15  CRIMINALIZATION OF TRADE SECRETS THAT WE PUT PLAINTIFFS TO

16  SUCH A BURDEN TO PROVE ANY AMOUNT OF MONEY DAMAGES.  THEY HAVE

17  TO IDENTIFY THE TRADE SECRET WITH PARTICULARITY, THEY HAVE TO

18  SHOW CAUSATION, THEY HAVE TO PUT ON EXPERT TESTIMONY, THEY

19  HAVE TO LINK IT UP IN ORDER TO JUST GET MONEY.

20      BUT IN THIS BRAVE NEW WORLD OF CRIMINALIZING OF TRADE

21  SECRETS, IT APPEARS THAT WE DO FAR LESS IN THE SENSE THAT HERE

22  WE ARE AT SENTENCING, THE GOVERNMENT VERY ARTFULLY CHARGED

23  THIS CASE SO THEY DIDN'T HAVE TO PROVE A TRADE SECRET AS TO

24  THE GRAND CONSPIRACY.  AS TO THE POSSESSION COUNTS, WHICH THE

25  COURT VERY APPLY LOOKED AT FOR THIS IDEA OF HARM TO DU PONT,

1    IT WAS VERY, VERY LIMITED.

2        SO, ON ONE HAND YOU HAD KIND OF THE GRAND CONSPIRACY THAT

3    DIDN'T REQUIRE ANY PROOF OF A TRADE SECRET, LET ALONE ITS

4    VALUE.  AND ON THE OTHER HAND, YOU HAD AT THE MICRO LEVEL

5    THESE THREE PIECES, TRADE SECRETS 2, 3, AND 4 THAT WERE

6    BANDIED AROUND THE COURT A LOT.  TRADE SECRET 5 WAS NEVER IN

7    MR. LIEW'S POSSESSION.

8        THE GOVERNMENT VERY ARTFULLY PRESENTED ITS CASE, BUT IT

9    WAS BASED ON ADMISSIBLE EVIDENCE.  AND WE NOW KNOW A LOT MORE

10   BASE ON THE FULL PICTURE THAT THE COURT HAS FROM SENTENCING.

11       AND THE FOCUS, EITHER UNDER THE GUIDELINES OR UNDER 3553,

12   THE FOCUS REALLY IS THE LOSS TO THE VICTIM.  I MEAN, IN

13   DECIDING HOW SERIOUS A TRADE SECRET CRIME TRULY IS, WHAT THE

14   GUIDELINES SAY IS YOU LOOK AT THE HARM TO THE VICTIM.  THAT'S

15   THE METRIC.

16       AND THE GUIDELINES UNDER 2B1.1, IT'S BEEN ROUNDLY

17   CRITICIZED.  QUANTITY ISN'T EVERYTHING.  AND I THINK THE COURT

18   HAS APTLY STRUGGLED WITH THAT IN MANY CONTEXT.  WHAT WE ARE

19   LOOKING FOR IN SENTENCING IS JUSTICE.  AND JUSTICE IS

20   INDIVIDUALIZED.  AND SHEER QUANTITY ISN'T EVERYTHING.

21       I APPRECIATE THAT THE COURT FOLLOWED THE APPLICATION NOTE

22   THE BEST THAT THE COURT HAD TO FOLLOW IN THE GUIDELINES IN

23   TERMS OF EVENTUALLY ENDING UP WITH GAIN.  BUT IF I CAN TAKE

24   JUST A MINUTE TO TALK ABOUT THE LOGIC OF THAT.

25       I THINK THE ONE THING WE KNOW IS THE $28 MILLION IS NOT

1   THE LOSS TO DU PONT.  IT JUST ISN'T.  THERE WERE PARTS OF THIS

2   PROJECT THAT HAD NOTHING TO DO WITH BOB MAEGERLE.  THERE WAS

3   ORDER HANDLING.  THERE WERE OTHER INSTRUMENTATIONS AND WERE

4   COMPLETELY SEPARATE CONSULTANTS WERE HIRED.  IT WASN'T ALL BOB

5   MAEGERLE.

6       INTERESTINGLY, TOO, THE GOVERNMENT CONCEDED WHEN I TRIED

7   TO ARGUE THAT WHAT DU PONT WAS TRYING TO DO WAS TO RESTRICT

8   ITS ENGINEERS.  WOULD FIRE THEM, AND THEN SAY, BUT YOU CAN'T

9   HAVE A LIVING AFTER WE'VE DOWNSIZED YOUR JOB.

10      THE GOVERNMENT STOOD UP AND SAID, NO, WE ARE NOT SAYING

11  THAT.  MR. MAEGERLE AND MR. SPITLER ARE FREE TO WORK IN THE

12  FIELD.  THEY WERE FREE TO WORK ON THIS PROJECT.  WHAT THEY

13  COULDN'T DO WAS USE TRADE SECRETS.  FAIR ENOUGH.

14      AND THE TRADE SECRETS THAT WERE -- THAT WERE TALKED ABOUT

15  IN THIS CASE WERE SEVERAL.  TRADE SECRET 2 IS THE ONE THAT GOT

16  BANDIED AROUND THE MOST, THE LARGE OXIDATION SPREADSHEET OR

17  FLOW SHEET THAT THE GOVERNMENT THEN LINKED TO TIM SPITLER,

18  CALLED 'EM FLOW SHEET TIM, AND ALL OF THAT.  THAT WAS THE MAIN

19  ARGUMENT FOR STEALING WAS -- WE JUST HEARD A LOT OF THAT.

20      TRADE SECRET 3, THAT WAS THE REASON FOR CALLING

21  DR. DIEMER.  WE SPENT A DAY WITH HIM TALKING ABOUT THIS ONE

22  PIECE OF PAPER.

23      WE ALSO HEARD FROM MR. THONGTHAWEE.  HE COULDN'T FIGURE

24  OUT -- HE COULDN'T MAKE HEADS OR TAILS OUT OF IT.

25      WHAT THE EVIDENCE HERE SHOWED WAS A LOT OF POSSESSION

1    EVIDENCE.  AND I SUBMIT TO THE COURT THAT POSSESSION DOESN'T

2    HURT ANYBODY.  THE GOVERNMENT TRIES TO GET AROUND THIS BY

3    SAYING, WELL, IT'S STOLEN.

4        NOW, WHEN SOMEBODY STEALS A PIECE OF JEWELRY IN A

5    BURGLARY.  THE THIEF HAS IT AND THE HOMEOWNER DOESN'T.  SO WE

6    ORDINARILY THINK OF STEALING AS HURTING THE VICTIM.  BUT WHEN

7    YOU STEAL A COPY OR YOU OBTAIN A COPY, AND WE KNOW FROM THE

8    HOUSTON DECLARATION AND ALL THAT, HOW THIS REALLY HAPPENED --

9    THESE WERE OLD DOCUMENTS THAT DU PONT HAD SHIPPED TO

10   MR. SPITLER'S HOUSE LONG AGO, THEY SAT IN HIS CLOSET FOR MANY,

11   MANY YEARS.  SITTING IN HIS CLOSET, THOSE PIECES OF PAPER DID

12   NO HARM TO DU PONT.

13       IN FACT, THE COURT MAY RECALL PAUL REIS WAS A MEMBER OF

14   THE CIERRA GROUP.  THE COURT ACCEPTED A GUILTY PLEA FROM TZE

15   CHAO WHO'S THE HEAD OF THE CIERRA GROUP.  AND THEY WERE

16   BROUGHT INTO THIS VENTURE, THIS BUSINESS DEAL IN ORDER TO VET

17   MR. LIEW'S WORK.  TZE CHAO WAS A SENIOR SCIENTIST AT DU PONT.

18   JAMES REEVES WAS A PART OF THAT GROUP AND PAUL REIS WAS A

19   MEMBER OF THAT GROUP.  PAUL REIS HAD NINE BIG P&ID CHARTS.  I

20   HAVE THEM HERE, I CAN UNFURL THEM FOR THE COURT.  IF THE COURT

21   REMEMBERS, WE TRIED TO GET THAT INTO EVIDENCE, BUT WE

22   COULDN'T.

23       FOR SENTENCING, I THINK THE COURT NEEDS TO CONSIDER

24   POSSESSION DOESN'T HURT ANYBODY.  AT LEAST IN INTELLECTUAL

25   PROPERTY.  IT SAT -- THESE PIECES OF PAPER SAT IN

1    MR. SPITLER'S CLOSET FOR -- LOOKS LIKE 14 YEARS.  AND, YES, HE

2    GAVE THEM TO MR. LIEW.  MR. LIEW PAID HIM SOME MONEY AS A

3    CONSULTANT, AND THAT ALL IS -- JURY FOUND HIM GUILTY.  WE ARE

4    NOT TRYING TO RUN AWAY FROM THE JURY'S VERDICT.  THEY FOUND

5    HIM GUILTY OF POSSESSION.

6        BUT POSSESSION OF A TRADE SECRET ONLY MEANS THAT THE JURY

7    FOUND THAT IT HAS SOME ACTUAL OR POTENTIAL VALUE BY VIRTUE OF

8    IT BEING KEPT SECRET.  THEY COULD HAVE FOUND THESE THINGS WERE

9    WORTH 23 CENTS.  WE ARE NOT ARGUING WITH THE VERDICT, BUT WHAT

10   WE ARE TRYING TO DO IS ADDRESS THE ISSUE, WHICH IS VITAL FOR

11   SENTENCING AND WASN'T ADDRESSED BY THE JURY, AND THAT IS WHAT

12   WAS THE HARM TO DU PONT.

13       AND INTERESTINGLY, I WANT TO PICK UP, TOO, ON WHAT THE

14   COURT SAID EARLIER IN TALKING ABOUT $28 MILLION AS GAIN THAT

15   THE REASON, AT LEAST IN THE FORFEITURE CONTEXT, I GET THAT

16   FORFEITURE IS A BROADER STANDARD AND IT TALKS ABOUT PROCEEDS

17   DIRECT OR INDIRECT.  FAIR ENOUGH.  BUT THE COURT DID TALK

18   ABOUT LOOKING AT THE EVIDENCE IN THIS CASE AT TRIAL AND

19   FEELING THAT BECAUSE MR. LIEW'S RELATIVELY LACK OF EXPERIENCE

20   IN TIO2, THE COURT COULD BELIEVE, BASED ON THE TRIAL, THAT HE

21   WAS HIRED BECAUSE OF TRADE SECRETS.

22       I ASSUME THAT THAT COMES IN PART FROM THE 2004 LETTER THAT

23   WAS TALKED A LOT ABOUT.  WE CALLED IT A PUFFERY LETTER, BUT

24   THAT LETTER TALKED ABOUT THIS TECHNOLOGY NOT BEING GENERALLY

25   AVAILABLE.  AND I CAN UNDERSTAND THE COURT LOOKING AT THAT.

1    WE BELIEVE THAT THE LETTER READ AS A WHOLE DOESN'T SUPPORT

2    THAT INFERENCE, BUT BE THAT AS IT MAY, BUT HERE WE ARE AT

3    SENTENCING, AND WE ARE ENTITLED TO LOOK AT MORE THAN THAT.

4         WHAT WE KNOW, FOR EXAMPLE, FROM MR. KI (PHONETIC), WHO IS

5    ONE OF THE HEADS AT PANGANG -- WHAT WAS SO UNUSUAL ABOUT THIS

6    TRIAL WAS THAT HALF THE CONSPIRACY WASN'T HERE.  THE COURT

7    RULED ON THE SERVICE OF PROCESS HARD FOUGHT OVER YEARS THAT

8    THESE OTHER CONSPIRATORS, THE COMPANY AND ALL THOSE INDIVIDUAL

9    DEFENDANTS, HAD NOT BEEN PROPERLY SERVED.

10        SO WE TRIED THIS CASE WITH HALF THE PARTICIPANTS NOT HERE.

11   ACTUALLY, TWO-THIRDS BECAUSE TZE CHAO NEVER SHOWED UP, NO

12   WITNESSES FROM THE CIERRA GROUP, AND WE TRIED THE CASE IN A

13   BIT OF A BACKWATER, JUST LOOKING AT MR. LIEW'S PIECE OF THIS.

14        BUT JUST TO -- IN THE SENTENCING CONTEXT, THE COURT IS

15   ENTITLED TO LOOK AT MORE THAN WHAT WE HEARD AT TRIAL.  AND ONE

16   OF THE THINGS THAT WHEN THE GOVERNMENT HAD ALL THESE PANGANG

17   PEOPLE HERE IN THE UNITED STATES AT THE ROADWAY INN, YOU KNOW,

18   RIGHT HERE IN THE EAST BAY, THEY INTERVIEWED ZHONG KI

19   (PHONETIC) WHO WAS ONE OF THE HIGHEST RANKING PERSON THAT THEY

20   HAD HERE.  AND WHAT HE SAID TO THE FBI WAS HE AND HIS

21   COLLEAGUES THOUGHT THE TECHNOLOGY PROVIDED BY USAPTI WAS

22   ALREADY IN THE PUBLIC SPHERE.

23        SO IN THE SENTENCING CONTEXT, I DON'T THINK IT'S FAIR FOR

24   THE COURT TO CONCLUDE THAT BASED ON THE EVIDENCE AT TRIAL --

25   MOST OF THE WITNESSES WEREN'T HERE -- THAT THE ENTIRETY OF

1  THIS $28 MILLION CAN BE LINKED IN A REAL FACTUAL WAY TO THE

2  OBTAINING OF THIS CONTRACT.

3      SECOND POINT THAT IS FROM THE EVIDENCE THAT WASN'T AT

4  TRIAL, MR. SPITLER, DECEASED, RAISED IN THE REBUTTAL CLOSING

5  ARGUMENT BY THE GOVERNMENT AS KIND OF THE LINCHPIN OF THIS

6  THING, WHAT HE TOLD THE FBI WAS THAT THE BOXES THAT HE HAD

7  BEEN SENT VOLUNTARILY BY DU PONT, HE GAVE ACCESS TO MR. LIEW

8  IN 2010.  THAT IS YEARS AFTER THE CONTRACTS WERE OBTAINED AND

9  IT WAS AFTER THE 30K PROJECT HAD BEEN DONE.

10     SO I THINK WE KNOW AN AWFUL LOT OF THIS $28 MILLION REALLY

11 CAN'T BE FAIRLY ATTRIBUTED TO MR. LIEW.  AND I UNDERSTAND THE

12 COURT'S RULING ON THE GUIDELINES, BUT THANK GOD FOR BOOKER.

13 BECAUSE THE COURT DOESN'T NEED TO JUST SLAVISHLY FOLLOW THE

14 GUIDELINES.

15     I UNDERSTAND THAT UNDER CARTY, THAT'S THE STARTING POINT

16 FOR THE COURT.  BUT I DO THINK THAT IF THE COURT LOOKED AT ALL

17 THE MATERIALS THAT WE PROVIDED TO TRY TO FLUSH OUT THE REST OF

18 THE STORY, LIKE PAUL HARVEY USED TO SAY ON THE RADIO, IT IS

19 NOT FAIR TO REALLY VIEW THIS AS A 28 MILLION-DOLLAR CRIME.  IT

20 REALLY ISN'T.

21     AND THAT'S HOW WE GET INTO THE STRATOSPHERE.  YES, ON THE

22 TAX SIDE, THERE WAS A MONEY SIDE OF THIS CASE AND WE HAVE

23 RECOMMENDED A SENTENCE 63 TO 78 MONTHS THAT INCLUDES THE

24 OBSTRUCTION, THE BANKRUPTCY, THE TAX, AND A PROPERLY LOW

25 VALUATION FROM A REALISTIC POINT OF VIEW.

1    THE OTHER THING THAT I WANT TO POINT OUT IN TERMS OF THE

2    CAUSATION OF -- OF HOW THINGS CAME ABOUT HERE IS THIS LETTER

3    THAT I JUST GOT FROM DU PONT THAT HAD BEEN SENT TO

4    MS. GOLDSBERRY, BUT I JUST GOT BEFORE.  AND -- I JUST GOT IT

5    YESTERDAY.

6        AND WHAT IT TALKS ABOUT IS THAT IT IS NOT ENOUGH, IT OFTEN

7    ISN'T ENOUGH TO STEAL THE DOCUMENTS.  THIS WORD "STEAL", HOW

8    MANY TIMES DO WE HAVE TO HEAR THAT EVEN THOUGH THE GOVERNMENT

9    KNOWS THAT'S NOT AN ACCURATE CHARACTERIZATION OF HOW

10   MR. SPITLER GOT THESE DOCUMENTS.

11       NONETHELESS, DU PONT ADOPTS THAT RHETORIC.  IT ISN'T

12   ENOUGH TO STEAL THE DOCUMENTS.  UNSCRUPULOUS COMPETITORS NEED

13   THE KNOW HOW THE --

14           **THE COURT:**  SLOW DOWN.  I DO THE SAME THING.  WHEN I

15   READ, I SPEED UP.  IF YOU ARE GOING TO READ FROM DU PONT'S --

16   PLEASE MAKE BELIEVE, WHICH YOU ARE, DICTATING TO THE YOUNG

17   LADY DOWN THERE.

18           **MR. GASNER:**  MY APOLOGIES TO THE YOUNG LADY.

19           "IT ISN'T ENOUGH TO STEAL THE DOCUMENTS.

20           UNSCRUPULOUS COMPETITORS NEED TO KNOW HOW AS WELL IN

21           THE FORM OF EXPERIENCE, SCIENTISTS, AND ENGINEERS WHO

22           HAVE ACTUALLY APPLIED THE TECHNOLOGY.  THAT IS

23           APPARENTLY WHY ROBERT MAEGERLE AS WELL AS TIMOTHY

24           SPITLER AND TZE CHAO WERE CRITICAL TO THE CRIMINAL

25           CONSPIRACY HERE."

1    I WILL TALK MORE ABOUT THEIR RELATIVE INVOLVEMENT IN A

2    MINUTE, BUT JUST TO PAUSE THERE, IT IS UNDISPUTED THAT

3    MR. LIEW WAS ENTITLED TO HIRE BOB MAEGERLE.  HE WAS NOT

4    PERMANENTLY UNEMPLOYABLE BECAUSE HE HAD WORKED AT DU PONT 15

5    YEARS BEFORE ALL OF THIS.

6    TIM SPITLER WAS ENTITLED TO CONSULT.  THEY NEEDED TO STEER

7    CLEAR OF TRADE SECRETS.  THERE ARE BIG FIGHTS IN CIVIL CASES

8    OVER WHAT'S A TRADE SECRET AND WHAT ISN'T.  WE NEVER REALLY

9    HAD THAT FIGHT DURING THE TRIAL BECAUSE OF THE WAY THE

10   GOVERNMENT CHARGED THE CASE.

11   I UNDERSTAND THE COURT DOESN'T WANT TO DO AN EVIDENTIARY

12   HEARING AND FEELS THAT IT KNOWS ENOUGH FROM THE TRIAL, BUT I

13   WOULD REALLY EMPHASIZE THAT IF WE REALLY BEAR DOWN ON WHAT ARE

14   THE TRADE SECRETS HERE AND HOW WERE THEY USED, EVEN IF WE TAKE

15   EVERYTHING THE GOVERNMENT PROVED AT TRIAL, TRADE SECRET 2, 3,

16   4, AND EVEN 5, FIVE IS THAT BASIC DATA MANUAL APPARENTLY

17   MR. MAEGERLE LOOKED AT EVERY ONCE IN A WHILE AND TOOK SOME

18   SHORTCUTS WITH BASED ON THE EVIDENCE, BUT THAT WASN'T

19   SOMETHING MR. LIEW HAD.

20   THERE WAS NO EVIDENCE THAT ANYTHING FOUND ITS WAY INTO THE

21   WORK PRODUCT.  THE ULTIMATE TRANSMISSION OF WORK PRODUCT TO

22   PANGANG WAS IN THE FORM OF THE PLANS AND SPECIFICATIONS AND

23   OTHER DOCUMENTS THAT WERE THE MILESTONES FOR GETTING PAID

24   UNDER THE CONTRACT.  NONE OF THE GOVERNMENT WITNESSES EVER

25   LOOKED AT ANY OF THAT TO SEE WHAT WAS TRANSMITTED.

1       AND -- AND SO THERE WAS NO PROOF, WHETHER IT'S BY A

2   PREPONDERANCE OR CLEAR AND CONVINCING THAT ANYTHING WAS

3   CONVEYED TO PANGANG THAT WAS ACTUALLY A TRADE SECRET.  THAT IS

4   THE REALITY OF HOW THE GOVERNMENT CHOSE TO STRUCTURE THE

5   CHARGES IN THE INDICTMENT AND HOW THEY TRIED THE CASE.

6       THAT'S WHY WE THINK THAT IN VALUING LOSS TO DU PONT, THIS

7   IS MORE OF A POSSESSION CASE.  IT'S WHERE PEOPLE, YES, HAD

8   PIECES OF PAPER THAT THEY SHOULDN'T HAVE HAD, BUT WHAT HARM

9   FLOWED TO DU PONT FROM THAT?

10      DU PONT IS NOT IN THE BUSINESS OF DESIGNING PLANS FOR

11  OTHER PEOPLE.  THEY SIMPLY DON'T DO THAT.  THEY SELL TIO2, BUT

12  NOTHING STOPS THEM FROM SELLING TIO2 IN CHINA.  AND THE

13  PRELIMINARY PLANS THAT MR. LIEW DREW UP PURSUANT TO THE

14  ENGINEERING CONTRACTS ARE MILES AWAY FROM ANY FRUITION.

15      SO WHAT WE ARE TALKING ABOUT IS HIS POSSESSION OF PIECES

16  OF PAPER AND THEIR CIRCULATION BETWEEN HIM AND MR. MAEGERLE.

17  THE KEY JUNCTURE IS WHAT FOUND ITS WAY INTO THE PLANS FOR --

18  FOR PANGANG, WHAT ACTUALLY GOT TRANSMITTED.  WHAT WE KNOW

19  THERE, TOO, MR. REEVES HAS A FASCINATING EMAIL THAT WE HAVE

20  SUBMITTED TO THE COURT IN WHICH HE SAYS HE WENT TO JINZHOU IN

21  1999 AND THEY HAVE REMARKABLY GOOD TECHNOLOGY, ESSENTIALLY A

22  REPLICA OF ANTIOCH.  ANTIOCH WAS AN OLD DU PONT PLANT THAT WAS

23  THE MODEL FOR WHAT WAS SOLD TO SHERWIN-WILLIAMS AT ASHTABULA.

24      WHAT MR. REEVES, A SENIOR FELLOW, REPORTED BACK TO CONNIE

25  HUBBARD, YOU REMEMBER CONNIE HUBBARD WAS THE --

1          **THE COURT:**  -- PERSON.

2          **MR. GASNER:**  WHAT HE SAID IN THAT EMAIL IS I HAVE

3   BEEN TO JINZHOU IN 1999.  THEY HAVE A VIRTUAL REPLICA OF

4   ANTIOCH.

5      SO, AGAIN, IF WE ARE LOOKING AT HARM CAUSED BY THIS MAN

6   AND THIS COMPANY, WE HAVE TO TAKE INTO EFFECT WHAT IS IN THE

7   PUBLIC RECORD, WHAT DID CHINA ALREADY HAVE, AND THINK ABOUT

8   WHAT HARM DID HE DO WHEN HE SENT HIS PLANS OVER, WHICH THE

9   GOVERNMENT HASN'T COME CLOSE TO PROVING CONTAINED EVEN A

10  SINGLE TRADE SECRET.

11         **THE COURT:**  YOU'RE SPEAKING VERY ELOQUENTLY BUT YOU

12  ARE REPLICATING, TO USE YOUR TERM, WHAT WAS IN YOUR PAPERS.

13  AND I HAVE READ THOSE FOR MANY, MANY WEEKS AND I HAVE HEARD

14  THESE ARGUMENTS BEFORE.  I'M NOT CUTTING YOU OFF, BUT IF YOU

15  HAVE SOMETHING NEW OR ADDITIONAL THAT YOU WANT TO ADD, YOU MAY

16  DO SO, AND THEN I WILL HEAR FROM YOUR CLIENT AND I'LL HEAR

17  BRIEFLY FROM THE GOVERNMENT BECAUSE I ALLOWED YOU TO GO ON AND

18  NORMALLY I DON'T WHEN I HAVE SUCH REALLY EXTENSIVE AND

19  ELOQUENTLY WRITTEN PAPERS FROM THE PARTIES.

20         **MR. GASNER:**  THANK YOU, YOUR HONOR.

21     LET ME MAKE ONE OTHER POINT.  AND THAT IS, I KNOW IT'S

22  IMPORTANT TO THE COURT TO DO JUSTICE DISTRIBUTABLY, THAT IS,

23  IN THIS KIND OF CASE, MULTIPLE DEFENDANTS, I KNOW THAT THE

24  COURT CARES ABOUT JUSTICE ACROSS THE BOARD.

25     AND WHERE WE ARE HEADED IN THIS CASE IS A VERY UNFAIR

RESOLVE.  WE'VE GOT VERY HIGH GUIDELINES THAT HAVE US TALKING

ABOUT SENTENCES THAT ARE USUALLY RESERVED FOR RAPE AND MURDER,

AND JUST THE MOST HEINOUS KINDS OF VIOLENT CRIMES.

    AND WE LEAVE IT TO YOUR HONOR'S GOOD JUDGMENT ABOUT HOW TO

DEAL WITH THAT.  BUT THE OTHER PIECE OF THIS IS HOW IS THE

COURT GOING TO SENTENCE THE OTHERS INVOLVED HERE.  WE HAVE

ASKED FOR A CONTINUANCE; THE COURT DENIED IT.  BUT THE

HANDWRITING IS ON THE WALL.  THE GOVERNMENT HAS GONE WAY OUT

OF ITS OWN WAY TO POSTPONE THE SENTENCING OF TZE CHAO.  AND IF

THE COURT READS DU PONT, THE VICTIM STATEMENT HERE, IT IS ALL

ABOUT TZE CHAO, TIMOTHY SPITLER, AND MR. MAEGERLE.  AND I WISH

THEM WELL, I DON'T MEAN TO ENHANCE THEIR SENTENCES --

        **THE COURT:**  WISH THE GOVERNMENT WELL OR THE

DEFENDANTS WELL?

        **MR. GASNER:**  THE OTHER DEFENDANTS.

        **THE COURT:**  THANK YOU.

        **MR. GASNER:**  AFTER ALL THIS, I HAVE SADLY --

INDIVIDUALLY I WISH THEM WELL, BUT NOT THEIR ROLE IN THIS

CASE.

        **THE COURT:**  RIGHT.

        **MR. GASNER:**  WE ARE HEADED TO A PLACE WHERE THERE

WILL BE VERY LENIENT RECOMMENDATIONS FROM THE GOVERNMENT.  I

MEAN, IT'S -- WE HAVE ALL SEEN THIS BEFORE.

    AND WHEN THE SMOKE CLEARS AFTER MR. LIEW'S SENTENCING, AT

SOME TIME LATER THERE WILL BE CLAIMS OF COOPERATION AND BAD

1    HEALTH, AND WE ARE HEADED FOR A VERY DISPARATE SENTENCING

2    MATRIX.

3        AND I THINK THE WAY FOR THE COURT TO SOLVE THAT PROBLEM,

4    THOSE DEFENDANTS AREN'T HERE, BUT I THINK WE ALL KNOW WHERE

5    THIS IS HEADED IS TO MODERATE THE SENTENCE MR. LIEW RECEIVES

6    FOR ANY NUMBER OF THE REASONS WE HAVE SET FORTH IN OUR BRIEFS.

7        I THINK THE ONLY WAY TO GET TO ZERO OR NEAR ZERO WITH

8    THESE OTHER DEFENDANTS, WOULD BE TO SENTENCE MR. LIEW TO UNDER

9    TEN YEARS.  IT'S NOT WHAT THE GUIDELINES SAY IN THIS DIFFICULT

10   2B1.1 WORLD, BUT THANKFULLY WE ARE NOT BOUND BY THAT.  AND I

11   DO THINK THE COURT IS GOING TO PAINT ITSELF INTO A CORNER BY

12   LOWERING THE BOOM ON MR. LIEW AND THEN FACING THE OTHER

13   DEFENDANTS LATER.

14       SO THE COURT DID SIT THROUGH THE TRIAL.  I HOPE THE COURT

15   HAS FOCUSED ON THE VAST SWATHS OF EVIDENCE THAT JUST DIDN'T

16   MAKE IT INTO THE TRIAL BECAUSE THERE WAS A VERY UNUSUAL

17   SITUATION THAT MOST OF THE OTHER PLAYERS WEREN'T HERE IN THE

18   UNITED STATES.  AND WE'D SIMPLY ASK THE COURT TO FOCUS ON

19   MR. LIEW AS A HUMAN BEING.

20       THE COURT HAS SEEN THE PICTURES OF WHERE HE CAME FROM IN

21   MALAYSIA AND HOW FAR HE GOT IN THE WORLD.  HE'S AN AMBITIOUS

22   MAN WHO MADE SOME HUGE MISTAKES IN TRYING TO GET INTO THE BIG

23   TIME.  AND HE HAS ALREADY BEEN INCARCERATED UNDER PRETTY

24   GHASTLY CONDITIONS IN COUNTY JAIL.  AND HE SUFFERED A LOT.

25   AND THE QUESTION FOR THE COURT IS HOW MUCH MORE DOES THE COURT

1   NEED TO PUNISH HIM.

2        THIS IS A TIME WHERE WE ARE LETTING PEOPLE OUT OF PRISON

3   RIGHT AND LEFT BECAUSE OF OVERCROWDING.  IT'S A STRAPPED

4   FINANCIAL TIME.  THE DEPARTMENT OF JUSTICE ITSELF IS TRYING TO

5   FIGURE OUT HOW TO DEAL WITH OVERCROWDING IN PRISONS.  A

6   SENTENCE OF UNDER TEN YEARS, WE SUBMIT, YOUR HONOR, IS GOING

7   TO SEND A GIANT MESSAGE TO THE WORLD, AND THAT IT'S OVERKILL

8   BEYOND THAT.

9        **THE COURT:**  ALL RIGHT.  THANK YOU.

10       MR. LIEW, THIS IS YOUR -- LET ME ASK YOU QUESTION,

11   MR. GASNER.  I THINK I KNOW THE ANSWER.

12       WILL MR. LIEW BE SPEAKING ON HIS OWN BEHALF AND THAT OF

13   USAPTI?

14       **MR. GASNER:**  YES.

15       **THE COURT:**  VERY WELL.  MR. LIEW, ANYTHING YOU WOULD

16   LIKE TO SAY TO THE COURT?  PLEASE SPEAK INTO THE MICROPHONE IF

17   YOU WILL, SIR.

18       **THE DEFENDANT:**  YES, YOUR HONOR.  THANK YOU FOR

19   GIVING ME THIS OPPORTUNITY TO SPEAK.

20       FIRST I WOULD LIKE TO THANK YOU FOR GRANTING MY RELEASE ON

21   BAIL BACK IN JANUARY.  AND THIS ALLOWED ME TO SPEND SOME TIME

22   AT HOME WITH MY FAMILY, ESPECIALLY MY SON.  IT MEANT A LOT TO

23   US.  THIS IS A BELATED THANK YOU, BUT I WANT TO SAY TO YOU I'M

24   REALLY THANKFUL FOR IT.

25       IN REGARDS TO MY CONVICTIONS, YOUR HONOR, I BELIEVE IN OUR

1    SYSTEM AND I RESPECT OUR SYSTEM, AND BECAUSE OF THAT, I ACCEPT

2    THE JURY'S VERDICT EVEN THOUGH I DISAGREE WITH IT.

3        THERE ARE MANY THINGS I WISH I WOULD HAVE DONE VERY

4    DIFFERENTLY, YOUR HONOR, AND I FEEL TERRIBLE ABOUT IT, AND I

5    REGRET MY ACTIONS.

6        I WISH TO APOLOGIZE TO ANYONE WHO MAY HAVE BEEN AFFECTED

7    BY MY ACTIONS.  I KNOW, YOUR HONOR, MY EMPLOYEES ARE ALL AT

8    WORK, AND SOME OF THEM HAVE YOUNG FAMILY, VERY YOUNG CHILDREN,

9    AND SOME OF THEIR LIFE MAY HAVE CHANGED, AND I'M VERY SORRY

10   FOR IT.

11       MY LIFE HAS ALSO CHANGED SINCE 2011.  YOUR HONOR, I HAVE

12   BEEN INCARCERATION FOR THE PAST THREE YEARS, AND IT HAS BEEN A

13   JOURNEY AND LEARNING EXPERIENCE TO ME.  INSIDE THE JAIL, I

14   LEARNED TO APPRECIATE LIFE AND EVEN SMALL THINGS.  I ALSO

15   LEARNED THAT WE CAN LIVE VERY SIMPLE AND WE DON'T NEED A LOT

16   OF MONEY.

17       I HAVE SPENT CONSIDERABLE TIME AT DUBLIN DETENTION CENTER,

18   AND I WORK THERE AS A FOOD SERVICE IN THE KITCHEN AND ALSO

19   LAUNDRY.  I WAS ALSO THE UNPAID LIBRARIAN.  WHEN PEOPLE THERE

20   GET TO KNOW ME MORE PERSONALLY, AND I WAS ABLE TO HELP SOME

21   INMATES TO PREPARE THEIR GED'S.  AND I WAS ALSO ALLOWED TO

22   TEACH ALGEBRA TO AN OFFICER, MR. WHEELER WHO WAS WORKING ON

23   HIS COLLEGE DEGREE, AND I WAS ABLE TO HELP HIM TO PASS ALGEBRA

24   WITH A GOOD GRADE.

25       LOOKING FORWARD, YOUR HONOR, MY PLANS FOR FUTURE ARE

MAINLY TWO.  ONE, TO BE WITH MY FAMILY AND, TWO, TO GET BACK

TO SOCIETY.

DURING MY EXPERIENCE OF TUTORING AND HELPING PEOPLE IN

JAIL, I REALIZE I CAN BE USEFUL AGAIN.  AND I PLAN TO CONTINUE

TO OFFER MYSELF AND SERVICE TO OUR SOCIETY.

MY SECOND PLAN IS TO SPEND MY LIFE WITH MY FAMILY.  THE

MOST PRECIOUS THINGS IN LIFE TO ME IS MY FAMILY.  YOUR HONOR,

I HAVE A SON WHO IS STILL VERY YOUNG.  SEEING HIM GROWING UP

WITHOUT ME IS THE HARDEST THING TO ME.  AND WITH THAT, YOUR

HONOR, I'M ASKING FOR YOUR LENIENCY.

AND I THANK YOU.

**THE COURT:**  THANK YOU, SIR.

MR. HEMANN, MR. AXELROD, DO YOU WANT TO SAY ANYTHING

BRIEFLY IN RESPONSE TO THE DEFENSE PRESENTATION?

**MR. HEMANN:**  YES, YOUR HONOR.

I GUESS I'D FIRST LIKE TO SAY THAT THE STATEMENTS THAT

MR. LIEW JUST MADE WERE, I THINK, THE FIRST TIME THAT WE HAVE

HEARD ANY HUMILITY FROM THAT SIDE OF THE COURTROOM.  AND I

BELIEVE IT WAS HEARTFELT.  I BELIEVE IT WAS LEGITIMATE.  BUT

IT WAS THE FIRST TIME.  AND I THINK THAT IT IS COMMENDABLE

THAT HE DID IT AND COMMENDABLE THAT HE SAID IT.  BUT OF

EVERYTHING THAT HAS BEEN SAID AT SENTENCING, THAT'S IT.

WHAT WE HAVE HEARD FROM THE DEFENSE THROUGHOUT THIS CASE,

INCLUDING TODAY, HAS BEEN A BUNCH OF DISPARATE THEORIES THAT

ARE DESIGNED TO NIBBLE AROUND THE EDGES, BUT COMPLETELY IGNORE

THE CENTRAL FACTUAL NARRATIVE IN THE CASE THAT WAS PROVEN BY

THE EVIDENCE AND FOUND BY THE JURY, WHICH WAS THAT MR. LIEW

WAS ASKED IN 1991 BY CHINESE GOVERNMENT OFFICIALS TO LOOK FOR

KEY TECHNOLOGIES.  HE DID THAT.  HE STAYED IN TOUCH WITH THESE

CHINESE OFFICIALS THROUGHOUT THIS PERIOD OF TIME INTO THE LATE

EARLY 2000'S.

    HE WAS WORKING FOR PEOPLE WHO WERE PROVIDING HIM MONEY

FROM CHINA THROUGHOUT THIS PERIOD OF TIME, THE WHOLE QIAO NING

BROTHER-IN-LAW STORY THAT WE HAVE HEARD A LITTLE BIT AT TRIAL

AND THROUGHOUT SENTENCING, SUGGEST THAT SOMEBODY WAS SENDING

HIM $200,000 A YEAR THROUGHOUT THE TIME THAT HE WAS BUILDING

HIS BUSINESS.  AND THESE PEOPLE -- THERE'S NO EVIDENCE THAT

THESE PEOPLE WHO WERE SENDING HIM IN THE MONEY HAD ANY MONEY.

    MONEY IS COMING FROM SOMEWHERE THROUGHOUT THIS PERIOD OF

TIME, YOUR HONOR.  AND IT'S COMING FROM THE PEOPLE WHO

INITIALLY ASKED MR. LIEW TO START LOOKING FOR TECHNOLOGY.  HE

FINDS TECHNOLOGY AND HE FINDS IT IN THE PEOPLE OF MR. MAEGERLE

AND MR. SPITLER.

    AND THE DEFENSE SAYS HE DOESN'T USE THE TECHNOLOGY.  AND

THAT, YOUR HONOR, IS THE MOST -- I WANT TO SAY INSULTING, AND

I THINK IT IS, IT IS THE MOST INSULTING THING THAT HAS BEEN

SUGGESTED BECAUSE WHAT -- FOR YEARS THE CHINESE ARE LOOKING TO

DEVELOP THIS EXTREMELY VALUABLE TECHNOLOGY.  AND TO PUT A

FACTORY IN CHINA, THEY TALKED TO DU PONT ABOUT DOING THIS, AND

DU PONT REFUSES TO DO IT.  AND AS MR. LIEW SAID, FOR THE

1    OBVIOUS REASONS.  AND THE OBVIOUS REASON IS THAT THEY DON'T

2    WANT TO HAVE THEIR TECHNOLOGY STOLEN.  THEY REFUSE TO DO IT.

3        SO OF ALL OF THE HUMAN BEINGS IN THE ENTIRE WORLD TO HAVE

4    ACCESS TO ALL OF THESE PATENTS AND ALL OF THIS RESEARCH, THE

5    PANGANG GROUP FINDS WALTER LIEW, WHO IS ENTIRELY UNQUALIFIED

6    TO DO THIS EXCEPT FOR ONE THING.  HE HAS INFORMATION FROM DU

7    PONT ABOUT HOW TO BUILD A DU PONT FACTORY.

8        AND YOUR HONOR WILL REMEMBER THE DOCUMENT FROM THE PANGANG

9    GROUP THAT DESCRIBES HOW MR. LIEW IN 2008 WENT THERE AND

10   UNROLLED THE DU PONT PLAN.  THAT'S WHY HE GOT THESE BECAUSE HE

11   HAD THE DU PONT INFORMATION.

12       WHAT WAS THE VALUE OF THAT INFORMATION?  THE VALUE OF THAT

13   INFORMATION, ACCORDING TO THE MARKET, WAS $28 MILLION.  THEY

14   PAID MR. LIEW $28 MILLION.  HE SPENT ABOUT SIX ON EXPENSES,

15   AND WHAT'S THE OTHER $20 MILLION FOR?  IT'S BECAUSE HE HAD

16   SOMETHING.  HE HAD SOMETHING THAT NOBODY ELSE HAD OR NOBODY

17   ELSE HAD THAT WAS WILLING TO GIVE IT.

18       THAT'S WHAT THIS CASE IS ABOUT.  HE WAS ASKED TO DO

19   SOMETHING BY CHINESE GOVERNMENT OFFICIALS, HE DID IT, AND HE

20   MADE $20 MILLION OFF OF THAT.  THAT'S WHAT THIS CASE IS ABOUT.

21   THAT'S WHAT THE FACTS PROVED.  THAT'S WHAT THE JURY FOUND, AND

22   THAT'S HOW MR. LIEW SHOULD BE SENTENCED.

23       AND THAT'S WHY THIS -- THIS VALUE FIGURE, THIS 22-LEVEL

24   ENHANCEMENT IS TOTALLY APPROPRIATE.  WE ARE NOT USING

25   SPECULATIVE GAIN, WE ARE USING THE PROFIT, THE VALUE OF THE

1    INFORMATION THAT MR. LIEW BROUGHT TO THE TABLE.

2         OF COURSE, OF COURSE THIS IS TRAGIC.  IT'S ALWAYS TRAGIC.

3    IT'S TRAGIC EVERY SINGLE TIME FOR 15 YEARS THAT I'VE STOOD

4    THERE AND YOU SAT THERE, THIS HAS BEEN TRAGIC.

5         HE HAS A KID WHO IS NOT AT FAULT AT ALL, WHO'S GOING TO

6    SUFFER PROBABLY MORE THAN ANYBODY INVOLVED IN THIS.  BUT

7    THAT'S EVERY SINGLE CASE.  AND THAT ALONE IS NOT ENOUGH TO

8    DROP DOWN OUT OF THE GUIDELINES, PARTICULARLY WHEN THE COURT

9    LOOKS AT 3553(A), WHICH SAYS THAT THE PURPOSE OF THE SENTENCE

10   IS TO PROMOTE RESPECT FOR THE LAW, TO PUNISH, AND TO CREATE

11   DETERRENCE.  AND THOSE FACTORS WEIGH STRONGLY IN FAVOR OF

12   STAYING WITHIN THE GUIDELINES IN THIS CASE.

13         **THE COURT:**  I WOULD LIKE YOU TO COMMENT ON THE POINT

14   MR. GASNER MADE ON THIS ISSUE OF THE REQUIREMENT THAT 3553 --

15   THAT THE COURT AVOID UNWANTED DISPARITIES.

16         I'M NOT SO MUCH INTERESTED -- I'VE READ EVERYTHING THAT

17   EVERYBODY SAID AND I HAVE ENOUGH INFORMATION ON REPORTED OTHER

18   CASES THAT MIGHT BE APPROPRIATE TO COMPARE, BUT I'M INTERESTED

19   BECAUSE THIS IS SOMETHING UNIQUELY WITHIN THE KNOWLEDGE AND

20   AUTHORITY OF THE EXECUTIVE BRANCH OF WHAT IS COMING DOWN

21   THE -- OBVIOUSLY THE COURT GOING TO MAKE THE FINAL DECISION,

22   AND THE COURT WILL BE DRIVEN BY THE TOTALITY OF THE FACTORS

23   THAT I HAVE IN THIS CASE, BUT WHAT IS YOUR RESPONSE TO THAT

24   IDEA THAT, WELL, IF YOU GIVE MR. LIEW THE SENTENCE ANYWHERE

25   NEAR WHAT PROBATION IS TALKING ABOUT, OR THE GOVERNMENT, OR

1    THE GUIDELINES, THEN AREN'T YOU IMMEDIATELY SETTING UP

2    EITHER -- SOME SORT OF UNWANTED DISPARITY PARADIGM WITH THE

3    OTHER DEFENDANTS.

4              **MR. HEMANN:**  I WAS GOING TO ADDRESS THAT AND I'M

5    HAPPY --

6              **THE COURT:**  DO IT NOW.  THANK YOU.

7              **MR. HEMANN:**  I THINK THE QUESTION IS -- THE QUESTIONS

8    ARE TWO.

9        FIRST OF ALL, WILL THERE BE DISPARITIES?  I WOULD ASSUME

10   THERE WILL BE SOME DISPARITIES.  THE MAGNITUDE OF THOSE

11   DISPARITIES HAS YET TO BE DECIDED AND WE HAVE NOT MADE --

12   THERE IS NOT A FINAL PRESENTENCE REPORT FOR THE OTHER

13   DEFENDANTS AND WE HAVEN'T GONE THROUGH THAT PROCESS.  BUT I

14   THINK CANDIDLY, WE ANTICIPATE THERE WILL BE SOME DISPARITIES.

15       THE QUESTION OF THE GUIDELINES IS WHETHER THOSE

16   DISPARITIES ARE WARRANTED OR UNWARRANTED.  WHAT I CAN

17   GUARANTEE, YOUR HONOR, IS THAT IN MAKING OUR SENTENCING

18   RECOMMENDATIONS AND OUR ARGUMENTS, WE ARE ONLY GOING TO ASK

19   FOR A WARRANTED DISPARITY.

20       AND WHEN I SAY "WARRANTED", WHAT I MEAN IS WARRANTED BY

21   THE LAW.  AND THE LAW SPECIFICALLY CONTEMPLATES THAT LESS

22   CULPABLE DEFENDANTS RECEIVE LESS CULPABLE -- LOWER SENTENCES.

23       SO IF MR. MAEGERLE DOES NOT GET AN ORGANIZER OR LEADER

24   ENHANCEMENT, HIS SENTENCE IS GOING TO BE LOWER.  HE RECEIVED

25   SOMETHING ON THE ORDER OF $400,000, NOT $20 MILLION.  HIS

1   SENTENCE SHOULD BE LOWER FOR THAT REASON.  HE'S 80 YEARS OLD

2   AND HEALTH PROBLEMS.  THE GUIDELINES SAY YOU ARE SUPPOSED TO

3   CONSIDER THAT.  HIS SENTENCE IS GOING TO BE LOWER FOR THAT

4   REASON.

5       SO THERE ARE REASONS THAT ARE WARRANTED.  TZE CHAO

6   COOPERATED AND DIDN'T RECEIVE $20 MILLION.  THERE'S ALL OVER

7   THE SENTENCING LAW IS COOPERATION.  AND IF YOU COOPERATE, YOU

8   GET A LOWER SENTENCE.  THAT'S WHAT THE LAW SAYS.  THAT'S A

9   WARRANTED DISPARITY, NOT AN UNWARRANTED DISPARITY.

10      SO WE WILL BE KEEN, YOUR HONOR, TO MAKE SURE THAT ANY

11  DISPARITY IN THE SENTENCE IS SUPPORTED BY THE GUIDELINES AND

12  BY THE 3553(A) FACTORS.  AND AS THE COURT NOTED, THE COURT HAS

13  DISCRETION TO SENTENCE WHAT IT WANTS.

14      BUT AS MR. GASNER ALSO POINTED OUT, WHEN WE STAND HERE

15  TODAY, THERE ARE -- JUSTICE IS SUPPOSED TO BE INDIVIDUAL.

16  AND, YES, THERE SHOULD BE -- THERE SHOULD NOT BE UNWARRANTED

17  DISPARITIES.  AND I THINK YOUR HONOR POINTED OUT, THERE IS A

18  LITTLE -- I DON'T KNOW IF IT'S AMBIGUITY, THERE ARE OTHER

19  CASES -- THERE SHOULD NOT BE DISPARITIES.  I THINK WHAT

20  CONGRESS WAS DRIVING AT HERE WAS, A DEFENDANT IN OAKLAND

21  SHOULDN'T GET, YOU KNOW, TWO MONTHS FOR, YOU KNOW, POSSESSION

22  OF X AMOUNT OF COCAINE WHILE A DEFENDANT IN OKLAHOMA CITY GETS

23  20 YEARS FOR POSSESSION OF THAT AMOUNT OF COCAINE.  I THINK

24  THAT'S REALLY WHAT CONGRESS HAD IN MIND WHEN IT WROTE THE

25  STATUTE.

1        IT MIGHT APPLY IN A CASE WHERE YOU'VE GOT VARIOUS

2   CO-CONSPIRATORS IN THE SAME ACTION, BUT I WOULD SUGGEST THAT

3   THAT'S NOT WHAT CONGRESS HAD IN MIND BECAUSE THE COURT, YOUR

4   HONOR, IS ABLE TO DETERMINE WHAT SENTENCE IS WARRANTED UNDER

5   THE GUIDELINES FOR EACH ONE OF THOSE DEFENDANTS.

6        SO, MY RESPONSE WOULD BE, THERE WILL BE DISPARITIES.  MY

7   FURTHER RESPONSE IS, THOSE, DISPARITIES ARE WARRANTED BY THE

8   WAY EACH OF THE DEFENDANTS WILL BE TREATED UNDER THE

9   SENTENCING GUIDELINES.  AND THERE'S ALWAYS SITUATIONS IN A

10  CONSPIRACY WHEN NOT ALL THE DEFENDANTS GET THE SAME SENTENCE.

11       **MR. AXELROD:**  YOUR HONOR, I WANT TO ADD ONE POINT TO

12  THAT, WHICH IS, THE DISPARITY ALSO INVOLVES THE CONDUCT OF

13  WHICH THE DEFENDANTS ARE CONVICTED.

14       I THINK THAT HERE TODAY WE ARE ADDRESSING MR. LIEW.  AND

15  MR. LIEW'S CONDUCT, I THINK, OBVIOUSLY THE HEART OF THIS CASE

16  HAS TO DO WITH THE THEFT OF THIS TECHNOLOGY AND THE SALE TO

17  THE CHINESE.  BUT HIS CONDUCT WAS BROADER THAN THAT BECAUSE HE

18  CHEATED ON HIS TAXES FOR ALL THOSE YEARS.  HE LIED TO THE

19  BANKRUPTCY --

20       **THE COURT:**  I KNOW ALL THAT.

21       **MR. AXELROD:**  THOSE ARE NOT THINGS THAT ARE EXISTING

22  IN THE CASE OF MR. CHAO OR --

23       **THE COURT:**  I UNDERSTAND ALL THAT.

24       IS THERE ANYTHING FURTHER YOU WANT TO ADD TO YOUR PAPERS?

25       **MR. HEMANN:**  NO, YOUR HONOR, OTHER THAN BY JUST

1    REPEATING THAT WE --

2         **THE COURT:**  OTHER THAN REPEATING.

3         **MR. HEMANN:**  I DON'T KNOW IF WE SAID THIS, SO LET ME

4    SAY THIS.  WE DO ADVOCATE THAT THE COURT IMPOSE A GUIDELINE

5    SENTENCE IN THIS CASE.

6         **THE COURT:**  DO YOU WANT TO SAY ANYTHING BRIEFLY IN

7    REBUTTAL THAT JUST WAS RAISED BY THEM THAT WAS NOT IN THE

8    PAPERS?

9         **MR. GASNER:**  YES, YOUR HONOR.

10        THE HANDWRITING ON THE WALL IS EVEN MORE CLEAR.  IT SEEMS

11   LIKE THE GOVERNMENT'S THEORY OF MR. MAEGERLE IS GOING TO BE

12   THAT $400,000 IS THE GAIN THAT HE RECEIVED.  AND THAT IS TEN

13   LEVELS LOWER THAN WHAT THE GUIDELINES WOULD HAVE FOR MR. LIEW.

14        WE ALSO KNOW THAT THE $20 MILLION DID NOT GO TO MR. LIEW.

15   IT WENT TO --

16        **THE COURT:**  IT WENT TO PEOPLE IN CHINA, MR. LIEW'S

17   FAMILY IN CHINA, RIGHT?

18        **MR. GASNER:**  YES.

19        **THE COURT:**  WE WILL NEVER GET IT.  WE DON'T KNOW

20   WHERE IT IS BECAUSE IT HAS BEEN SPIRITED AWAY OUT OF THE

21   COUNTRY.

22        **MR. GASNER:**  IT'S NEITHER THE FBI NOR THE DEFENSE WAS

23   ABLE TO GET ANY TRACTION IN GETTING ANY EVIDENCE --

24        **THE COURT:**  IS THAT A GOOD FACT FOR YOU THEN?

25        **MR. GASNER:**  WELL, IT IS A GOOD FACT FOR MR. LIEW AND

```
1    IT REBUTS --

2            THE COURT:  WHY?  IT SHOWS HE WAS SUCCESSFUL IN

3    COVERING THESE CRIMES UP.

4            MR. GASNER:  IT IS NOT BENEFIT TO HIM PERSONALLY.

5            THE COURT:  WE DON'T KNOW THAT, DO WE.  THESE MONIES

6    ARE IN CHINA AND THERE ARE RELATIVES IN CHINA, AND MONEY WAS

7    COMING IN FROM OVERSEAS.  WE HAVE NO IDEA OF THAT.  I DON'T

8    KNOW IF THAT IS A GOOD FACT FOR MR. LIEW THAT THIS MONEY, SOME

9    OF WHICH IS PERHAPS OWED TO OTHERS, IS SOMEWHERE IN A PLACE

10   WHERE IT CAN NEVER BE RECOVERED BY ANYBODY OTHER THAN PERHAPS

11   SOMEBODY WITH CONNECTIONS TO THE PEOPLE'S REPUBLIC OF CHINA,

12   RIGHT?

13           MR. GASNER:  AND YOUR HONOR WILL HAVE THE OPPORTUNITY

14   WITH OTHER DEFENDANTS TO ADDRESS THAT.  I JUST DON'T THINK

15   IT'S FAIR TO SAY -- I MEAN, FROM WHAT WE KNOW, IT IS -- IT IS

16   NOT TO MR. LIEW PERSONALLY.

17      AND THE HANDWRITING IS ON THE WALL THAT -- THAT

18   MR. MAEGERLE, WHO IS THE PERSON WITH 30 YEARS AT DU PONT, AND

19   IF THIS IS A CASE ABOUT INTELLECTUAL PROPERTY AND HARM TO DU

20   PONT, I THINK THAT THE DU PONT LETTER MAKES CLEAR THAT FROM

21   THE VICTIM'S POINT OF VIEW, THEY CARE ABOUT MR. MAEGERLE AND

22   TZE CHAO AND MR. SPITLER, WHO IS BEYOND THEIR REACH NOW.

23      BUT IF WE ARE LOOKING AT THE SERIOUSNESS OF THE OFFENSE, I

24   THINK THE COURT IS GOING TO BE IN A CONUNDRUM WITH A REALLY

25   HIGH SENTENCE TO MR. LIEW.  AND THE COURT'S FORFEITURE ORDER
```

```
 1    IS GOING TO DEAL WITH TRACING THE MONEY, AND THE CIVIL PEOPLE

 2    WILL DO THEIR JOB.  THE TAX LOSS TO THE UNITED STATES HAS BEEN

 3    FACTORED IN.  YES, MR. LIEW WAS CONVICTED OF TAX OFFENSES.

 4    THAT ENDS UP IN THE KIND OF FIVE- TO SIX-YEAR RANGE.

 5          THE COURT:  ALL RIGHT.  I UNDERSTAND ALL THAT.  THE

 6    MATTER IS SUBMITTED.  I'M GOING TO TAKE A 45-MINUTE BREAK.  I

 7    WANT TO RESEARCH THE POINT WITH RESPECT TO THE FORFEITURE AND

 8    I ALSO WANT TO CONSIDER A PURPOSELY BUILT-IN BREAK HERE

 9    BECAUSE I WANT TO CONSIDER THE DISCUSSION THAT COUNSEL AND

10    MR. LIEW MADE WITH THE COURT.

11          MR. HEMANN:  MAY I MAKE ONE VERY BRIEF POINT, YOUR

12    HONOR?

13          THE COURT:  YES.

14          MR. HEMANN:  JUST TO BE CLEAR, THE GOVERNMENT'S

15    POSITION WITH RESPECT TO LOSS, THE LOSS CALCULATION WITH

16    MR. MAEGERLE, WILL BE EXACTLY THE SAME AS IT IS.  IF I HAD A

17    WALL AND A MARKER, I WOULD WRITE ON IT FOR THE COURT.

18       IT'S GOING TO BE A 22-LEVEL INCREASE BECAUSE MR. MAEGERLE

19    WAS CONVICTED OF BEING PART OF THE CONSPIRACY.  THAT'S THE

20    LOSS.  THAT'S OUR POSITION.

21          THE COURT:  I'M NOT GOING TO -- HIS LAWYER IS NOT

22    HERE AND HE'S NOT HERE, SO I APPRECIATE THAT STATEMENT.

23       WE WILL TAKE A 45-MINUTE BREAK.

24       (RECESS TAKEN AT 12:03 P.M.; RESUMED AT 12:55 P.M.)

25          THE COURT:  EVERYBODY MAY BE SEATED.
```

1        MR. LIEW AND COUNSEL AND THE GOVERNMENT COUNSEL, COME

2   FORWARD, PLEASE.

3        SO, I WOULD LIKE TO TURN NOW TO -- HAVING DETERMINED THE

4   ADJUSTED OFFENSE GUIDELINE CALCULATION, I'M GOING TO TURN TO

5   THE 3553(A) FACTORS.  AND BEFORE I START WITH THOSE, I WANT TO

6   SAY A COUPLE OF THINGS.

7        BASED UPON THE PRESENTATION OF COUNSEL, BOTH IN THEIR

8   PAPERS AND TODAY, AND PARTICULARLY THE DEFENSE PRESENTATION,

9   BECAUSE THE PARTIES' COUNSEL KNOW THAT THE COURT SAT THROUGH

10  THIS TRIAL AND PRESIDED OVER THIS TRIAL FOR MANY, MANY WEEKS,

11  PRESIDED OVER PRETRIAL AND ALL THE MOTIONS AND EVIDENTIARY

12  MATTERS PRESENTED THERE, PLUS REVIEWED ALL OF THE NEW FACTS

13  THAT THE PARTIES HAVE BROUGHT BEFORE THE COURT FOR THE

14  SENTENCING, AND SO IT'S NOT JUST ABOUT THE BEAR VERDICT THAT

15  THE JURY ISSUED.

16       IT'S ABOUT THE WAY THE CASE WAS PRESENTED ON BOTH SIDES,

17  THE FACTS THAT WERE PRESENTED, THE EXHIBITS, THE EVIDENCE, THE

18  WITNESSES, THE ARGUMENT OF COUNSEL, THE THEORIES AND THE

19  THEMES OF COUNSEL, AND THE ARGUMENTS THAT I HAVE BEEN HEARING

20  IN THIS CASE FROM DEFENSE SIDE UP UNTIL THIS MOMENT, IN THE

21  COURT'S VIEW WERE THOROUGHLY, CATEGORICALLY, AND UNEQUIVOCALLY

22  REJECTED BY THE JURY.  AND THE COURT, HAVING SAT THROUGH THE

23  TRIAL, WILL RELY ON WHAT IT HEARD DURING THE TRIAL, WHAT THE

24  JURY NECESSARILY FOUND, AND ALL OF THE EVIDENCE IT PRESENTED

25  BY THE PARTIES IN THE CASE.

1        SO THE FIRST THING I WANT -- AND THE OTHER THING I WANT TO

2   SAY IS THAT DEFENSE COUNSEL, IN HIS PRESENTATION TODAY,

3   FOCUSED ON THE ISSUE OF LOSS TO DU PONT, AND BASICALLY ARGUED

4   THAT THERE'S LITTLE OR NO LOSS THAT HAS BEEN PROVEN TO HAVE

5   BEFALLEN DU PONT.

6        I WOULD SUGGEST THAT BASED UPON THE VICTIM IMPACT LETTER

7   BY DU PONT AS WELL AS THE TESTIMONY OF THE WITNESSES, THE DU

8   PONT WITNESSES AT TRIAL, THAT THE LOSS THAT DU PONT INCURRED

9   OR SUFFERED COULD BE QUANTITATIVELY AND PARTICULARLY

10  QUALITATIVELY SUBSTANTIALLY GREATER THAN WHAT THE COURT IS

11  RELYING UPON IN THE GUIDELINE CALCULATION.  AND IT IS QUITE

12  CLEAR TO THE COURT THAT THE DAMAGE TO DU PONT WAS AT LEAST

13  QUALITATIVELY GREATER THAN WHAT IS BEING URGED ON THE COURT

14  TODAY.

15       AND SO I WANT TO TALK FURTHER ABOUT THE NATURE AND

16  CIRCUMSTANCES OF THE OFFENSES FOR WHICH THE DEFENDANT WAS

17  CONVICTED.

18       THE JURY CONVICTED MR. LIEW AND USAPTI WITH VIOLATIONS OF

19  THE ECONOMIC ESPIONAGE ACT, ALSO CALLED THE EEA.  NOW, THE

20  LEGISLATIVE HISTORY OF THE EEA NOTES THAT QUOTE, "THE

21  DEVELOPMENT OF PROPRIETARY ECONOMIC INFORMATION IS AN INTEGRAL

22  PART OF AMERICA'S ECONOMIC WELL-BEING.  MOREOVER, THE NATION'S

23  ECONOMIC INTERESTS ARE A PART OF ITS NATIONAL SECURITY

24  INTERESTS, THUS THREATS TO THE NATION'S ECONOMIC INTEREST REST

25  WITH THE NATION'S VITAL SECURITY INTEREST", UNQUOTE, CITING

1    HOUSE REPORT 104-788 AT 4023.

2        IN ADDITION, THE LEGISLATIVE HISTORY PROVIDES THAT WHEN IT

3    COMES TO TRADE SECRETS, QUOTE, "THE VALUE OF THE INFORMATION

4    IS ALMOST ENTIRELY DEPENDENT ON IT BEING CLOSELY HELD.  FOR

5    MANY COMPANIES, THIS INFORMATION IS THE KEYSTONE TO THEIR

6    ECONOMIC COMPETITIVENESS.  THEY SPEND MILLIONS OF DOLLARS

7    DEVELOPING THE INFORMATION, TAKE GREAT PAINS AND INVEST IN

8    LARGE RESOURCES TO KEEP IT SECRET, AND EXPECT TO REAP REWARDS

9    FROM THEIR INVESTMENT", UNQUOTE, FROM THE SAME CITATION.

10        CONGRESS ALSO ENACTED THE EEA IN THE FACE OF, QUOTE,

11    "CONSIDERABLE EVIDENCE THAT FOREIGN GOVERNMENTS ARE USING

12    THEIR ESPIONAGE CAPABILITIES AGAINST AMERICAN COMPANIES",

13    UNQUOTE, AND NOTED THAT THE USE OF QUOTE "ECONOMIC OR

14    INDUSTRIAL ESPIONAGE", UNQUOTE, WAS AN APT DESCRIPTION OF THE

15    CONDUCT THE EEA WAS INTENDED TO PROHIBIT.

16        QUOTE, "ESPIONAGE IS TYPICALLY AN ORGANIZED EFFORT BY ONE

17    COUNTRY'S GOVERNMENT TO OBTAIN THE VITAL NATIONAL SECURITY

18    SECRETS OF ANOTHER COUNTRY.  TYPICALLY ESPIONAGE HAS FOCUSED

19    ON MILITARY SECRETS, BUT AS THE COLD WAR HAS DRAWN TO A CLOSE,

20    THIS CLASSIC FORM OF ESPIONAGE HAS EVOLVED.  ECONOMIC

21    SUPERIORITY IS INCREASINGLY AS IMPORTANT AS MILITARY

22    SUPERIORITY, AND THE ESPIONAGE INDUSTRY IS BEING RETOOLED WITH

23    THIS IN MIND", UNQUOTE.  I'M CITING FROM THE SAME HOUSE REPORT

24    AT PAGES 4023 THROUGH 4024.

25        THE LEGISLATIVE HISTORY ALSO CITES TO A REPORT FROM THE

1    FBI ABOUT ECONOMIC ESPIONAGE ACTIVITIES AIMED AT THE UNITED

2    STATES, SOME BY IDEOLOGICAL AND MILITARY ADVERSARIES AND THEY

3    TARGET U.S. ECONOMIC AND TECHNOLOGICAL INFORMATION AS AN

4    EXTENSION OF A CONCERTED INTELLIGENCE ASSAULT ON THE UNITED

5    STATES CONDUCTED THROUGHOUT THE COLD WAR.

6       IN ADDITION, THE SENTENCING COMMISSION RECENTLY AMENDED

7    SECTION 2B1.1 TO PROVIDE FOR A FOUR-LEVEL ENHANCEMENT IF A

8    DEFENDANT KNEW OR INTENDED THAT THE OFFENSE WOULD BENEFIT A

9    FOREIGN ENTITY.  IT ALSO DETERMINED THAT A MINIMUM OFFENSE

10   LEVEL OF 14 SHOULD APPLY TO SUCH OFFENSES.

11      SEE, FOR EXAMPLE, U.S. SENTENCING GUIDELINES SECTION

12   2B1.1(B)(13)(B), WHICH IS THE 2013 VERSION OF THE GUIDELINES.

13      THE SENTENCING COMMISSION ALSO INCLUDED A TWO-LEVEL

14   ENHANCEMENT IF THE DEFENDANT KNEW OR INTENDED THAT THE TRADE

15   SECRET WOULD BE TRANSPORTED OUT OF THE UNITED STATES.  I AM

16   CITING TO THE GUIDELINES AT 2B1.1(B)(13)(A), AGAIN, THE 2013

17   VERSION.

18      ALTHOUGH THE COURT CANNOT AND DID NOT APPLY THESE

19   ENHANCEMENTS BECAUSE OF EX POST FACTO ISSUES, THAT DOES NOT

20   PRECLUDE THE FACT FROM CONSIDERING THEM IN THE 5335(A)

21   ANALYSIS.  IN PEUGH, P-E-U-G-H, VERSUS UNITED STATES, THE

22   SUPREME COURT MADE CLEAR A SENTENCING COURT MAY QUOTE, "MAY

23   GIVE CAREFUL CONSIDERATION TO THE CURRENT VERSION OF THE

24   GUIDELINES AS REPRESENTING THE MOST RECENT VIEWS OF THE AGENCY

25   CHARGED BY CONGRESS WITH DEVELOPING SENTENCING POLICY",

1   UNQUOTE, AND MAY CONSIDER NEWER GUIDELINES AS A REASON TO

2   DEVIATE FROM THE OLDER GUIDELINES.  AND THAT'S PEUGH V. UNITED

3   STATES, AT 133 SUPREME COURT 2072 AND 2087 DECIDED IN 2014.

4       THE JURY ALSO CONVICTED MR. LIEW OF OBSTRUCTION OF

5   JUSTICE, WITNESS TAMPERING IN CIVIL LITIGATION, HIDING

6   EVIDENCE, AND TRYING TO -- WHICH, SPECIFICALLY, THE SAFETY

7   DEPOSIT BOX.  THEY ALSO CONVICTED HIM OF DEFRAUDING THE

8   BANKRUPTCY COURT AND ITS TRUSTEE, HARMING CREDITORS AND

9   EMPLOYEES WAS IMPLICIT IN THAT.  THEY CONVICTED HIM OF TAX

10  EVASION.  AND THE TAX EVASION AND THE BANKRUPTCY CHARGES BOTH

11  RELY ON THE HONOR SYSTEM IN ORDER TO FUNCTION IN THIS COUNTRY.

12      IN SUM, IN THE COURT'S VIEW, MR. LIEW'S ACTIONS

13  REPRESENTED A VIRTUAL WHITE COLOR CRIME SPREE, NOT ONLY AS TO

14  SUBSTANTIVE OFFENSES, BUT ALSO ATTEMPTS TO HIDE AND DESTROY

15  EVIDENCE, INFLUENCE WITNESSES, LIE ABOUT HIS RELATIONSHIP TO

16  THE CHINESE GOVERNMENT, AND HARM OUR ECONOMY.

17      I WANT TO TALK ABOUT THE HISTORY AND THE CHARACTERISTICS

18  OF THE DEFENDANT.

19      ON THE POSITIVE SIDE, MR. LIEW DID, IN FACT, LIFT HIMSELF

20  OUT OF POVERTY TO OBTAIN AN ADVANCED ENGINEERING DEGREE.  HE

21  IS OBVIOUSLY RESPECTED IN HIS COMMUNITY AND IS A LOVING

22  FATHER.  HE'S NEVER BEEN INVOLVED IN THE CRIMINAL JUSTICE

23  SYSTEM BEFORE THIS.  AND, AGAIN, APART FROM THIS INCIDENT, HAS

24  SHOWN HIMSELF TO BE A LAW-ABIDING CITIZEN.

25      UNFORTUNATELY, AS THIS COURT HAS SEEN IN SO MANY CASES,

1   PURE GREED HAS BROUGHT MR. LIEW TO THIS POINT BEFORE THIS

2   COURT TODAY.  UNLIKE SO MANY DEFENDANTS THAT THIS COURT SEES,

3   MR. LIEW COMES FROM A STRONG FAMILY AND COMMUNITY, AND DID NOT

4   FACE THE SAME TYPE OF TRAUMAS AND CHALLENGES THAT SO MANY

5   OFFENDERS THAT THIS COURT SENTENCES SEE.

6       I WANT TO ALSO TALK ABOUT THIS EPISODE WITH THE ALLEGED

7   JOINT VENTURE WITH THE DEFENDANT'S BROTHER-IN-LAW, AND NOW

8   THIS REPAYMENT, SO-CALLED REPAYMENT OF DEBTS BETWEEN AND THIS

9   WHOLE IDEA THAT MR. LIEW HAS PUT FORTH, BOTH ATTEMPTED TO PUT

10  FORTH IN THE TRIAL -- AT TRIAL AND HAS NOW PUT FORTH IN

11  CONNECTION WITH THE SENTENCING.

12      THIS WHOLE ISSUE, THIS WHOLE SET OF TRANSACTIONS INVOLVING

13  THIS JOINT VENTURE STRIKES THE COURT AS BEING COMPLETELY

14  CONTRIVED.  THE COURT HAS REVIEWED THE BAIL PAPERS THAT THE

15  DEFENDANT SUBMITTED IN SUPPORT OF -- THAT THE COURT REVIEWED

16  EX PARTE IN CAMERA IN CONNECTION WITH HIS ATTEMPT TO HAVE THE

17  COURT RELEASE HIM ON PRETRIAL RELEASE.  AND BECAUSE THOSE

18  DOCUMENTS ARE SEALED, I'M NOT GOING TO GET INTO THEM IN DETAIL

19  EXCEPT TO SAY THAT THESE TRANSACTIONS WERE NEVER MENTIONED IN

20  THE BAIL PAPERS OR -- AND HAVE NEVER BEEN SUPPORTED TO DATE BY

21  ANY AUTHENTIC OR CREDIBLE CORROBORATING DOCUMENTATION THAT ONE

22  WOULD EXPECT TO EXIST IF THIS TRANSACTION HAD REALLY BEEN

23  TRUE.

24      IN ADDITION, IN 2004, MR. LIEW CALLED HIMSELF A PATRIOTIC

25  OVERSEAS CHINESE, YET HE IS AN AMERICAN CITIZENS WHO WAS

1   OFFERED THE PRIVILEGE OF CITIZENSHIP IN THIS COUNTRY AND

2   TURNED AGAINST HIS ADOPTED COUNTRY FOR GREED.

3        MR. LIEW HAS NOT BEEN FORTHCOMING IN COURT, IN THE

4   PRESENTENCE REPORT, OR IN BAIL PAPERS ABOUT HIS FINAL -- HIS

5   FINANCIAL DEALINGS, INCLUDING THE JOINT VENTURES AND THE OTHER

6   MATTERS.

7        NOW, THE COURT HAS HEARD FROM MR. LIEW AS PART OF HIS

8   RIGHT TO ELOCUTE AND THE APOLOGY THAT HE'S MADE.  AND THE

9   COURT FULLY TAKES INTO ACCOUNT THAT APOLOGY, BELIEVES THAT IT

10  IS HEARTFELT AND HE GENUINELY REGRETS HIS ACTIONS.

11       UNFORTUNATELY, THE POSITION THAT MR. LIEW HAS TAKEN,

12  VIS-A-VIS ACCEPTING THE JURY'S VERDICT, HE GETS THE CREDIT FOR

13  THAT, BUT THAT'S NOT WITHSTANDING THE PRESENTATION MADE BY HIS

14  DEFENSE TEAM WHICH SEEMS TO BE THAT IT'S ALL ABOUT NO LOSS,

15  THIS ALL -- THIS IS ALL SOME BIG MISTAKE OR SOME KIND OF

16  ATTEMPT BY DU PONT UNJUSTLY TO ENRICH ITSELF.

17       THE SENTENCE, CONTINUING WITH THE 3553(A) FACTORS, NEEDS

18  TO REFLECT -- THE COURT NEEDS TO CONSIDER THE NEED FOR THE

19  SENTENCE TO REFLECT THE SERIOUSNESS OF THE OFFENSE.  I HAVE

20  ALREADY DISCUSSED WHAT CONGRESS AND THE SENTENCING COMMISSION

21  HAVE SAID ABOUT THESE CRIMES.

22       THE SENTENCE ALSO -- THE COURT MUST CONSIDER THE NEED FOR

23  THE SENTENCE TO PROMOTE RESPECT FOR THE LAW AND TO INSTILL

24  RESPECT FOR THE LAW, AND PROVIDE JUST PUNISHMENT FOR THE

25  OFFENSE.  AS I SAID, THESE ARE VERY SERIOUS CRIMES.  EXCEPT

1   FOR WHAT MR. LIEW SAID BEFORE IN HIS APOLOGY, I'M NOT SURE

2   THAT HE FULLY APPRECIATES THE MAGNITUDE OF WHAT HE DID IN HIS

3   WHITE COLOR CRIME SPREE.

4        I THINK ONE OF THE BIG FACTORS IS -- AND ONE OF THE

5   FACTORS THAT CONGRESS HAS SET FORTH IN 3553(A), IS TO AFFORD

6   ADEQUATE DETERRENCE TO CRIMINAL CONDUCT AND TO DETER OTHERS

7   WHO CONSPIRE WITH FOREIGN ENTITIES TO DO US HARM BY STEALING

8   OUR COMPANIES' TRADE SECRETS.

9        THE SENTENCE THAT THE COURT HANDS DOWN MUST SEND THE WORD

10  OUT TO ALL THOSE WHO MAY HAVE -- BE IN THE PROCESS OF OR

11  CONSIDER CONSORTING WITH THIS COUNTRY'S ENEMIES BY STEALING

12  THE SECRETS OF ITS COMPANIES.  AND I THINK A LOUD MESSAGE HAS

13  TO GO FORTH FOR THAT.

14       SO, IN TERMS OF PROVIDING THE DEFENDANT WITH THE NEEDED

15  EDUCATIONAL OR VOCATIONAL TRAINING, WHICH 3553(A) REQUIRES THE

16  COURT TO CONSIDER, MEDICAL CARE OR OTHER CORRECTIONAL

17  TREATMENT, AND THAT IS NOT A SUBSTANTIAL FACTOR HERE WITH THE

18  POSSIBLE EXCEPTION OF PROVIDING FOR SOME TREATMENT FOR

19  SUBSTANCE ABUSE THAT IS ALLUDED TO IN THE PRESENTENCE REPORT.

20       THE 3553(A) ALSO IS INTERESTING IN THAT EVEN THOUGH BOOKER

21  SAYS THAT THE GUIDELINES ARE NOT MANDATORY, AND THEY ARE NOT,

22  3553(A), AS ONE OF THE FACTORS, FACTOR NUMBER 4, REQUIRES THE

23  COURT TO CONSIDER THE KINDS OF SENTENCE AND THE SENTENCING

24  RANGE ESTABLISHED FOR THE APPLICABLE CATEGORY OF OFFENSE

25  COMMITTED BY THE APPLICABLE CATEGORY OF DEFENDANT AS SET FORTH

1   IN THE GUIDELINES AND THE AMENDMENTS THERETO.

2        AND SO THE COURT HAS TAKEN INTO ACCOUNT THE FACTORS THAT

3   ARE SET FORTH IN THE GUIDELINES AND AMENDMENTS THERETO,

4   ESPECIALLY THE GUIDELINES THAT THE COURT HAS CITED.

5        WITH RESPECT TO THE POLICY STATEMENTS THAT 3553(A)

6   MANDATES THE COURT TO CONSIDER, THE COURT HAS REVIEWED THOSE

7   AND STATED THOSE ON THE RECORD.

8        THERE IS ONE -- THERE'S A FACTOR THAT BEARS A LITTLE BIT

9   MORE DISCUSSION AT THIS POINT BECAUSE IT WAS BOTH PRESENTED AS

10  A CONTENDED MATTER IN THE SENTENCING PRESENTATIONS AS WELL AS

11  IN THE ORAL ARGUMENT TODAY, WHICH IS, SUBSECTION 6 OF 3553(A),

12  WHICH IS THE NEED TO AVOID UNWANTED SENTENCE DISPARITIES AMONG

13  DEFENDANTS WITH SIMILAR -- AMONG DEFENDANTS WITH SIMILAR

14  RECORDS FOUND GUILTY OF SIMILAR CONDUCT.

15       THE COURT -- MR. LIEW HAS CITED A NUMBER OF CASES IN THIS

16  AND OTHER COURTS IN -- HAVING TO DO WITH WHAT THEY ARGUE

17  ARE -- WHAT HE ARGUES IS SIMILAR KINDS OF CASES.  THE COURT

18  DOES NOT FIND THESE CASES TO BE PERSUASIVE ON THIS ISSUE.

19  THEY WERE EITHER -- REPRESENT GUILTY PLEAS, COOPERATING

20  DEFENDANTS, OR OTHERWISE DISTINGUISHABLE.

21       FURTHER, MR. LIEW DOES NOT PRESENT THE COURT QUOTE, "WITH

22  THE RECORDS IN THE CASES ON WHICH HE RELIES WHEN HE ARGUES

23  THAT OTHER DEFENDANTS GOT OFF BETTER THAN HIM".  I'M CITING

24  THERE THE TREADWELL CASE, 593 F.3D AT 1012.

25       AND CONTINUING TO PARAPHRASE THE -- THE QUOTE, TREADWELL

1   INSERTING MR. LIEW'S NAME FOR THE NAME OF THE DEFENDANT IN

2   THAT CASE, THE NINTH CIRCUIT SAID, IT DOES NOT MATTER FOR THE

3   PURPOSES OF 3553(A) THAT MR. LIEW CAN POINT TO A SPECIFIC

4   CRIMINAL DEFENDANT WHO MAY HAVE RECEIVED A LIGHTER SENTENCE

5   FOR A DIFFERENT FRAUD.  A DISTRICT COURT CONSIDERS THE

6   SECTION 3553(A) FACTORS TO TAILOR A SENTENCE TO THE SPECIFIC

7   CHARACTERISTICS OF THE OFFENSE AND THE DEFENDANT.  IT HAS BEEN

8   UNIFORM AND CONSTANT IN THE FEDERAL JUDICIAL TRADITION FOR THE

9   SENTENCING JUDGE TO CONSIDER EVERY CONVICTED PERSON AS AN

10  INDIVIDUAL AND EVERY CASE AS A UNIQUE STUDY IN THE HUMAN

11  FAILINGS THAT SOMETIMES MITIGATE, SOMETIMES MAGNIFY THE CRIME

12  AND PUNISHMENT TO ENSUE.

13      THE MERE FACT THAT A DEFENDANT CAN POINT TO A DEFENDANT

14  CONVICTED AT A DIFFERENT TIME OF A DIFFERENT FRAUD AND

15  SENTENCED TO A TERM OF IMPRISONMENT SHORTER THAN HIS, DOES NOT

16  CREATE AN UNWANTED SENTENCING DISPARITY.  MOREOVER, SENTENCING

17  DISPARITY IS ONLY ONE FACTOR A COURT CONSIDERS IN CRAFTING AN

18  INDIVIDUALIZED SENTENCE UNDER 3553(A).

19      A DISTRICT COURT NEED NOT, AND AS A PRACTICAL MATTER

20  CANNOT COMPARE A PROPOSED SENTENCE TO THE SENTENCE OF EVERY

21  CRIMINAL DEFENDANT WHO HAS EVER BEEN SENTENCED BEFORE.  TOO

22  MANY FACTORS DICTATE THE EXERCISE OF SOUND SENTENCING DECISION

23  IN A PARTICULAR CASE TO MAKE THE INQUIRY MR. LIEW URGES

24  HELPFUL OR EVEN FEASIBLE.

25      THE -- AND, AGAIN, THE COURT IS CITING TREADWELL 593 F.3D

1   AT 1011 AND 1012, AND IT HAS OMITTED THE INTERNAL CITATIONS.

2   AS I MENTIONED THE COURT IS SUBSTITUTING MR. LIEW'S NAME FOR

3   MR. TREADWELL'S NAME IN THAT CASE.

4       THE COURT HAS CONSIDERED THE FOLLOWING FACTOR, WHICH IS

5   NUMBER 6 IN 3553(A), THE NEED TO PROVIDE RESTITUTION.  AND THE

6   COURT IS MINDFUL OF THE FACT THAT SENTENCING MR. LIEW TO ANY

7   SIGNIFICANT JAIL TIME WILL IMPAIR HIS ABILITY TO MAKE

8   RESTITUTION, AND -- BUT FINDS THAT THE OTHER FACTORS THAT IT

9   HAS CITED PREVAIL.

10       SO, ACCORDINGLY, PURSUANT TO THE SENTENCING REFORM ACT OF

11   1984, IT IS THE JUDGMENT OF THE COURT THAT WALTER LIEW IS

12   HEREBY COMMITTED TO THE CUSTODY OF THE BUREAU OF PRISONS TO BE

13   IN PRISON FOR A TERM OF 180 MONTHS.

14       THIS TERM CONSISTS OF 120 MONTHS ON COUNTS 1 THROUGH 3,

15   AND 5 THROUGH 9 TO RUN CONCURRENTLY WITH EACH OTHER, 60 MONTHS

16   ON COUNTS 10, 11, 13, 14, AND 20 THROUGH 22 TO RUN

17   CONCURRENTLY WITH ONE ANOTHER BUT CONSECUTIVELY TO COUNTS 1

18   THROUGH 3 AND COUNTS 5 THROUGH 9, 36 MONTHS ON COUNTS 15

19   THROUGH 19 TO RUN CONCURRENTLY WITH ALL OTHER COUNTS.

20       THE COURT RECOMMENDS THAT THE DEFENDANT PARTICIPATE IN THE

21   BUREAU OF PRISON'S RESIDENTIAL DRUG ABUSE TREATMENT PROGRAM.

22       UPON RELEASE FROM IMPRISONMENT, THE DEFENDANT SHALL BE

23   PLACED ON SUPERVISED RELEASE FOR A TERM OF THREE YEARS.  THIS

24   TERM CONSISTS OF THREE YEARS ON COUNTS 1 THROUGH 3, 5 THROUGH

25   14, AND 20 THROUGH 22, AND ONE YEAR ON COUNTS 15 THROUGH 19,

1    ALL COUNTS TO RUN CONCURRENTLY.

2        WITHIN 72 HOURS OF RELEASE FROM THE CUSTODY OF THE BUREAU

3    OF PRISONS, THE DEFENDANT SHALL REPORT TO THE PROBATION OFFICE

4    IN THE DISTRICT TO WHICH THE DEFENDANT IS RELEASED.

5        WHILE ON SUPERVISED RELEASE, THE DEFENDANT SHALL BE NOT

6    COMMIT ANOTHER FEDERAL, STATE, OR LOCAL CRIME, SHALL COMPLY

7    WITH THE STANDARD CONDITIONS THAT HAVE BEEN ADOPTED BY THIS

8    COURT, EXCEPT THAT THE MANDATORY DRUG TESTING PROGRAM IS

9    SUSPENDED AND SHALL COMPLY WITH THE FOLLOWING ADDITIONAL

10   CONDITIONS:

11       ONE, THE DEFENDANT SHALL PARTICIPATE IN A PROGRAM OF

12   TESTING AND TREATMENT FOR ALCOHOL ABUSE AS DIRECTED BY THE

13   PROBATION OFFICER, UNTIL SUCH TIME AS THE DEFENDANT IS

14   RELEASED BY THE PROBATION OFFICER.

15       THE DEFENDANT IS TO PAY PART OR ALL OF THE COSTS OF THIS

16   TREATMENT AT AN AMOUNT NOT TO EXCEED THE COST OF TREATMENT AS

17   DEEMED APPROPRIATE BY THE PROBATION OFFICER.  PAYMENT SHALL

18   NEVER EXCEED THE TOTAL COST OF URINALYSIS AND COUNSELING.  THE

19   ACTUAL CO-PAYMENT SCHEDULE SHALL BE DETERMINED BY THE

20   PROBATION OFFICER.

21       TWO, THE DEFENDANT SHALL ABSTAIN FROM THE USE OF ALL

22   ALCOHOLIC BEVERAGES.

23       THREE, THE DEFENDANT SHALL PAY ANY RESTITUTION AND SPECIAL

24   ASSESSMENT THAT IS IMPOSED BY THIS JUDGMENT AND THAT REMAINS

25   UNPAID AT THE COMMENCEMENT OF THE TERM OF SUPERVISED RELEASE.

1        FOUR, THE DEFENDANT SHALL COMPLY AND COOPERATE WITH THE

2   INTERNAL REVENUE SERVICE IN A GOOD FAITH EFFORT TO PAY ANY

3   OUTSTANDING TAX LIABILITY TO INCLUDE ANY ASSESSED PENALTY AND

4   INTEREST.

5        FIVE, THE DEFENDANT SHALL TIMELY AND ACCURATELY FILE ALL

6   FUTURE INCOME TAX RETURNS REQUIRED BY LAW DURING THE TERM OF

7   SUPERVISION UNLESS AN EXTENSION OF TIME IS GRANTED BY THE

8   INTERNAL REVENUE SERVICE.

9        SIX, THE DEFENDANT SHALL NOT OPEN ANY NEW LINES OF CREDIT

10  NOR INCUR NEW DEBT WITHOUT THE PRIOR PERMISSION OF THE

11  PROBATION OFFICER.

12       SEVEN, THE DEFENDANT SHALL PROVIDE THE PROBATION OFFICER

13  WITH ACCESS TO ANY FINANCIAL INFORMATION, INCLUDING TAX

14  RETURNS, AND SHALL AUTHORIZE THE PROBATION OFFICER TO CONDUCT

15  CREDIT CHECKS AND OBTAIN COPIES OF INCOME TAX RETURNS.

16       EIGHT, THE DEFENDANT SHALL SUBMIT HIS PERSON, RESIDENCE,

17  OFFICE, VEHICLE, OR ANY PROPERTY UNDER HIS CONTROL TO A

18  SEARCH.  SUCH A SEARCH SHALL BE CONDUCTED BY UNITED STATES

19  PROBATION OFFICER AT A REASONABLE TIME AND IN A REASONABLE

20  MANNER BASED UPON REASONABLE SUSPICION OF CONTRABAND OR

21  EVIDENCE OF A VIOLATION OF A CONDITION OF RELEASE.  FAILURE TO

22  SUBMIT TO SUCH A SEARCH MAY BE GROUNDS FOR REVOCATION.  THE

23  DEFENDANT SHALL WARN ANY RESIDENTS THAT THE PREMISES MAY BE

24  SUBJECT TO SEARCHES.

25       NINE, THE DEFENDANT SHALL COOPERATE IN THE COLLECTION OF

1    DNA AS DIRECTED BY THE PROBATION OFFICER.

2        TEN, THE DEFENDANT SHALL NOT OWN OR POSSESS ANY FIREARMS,

3    AMMUNITION, DESTRUCTIVE DEVICES, OR OTHER DANGEROUS WEAPONS.

4        IT IS FURTHER ORDERED THAT THE DEFENDANT SHALL PAY TO THE

5    UNITED STATES A SPECIAL ASSESSMENT OF $2,000 WHICH SHALL BE

6    DUE IMMEDIATELY.  WHEN INCARCERATED, PAYMENT OF CRIMINAL

7    MONETARY PENALTIES ARE DUE DURING IMPRISONMENT AT THE RATE OF

8    NOT LESS THAN $25 PER QUARTER, AND PAYMENT SHALL BE MADE

9    THROUGH THE BUREAU OF PRISON'S INMATE FINANCIAL RESPONSIBILITY

10   PROGRAM.

11       CRIMINAL MONETARY PAYMENTS SHALL BE MADE TO THE CLERK OF

12   THE UNITED STATES DISTRICT COURT, 450 GOLDEN GATE AVENUE,

13   P.O. BOX 36060 SAN FRANCISCO, CALIFORNIA 94102.

14       THE COURT FINDS THAT THE DEFENDANT DOES NOT HAVE THE

15   ABILITY TO PAY A FINE AND, THEREFORE, ORDERS THE IMPOSITION OF

16   ANY FINE TO BE WAIVED.

17       IT IS FURTHER ORDERED THAT THE DEFENDANT SHALL PAY

18   RESTITUTION TOTALING $511,667.82 WHICH SHALL BE DUE

19   IMMEDIATELY TO THE FOLLOWING VICTIMS IN THE FOLLOWING AMOUNTS:

20       DU PONT, $367,679, STANTEC CONSULTING, $52,356, THE LAW

21   OFFICES OF MICHAEL BROOK CARROLL, 58,881.82, ADECCO,

22   A-D-E-C-C-O ENGINEERING AND TECHNICAL $32,571 FOR THE TOTAL

23   THAT I MENTIONED, 511,667.82.

24       MR. LIEW SHALL BE SOLELY RESPONSIBLE FOR THE RESTITUTION

25   TO STANTEC, THE LAW OFFICES OF MICHAEL CARROLL, AND ADECCO

1   ENGINEERING TECHNICAL.  MR. LIEW SHALL BE JOINTLY AND

2   SEVERALLY LIABLE TO THE RESTITUTION PAID TO DU PONT.

3       THE COURT GIVES NOTICE THAT THIS CASE INVOLVES OTHER

4   DEFENDANTS WHO MAY BE HELD JOINTLY AND SEVERALLY LIABLE FOR

5   PAYMENT OF ALL OR PART OF THE RESTITUTION ORDERED TO DU PONT

6   HEREIN, AND MAY ORDER SUCH PAYMENT IN THE FUTURE.  BUT SUCH

7   FUTURE ORDERS DO NOT EFFECT THE DEFENDANT'S RESPONSIBILITY FOR

8   THE FULL AMOUNT OF THE RESTITUTION OWED.

9       THE DEFENDANT SHALL FORFEIT THE DEFENDANT'S INTEREST IN

10  THE FOLLOWING PROPERTY TO THE UNITED STATES:  A MONEY JUDGMENT

11  IN THE AMOUNT OF 27,829,893.67 WHICH SHALL BE JOINT AND

12  SEVERAL WITH USAPTI.

13      THE COURT GIVES NOTICE THIS CASE INVOLVES OTHER DEFENDANTS

14  WHO MAY BE HELD JOINTLY AND SEVERALLY LIABLE FOR THE PAYMENT

15  OF ALL OR PART OF THE MONEY JUDGMENT ORDERED HEREIN AND MAY

16  ORDER SUCH PAYMENT IN THE FUTURE, BUT SUCH FUTURE ORDERS DO

17  NOT EFFECT THE DEFENDANT'S RESPONSIBILITY FOR THE FULL AMOUNT

18  OF THE MONEY JUDGMENT OWED.

19      WHEN INCARCERATED, PAYMENT OF RESTITUTION IS DUE DURING

20  IMPRISONMENT AT THE RATE OF NOT LESS THAN $25 PER QUARTER, AND

21  PAYMENT SHALL BE THROUGH THE BUREAU OF PRISONS INMATE

22  FINANCIAL RESPONSIBILITY PROGRAM.  RESTITUTION PAYMENTS SHALL

23  BE MADE TO THE CLERK, U.S. DISTRICT COURT, ATTENTION FINANCIAL

24  UNIT, 450 GOLDEN GATE AVENUE, BOX 36060 SAN FRANCISCO,

25  CALIFORNIA 94102 AT A RATE OF NOT LESS THAN $500 PER MONTH TO

1    BEGIN 60 DAYS AFTER RELEASE FROM CUSTODY.

2        MR. LIEW, I WANT TO ADVISE YOU AT THIS TIME OF YOUR RIGHT

3    TO APPEAL THE SENTENCE AND JURY VERDICT IN THIS CASE AND

4    JUDGMENT OF THE COURT.  UNDER FEDERAL RULE OF APPELLATE

5    PROCEDURE 4(B), YOU MUST FILE A NOTICE OF APPEAL WITHIN 14

6    DAYS AFTER ENTRY OF JUDGMENT.  IF YOU ARE UNABLE TO PAY THE

7    APPEAL COSTS, YOU HAVE THE RIGHT TO PERMISSION -- TO ASK THE

8    COURT PERMISSION TO APPEAL IN FORMA PAUPERIS.

9        I WANT TO NOW TURN TO THE SENTENCE OF USAPTI.

10       THE COURT INCORPORATES EVERYTHING THAT IT SAID WITH

11   RESPECT TO ITS 3553(A) ANALYSIS REGARDING TO MR. LIEW'S

12   SENTENCE INTO THE SENTENCE OF USAPTI BECAUSE I THINK

13   CORPORATIONS ACT THROUGH THEIR REPRESENTATIVES, AND MR. LIEW

14   WAS THE PRINCIPAL REPRESENTATIVE OF USAPTI.  SO EVERYTHING I

15   SAID BEFORE I'M INCORPORATING INTO THE REASONS FOR THE

16   FOLLOWING SENTENCE WITH RESPECT TO USAPTI.

17       PURSUANT TO THE SENTENCING REFORM ACT OF 1984, IT IS THE

18   JUDGMENT OF THE COURT THAT USA PERFORMANCE TECHNOLOGY, INC.,

19   USAPTI, IS HEREBY PLACED ON PROBATION FOR FIVE YEARS.

20       WHILE ON PROBATION, USAPTI SHALL NOT COMMIT ANOTHER

21   FEDERAL, STATE, OR LOCAL CRIME.  USAPTI SHALL PAY TO THE

22   UNITED STATES A FINE OF $18,900,000, WHICH SHALL BE DUE

23   IMMEDIATELY.  PAYMENT OF CRIMINAL MONETARY PAYMENTS SHALL BE

24   MADE TO THE CLERK, U.S. DISTRICT COURT, 450 GOLDEN GATE

25   AVENUE, BOX 36060 SAN FRANCISCO, CALIFORNIA 94102.

 1    THE DEFENDANT USAPTI SHALL FORFEIT ITS INTEREST IN THE

 2  FOLLOWING PROPERTY TO THE UNITED STATES:  A MONEY JUDGMENT IN

 3  THE AMOUNT OF $27,829,893.67 WHICH SHALL BE JOINT AND SEVERAL

 4  WITH WALTER LIEW.

 5    THE COURT GIVES NOTICE THAT THIS CASE INVOLVES OTHER

 6  DEFENDANTS WHO MAY BE HELD JOINTLY AND SEVERALLY LIABLE FOR

 7  PAYMENT OF ALL OR PART OF THE MONEY JUDGMENT ORDERED HEREIN

 8  AND MAY ORDER SUCH PAYMENT IN THE FUTURE BUT SUCH ORDERS DO

 9  NOT EFFECT THE DEFENDANT'S RESPONSIBILITY FOR THE FULL AMOUNT

10  OF THE MONEY JUDGMENT OWED.

11    IT IS FURTHER ORDERED THAT USAPTI SHALL PAY TO THE UNITED

12  STATES A SPECIAL ASSESSMENT OF $3600, WHICH SHALL BE DUE

13  IMMEDIATELY.

14    PAYMENT OF CRIMINAL MONETARY PENALTIES SHALL BE MADE TO

15  THE CLERK, U.S. DISTRICT COURT, 450 GOLDEN GATE AVENUE, BOX

16  36060 SAN FRANCISCO, CALIFORNIA 94102.

17    MR. LIEW, ON BEHALF OF USAPTI, I WANT TO ADVISE THAT

18  COMPANY OF ITS RIGHT TO APPEAL AND THE FEDERAL RULE OF

19  APPELLATE PROCEDURE 4(B), DEFENDANT MUST FILE A NOTICE OF

20  APPEAL WITHIN 14 DAYS AFTER ENTRY OF JUDGMENT.  IF THE

21  DEFENDANT IS UNABLE TO PAY THE APPEAL COSTS, IT HAS THE RIGHT

22  TO REQUEST FOR PERMISSION TO APPEAL IN FORMA PAUPERIS.

23    ANYTHING FURTHER FROM THE GOVERNMENT?

24    **MR. HEMANN:**  NO, YOUR HONOR.

25    **THE COURT:**  ANYTHING FURTHER, MR. GASNER?

1    **MR. GASNER:**  YOUR HONOR, MS. AGNOLUCCI WOULD LIKE TO

2    ADDRESS POTENTIAL RECOMMENDATION FOR PLACEMENT.

3    **THE COURT:**  VERY WELL.

4    **MS. AGNOLUCCI:**  VERY BRIEF.  WE REQUESTED MR. LIEW BE

5    ASSIGNED TO LOMPOC, WHICH HAS AN RDATP PROGRAM, AND THAT WOULD

6    BE THE CORRECTIONAL PURPOSE OF THAT FACILITY.  IN ADDITION,

7    LOMPOC WOULD FACILITATE VISITS WITH HIS SON GIVEN ITS

8    PROXIMITY TO THE EAST BAY.

9    **THE COURT:**  THE COURT WILL SO RECOMMEND AND MAKE SURE

10   IT IS INCORPORATED INTO THE JUDGMENT.

11   **MS. AGNOLUCCI:**  THANK YOU, YOUR HONOR.

12   **THE COURT:**  ANYTHING FURTHER?

13   **MS. AGNOLUCCI:**  THE SECOND CHOICE THAT WE WOULD

14   REQUEST IS SHERIDAN.

15   **THE COURT:**  I WILL PUT THAT IN, BUT KNOWING THE WAY

16   THE BUREAU OF PRISONS OPERATES, I WILL MAKE A STRONG

17   RECOMMENDATION FOR HIS FIRST CHOICE, AND WE WILL PUT THE OTHER

18   ONE DOWN AS A SECOND CHOICE, BUT I WILL MAKE SURE THAT THEY

19   CAREFULLY CONSIDER THE COURT'S RECOMMENDATION.

20   **MS. AGNOLUCCI:**  THANK YOU, YOUR HONOR.

21   **THE COURT:**  THANK YOU VERY MUCH COUNSEL.

22   **MR. HEMANN:**  THANK YOU, YOUR HONOR.

23          (PROCEEDINGS CONCLUDED AT 1:22 P.M.)

24

25

1

2

3                          **CERTIFICATE OF REPORTER**

4              I, DIANE E. SKILLMAN, OFFICIAL REPORTER FOR THE

5     UNITED STATES COURT, NORTHERN DISTRICT OF CALIFORNIA, HEREBY

6     CERTIFY THAT THE FOREGOING IS A CORRECT TRANSCRIPT FROM THE

7     RECORD OF PROCEEDINGS IN THE ABOVE-ENTITLED MATTER.

8

9              *Diane E. Skillman*

10              DIANE E. SKILLMAN, CSR 4909, RPR, FCRR

11                WEDNESDAY, SEPTEMBER 24, 2014

12

13

14

15

16

17

18

19

20

21

22

23

24

25