UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA, <br><br> Plaintiff, <br><br> v. <br><br> PANGANG GROUP COMPANY, LTD.; PANGANG GROUP STEEL VANADIUM & TITANIUM COMPANY, LTD.; PANGANG GROUP TITANIUM INDUSTRY COMPANY, LTD.; and PANGANG GROUP INTERNATIONAL ECONOMIC & TRADING COMPANY, <br><br> Defendants. | Case No.  11-cr-00573-07-10 (JSC) <br><br> **ORDER RE: ADMISSIBILITY OF PANGANG EMPLOYEES' STATEMENTS** <br><br> Re: Dkt. Nos. 1426, 1433, 1434, 1461 |

The Government's Motion in Limine No. 1 and Defendants' Motion in Limine No. 3 argue the admissibility of statements made by Pangang employees during the course of the FBI's investigation.  (Dkt. No. 1426 at 6-9; Dkt. No. 1433.)[1]  Having carefully considered the parties' submissions, and with the benefit of oral argument on June 25, 2026, the Court GRANTS Defendants' motion and DENIES the Government's motion to the extent the Government seeks to admit the Pangang employees' statements at the Rodeway Inn or after signing cooperation agreements for the truth of the matter asserted because such admission is barred by the Confrontation Clause.

## BACKGROUND

On July 20, 2021, the FBI executed a search warrant at the Rodeway Inn in Alameda, California where several Pangang employees were staying.  (Dkt. No. 1433 at 10.)  During the

---

[1] Record citations are to material in the Electronic Case File ("ECF"); pinpoint citations are to the ECF-generated page numbers at the top of the documents.

United States District Court
Northern District of California

United States District Court
Northern District of California

search, the FBI questioned seven Pangang employees: Kai Zhang, Fudong Yang, Miu Hongli, Hou Shengdong, Dong Yingjie, Yonggui Zhou, and Kun Qu.  (*Id.*)  Because some of the interrogations were conducted through interpreters, and none were recorded or transcribed, agents later memorialized their accounts of the interrogations in FD-302 reports.  (*Id.*)  According to Defendants, "no evidence suggests that any of these individuals were authorized to speak with federal agents on behalf of any Pangang Defendant."  (*Id.*)  All seven employees later returned to China, and they are not expected to appear at trial.  (*Id.* at 11.)  Instead, the Government plans to call FBI Special Agent Cynthia Ho and Heather Young to testify about statements made by Pangang employees at the Rodeway Inn (the "Rodeway Inn Statements").  (*Id.*)

A little less than a month after the search, three Pangang employees—Kai Zhuang, Fudong Yang, and Miu Hongli—executed cooperation and immunity agreements with the Government. (Dkt. Nos. 1434-4, 1434-5, 1434-6.)  In each agreement, the Government agreed not to prosecute the employee for "violating, conspiring to violate, or aiding and abetting violations of trade secret or economic espionage laws (*see, e.g.,* 18 U.S.C. §§ 1831-1832), or other applicable criminal laws, related to the design and construction of a titanium dioxide manufacturing facility in China." (Dkt. No. 1434-4 at 2; Dkt. No. 1434-5 at 2; Dkt. No. 1434-6 at 2.)  And in return, the employee "agree[d] to cooperate completely and truthfully with the [Government,]" including by making themselves available for interviews and responding to the Government's questions.  (Dkt. No. 1434-4 at 2; Dkt. No. 1434-5 at 2; Dkt. No. 1434-6 at 2.)

All three employees were thereafter interviewed by the Government on multiple occasions between August and November 2011.  (Dkt. No. 1434-3 at 11.)  Although their personal attorneys were present, no attorneys for Defendants were present.  (*Id.*)  The interviews were conducted through Mandarin interpreters and were not recorded or transcribed; instead, agents memorialized what the interpreters claimed the employees' said in FD-302 reports.  (*Id.* at 11-12.)  Mr. Yang and Mr. Zhuang also each testified before the grand jury on November 29, 2011.  (*Id.* at 12 (citing Dkt. Nos. 1434-7, 1434-8).)  These three cooperating witnesses have returned to China and the Government does not intend to call them at trial.  (*Id.*)  Instead, the Government plans to call Agents Ho and Young to offer statements from the cooperation interviews, and to introduce Mr.

2

Yang's and Mr. Zhuang's grand jury transcripts (the "Cooperating Employees' Statements"). (*Id.*; Dkt. No. 1426 at 6.)

The government seeks a ruling that the FBI agents can testify to what the Pangang employees told them as non-hearsay statements of a party opponent pursuant to Federal Rule of Evidence 801(d)(2)(D). (Dkt. No. 1426 at 6-9.) Defendants seek to exclude all statements as not falling within Rule 801(d)(2)(D) or, to the extent their statements are testimonial, as violating the Confrontation Clause of the United States Constitution. (Dkt. No. 1433.)

**DISCUSSION**

## I.    FEDERAL RULE OF EVIDENCE 801(D)(2)(D)

Federal Rule of Evidence 801(d)(2)(D) provides that a statement is not hearsay when it "is offered against an opposing party" and "was made by the party's agent or employee on a matter within the scope of that relationship and while it existed." *See* Fed. R. Evid. 801(d)(2)(D). So, Rule 801(d)(2)(D):

> sets forth three elements necessary for admitting a statement that would otherwise be excluded as hearsay:
> (1) the statement must be made by an agent or employee of the party against whom the statement is being offered;
> (2) the statement must concern a matter within the scope of that employment relationship; and
> (3) the statement must be made while the declarant is yet employed by the party.

*Weil v. Citizens Telecom Servs. Co., LLC*, 922 F.3d 993, 999 (9th Cir. 2019). "Significantly, the statements need only *concern* matters within the scope of the agency; they need not be made within the scope of the agency." *In re Sunset Bay Assocs.*, 944 F.2d 1503, 1519 (9th Cir. 1991) (citation omitted).

### A.    Rodeway Inn Statements

The Rodeway Inn Statements fall within the plain language of Rule 801(d)(2)(D). Each statement was: (1) made by an employee of Pangang, against whom the statement is being offered; (2) appear on their face to concern a matter within the scope of their employment relationship, and (3) was made while the declarant was a Pangang employee. *See Weil*, 922 F.3d at 999.

Defendants' insistence the statements do not fall within Rule 801(d)(2)(D) because "the act

3

United States District Court
Northern District of California

of speaking" was not "within the employment relationship" and was instead "an independent course of conduct serving the employee's personal interests" is unpersuasive. (Dkt. No. 1433 at 13 (emphasis omitted).) Relying on the Third Restatement of Agency, Defendants insist "the declarant must have been acting for his employer when he made the statement, not as part of an 'independent course of conduct.'" (Dkt. No. 1461-1 at 7 (citing Restatement (Third) of Agency § 7.07(2) (2006)). As support for this additional requirement, Defendants cite *United States v. Bonds*, 608 F.3d 495 (9th Cir. 2010), because the Ninth Circuit referred to the Restatement of Agency in the context of Rule 801(d)(2)(D). *See id.* at 504-06. But *Bonds* utilized the agency analysis to determine whether the declarant was an employee or an independent contractor. *Id.* And the Ninth Circuit affirmed the district court's finding the declarant was an independent contractor, rather than an employee, and not acting as an agent, so his statements were not admissible under Rule 801(d)(2)(D). *Id.* So, *Bonds* supports the proposition explained in Wright & Miller's Federal Practice and Procedure:

> Courts draw a familiar, if technical, line between employees and independent contractors with statements of the latter's failing to qualify for admission as statements of "employees" under Rule 801(d)(2)(D). (Such statements may still qualify for admission under the rule as statements of the party's "agents"). With respect to the murkier term "agent," which is also used in the rule's text, courts "undertake a fact-based inquiry applying common law principles of agency."

*Wright & Miller's Federal Practice and Procedure: Federal Rules of Evidence* § 6776 (2026 ed.) (citations omitted). Because Defendants do not dispute the declarants were Pangang employees when they made the statements, *Bonds* does not help Defendants.

None of the other cases Defendants cite employed the Restatement of Agency to add additional requirements beyond Rule 801(d)(2)(D)'s plain and unambiguous language. *See Weil*, 922 F.3d at 999 (holding Rule 801(d)(2)(D)'s "language is unambiguous"). Indeed, Defendants' argument contradicts Ninth Circuit precedent. *See In re Sunset Bay Assocs.*, 944 F.2d at 1519 (observing the statements falling within Rule 801(d)(2)(D) "need only *concern* matters within the scope of the agency; they need not be made within the scope of the agency" (citation omitted)). And as the Second Circuit has observed, the 1972 Advisory Committee Notes to Rule

United States District Court
Northern District of California

801(d)(2)(D) suggest "the Rule was motivated" to allow an employee-declarant's statements even when they are not made to serve the employer. *See United States v. Yildiz*, 355 F.3d 80, 82 (2d Cir. 2004) (explaining the notes "indicate that the Rule was motivated by '[d]issatisfaction' with the traditional rule that an agent's admission would only be admissible if made 'in the scope of his employment,' since 'few principals employ agents for the purpose of making damaging statements.'" (quoting Fed. R. Evid. 801(d)(2)(D) advisory committee's note to 1972 amendment)). So, the Pangang employees' statements in their FBI interviews at the Rodeway Inn are non-hearsay pursuant to Rule 801(d)(2)(D), provided they concern matters within the scope of their employment.

However, Defendants also contend many of the Rodeway Inn Statements are inadmissible because they do not concern matters within the scope of the employees' roles at Pangang. For example, Defendants note Ms. Hongli purportedly stated she "only worked on electrical equipment for" Pangang and had no knowledge about anything to do with TiO2. (Dkt. No. 1434-9 at 1-2.) So, Defendants argue any statements made by Ms. Hongli regarding corporate strategy, negotiation history, or intellectual property of TiO2 manufacturing processes would not comport with Rule 801(d)(2)(D)'s second element. In response, the Government claims all the Pangang employees were involved in "Pangang's project to build a 100,000 chloride-route TiO2 plant," so testimony regarding what the Pangang employees heard or saw as part of that project concerns matters within the scope of their employment relationship. (Dkt. No. 1437 at 8-9.) This response is too broad to be helpful. It remains unclear what the roles of all seven employees were and what testimony the government intends to offer at trial which may fall within those roles. Absent a more specific account of what the job responsibilities of the seven employees were, and what the Government will offer at trial, the Court cannot finally conclude the statements are non-hearsay. So, further proceedings may be required to determine which statements concerned matters within the scope of the Pangang employees' employment.

### B.    The Cooperating Employees' Statements

The statements made by Kai Zhuang, Fudong Yang, and Miu Hongli after they began cooperating with the government pursuant to their immunity agreements also appear to fall within

Rule 801(d)(2)'s plain language.  However, the question whether they should be considered non-hearsay is closer, especially given the Government does not cite any case holding statements by a defendant's employee pursuant to an immunity agreement may be admitted against the defendant as a statement of a party opponent.  *Cf. United States v. Petraia Mar. Ltd.*, 489 F. Supp. 2d 90, 97 (D. Me. 2007) (holding statements made after declarant-employees entered into cooperation and immunity agreements not admissible under Rule 801(d)(2)(D) because, at that point, "the interests of the individual declarants diverged significantly from that of their employer").  Nevertheless, as explained below, even if the Cooperating Employees' Statements fall within Rule 801(d)(2)(D), the Confrontation Clause bars their admission.

## II.    CONFRONTATION CLAUSE

The Sixth Amendment to the United States Constitution provides "[i]n all criminal prosecutions, the accused shall enjoy the right . . . to be confronted with the witnesses against him."  U.S. Const. amend. VI.  The Confrontation Clause therefore "bars the admission at trial of 'testimonial statements' of an absent witness unless she is 'unavailable to testify, and the defendant ha[s] had a prior opportunity' to cross-examine her."  *Smith v. Arizona*, 602 U.S. 779, 783 (2024) (quoting *Crawford v. Washington*, 541 U.S. 36, 53-54 (2004)).

### A.    Testimonial Statements Without a Cross-Examination Opportunity

A statement is testimonial when it is "made under circumstances which would lead an objective witness reasonably to believe that the statement would be available for use at a later trial."  *Crawford*, 541 U.S. at 52 (quotation marks and citation omitted).  So, statements "are testimonial when the circumstances objectively indicate . . . the primary purpose of the interrogation is to establish or prove past events potentially relevant to later criminal prosecution."  *Davis v. Washington*, 547 U.S. 813, 822 (2006); *see also United States v. Fryberg*, 854 F.3d 1126, 1135-36 (9th Cir. 2017) (holding a statement is testimonial if its "primary purpose" "is for use as evidence at a future criminal trial" (cleaned up)).  Testimonial statements include, "at a minimum[,] prior testimony at a preliminary hearing, before a grand jury, or at a formal trial;" and statements in "police interrogations."  *Crawford*, 541 U.S. at 68.

The Rodeway Inn Statements and Cooperating Employees' Statements are all testimonial.

United States District Court
Northern District of California

United States District Court
Northern District of California

The Rodeway Inn Statements were made in FBI interrogations as part of a criminal investigation, and the Cooperating Employees' Statements in interviews with the Government were made pursuant to agreements to cooperate in its criminal investigation. *See id.* at 68 (holding "at a minimum" statements in "police interrogations" are testimonial); *see also United States v. Brooks*, 772 F.3d 1161, 1169-70 (9th Cir. 2014) (holding statements to law enforcement officer about "'what happened' . . .rather than 'what is happening'" testimonial because they helped "collect information necessary to make out a case against the suspect" (cleaned up)).  And the Cooperating Employees' grand jury testimony was made "under oath, in response to questioning by government prosecutors, in a formal proceeding convened for the purpose of determining whether criminal charges should issue." (Dkt. No. 1433 at 23.)  *See Crawford*, 541 U.S. at 68 (holding "prior testimony . . . before a grand jury" is testimonial).  The Government does not dispute the statements were testimonial, much less contend its interrogations served some non-investigative purpose.  (Dkt. No. 1437 at 13.)  *Cf. Brooks*, 772 F.3d at 1170 (noting "our conclusion that the primary purpose was investigative is reinforced by the lack of an alternative" suggested by the government).  Nor does the Government dispute it will not call the Pangang employees at trial, so Defendants "have never had—and never will have—an opportunity to cross-examine any of them about the substance of their statements."  (Dkt. No. 1437 at 13; Dkt. No. 1433 at 23.)

As testimonial out-of-court statements by absent witnesses whom Defendants have not had an opportunity to cross-examine, the Rodeway Inn Statements and Cooperating Employees' Statements are—to the extent they are offered for their truth—barred by the Confrontation Clause. *See United States v. Macias*, 789 F.3d 1011, 1017-18 (9th Cir. 2015) (explaining admission of testimonial statement was error even though the defendant did not object to admission on Confrontation Clause grounds because "the 'Confrontation Clause imposes a burden on the prosecution to present its witnesses, not on the defendant to bring those adverse witnesses into court.'" (quoting *Melendez-Diaz v. Massachusetts*, 557 U.S. 305, 324 (2009))); *see also United States v. Battaglini*, 751 F. App'x 242, 243 (3d Cir. 2018) (requiring the defendant "show the statements . . . were both testimonial and hearsay").

7

United States District Court
Northern District of California

### B.    Federal Rule of Evidence 801(d)(2)(D) Does Not Save the Statements

The Government's sole response is that because the statements are admissible under Federal Rule of Evidence 801(d)(2)(D), they represent Defendants' own out-of-court statements, which are not prohibited by the Confrontation Clause. *See United States v. Nazemian*, 948 F.2d 522, 525-26 (9th Cir. 1991) ("If the statements are properly viewed as [the defendant's] own, then there would be no confrontation clause issue since [the defendant] cannot claim that she was denied the opportunity to confront herself"); *see also United States v. Romo-Chavez*, 681 F.3d 955, 961 (9th Cir. 2012) (holding the Confrontation Clause "is not implicated here because [the officer's] translations are properly construed as [the defendant's] own statements" (citing *Nazemian*, 948 F.2d at 525-26)). Implicit in the Government's reasoning is the argument the "[Confrontation] Clause's prohibition 'applies only to testimonial hearsay,'" *see Smith*, 602 U.S. at 784 (quoting *Davis*, 547 U.S. at 823), and under the Federal Rules of Evidence, statements falling under Federal Rule of Evidence 801(d)(2)(D), and therefore attributable to a party opponent, are "not hearsay," *see* Fed. R. Evid. 801(d).

But the Federal Rules of Evidence are not dispositive of the Confrontation Clause question. As the Supreme Court recently explained in *Smith v. Arizona*, 602 U.S. 779 (2024):

> [F]ederal constitutional rights are not typically defined—expanded or contracted—by reference to non-constitutional bodies of law like evidence rules. The confrontation right is no different, as *Crawford* made clear. "Where testimonial statements are involved," that Court explained, "the Framers [did not mean] to leave the Sixth Amendment's protection to the vagaries of the rules of evidence."

*Id.* at 794 (quoting *Crawford*, 541 U.S. at 61). So, rather than "accept a [] nonhearsay label at face value," courts should "conduct an independent analysis of whether an out-of-court statement was admitted for its truth, and therefore may have compromised a defendant's right of confrontation." *Id.* (cleaned up); *see also id.* at 785 (explaining the Confrontation Clause's prohibition of testimonial hearsay "mean[s] out-of-court statements offered to prove the truth of the matter asserted" (quotation marks and citation omitted)). However, "one qualification is appropriate. If an evidentiary rule reflects a long-established understanding, then it might shed light on the historical meaning of the Confrontation Clause." *Id*. at 794 n.4. In *Smith*, the government relied

on Federal Rule of Evidence 703, which "could not possibly shed light" on the historical meaning of the Confrontation Clause because it "is a product of the late-20th century, and was understood from the start to depart from past practice." *Id.*

The Government makes no effort to explain how Rule 801(d)(2)(D) reflects a long-established understanding and thus the Confrontation Clause's historical meaning. Its silence is unsurprising given, like Rule 703, Rule 801(d)(2)(D) "is a product of the late-20th century, and was understood from the start to depart from past practice." *Smith*, 602 U.S. at 794 n.4. Prior to the 1972 adoption of the Federal Rules of Evidence, statements made by a party's agent or employee, even if within the scope of their employment or agency, were not admissible unless the employee or agent had "speaking authority." *See Zenith Radio Corp. v. Matsushita Elec. Indus. Co., Ltd.*, 505 F. Supp. 1190, 1240 (E.D. Pa. 1980), *aff'd in part, rev'd in part on other grounds sub nom. In re Japanese Elec. Prods. Antitrust Litig.*, 723 F.2d 238, 300 (3d Cir. 1983) (noting the appellants did not appeal the Rule 801(d)(2)(D) rulings except as to a declarant no longer employed by the defendant), *rev'd sub nom. Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 580 (1986) (not considering the evidentiary rulings).

> The most important change from the common law made by Rule 801(d)(2), apart from denominating admissions as non-hearsay rather than a hearsay exception, was the addition of subsection (D), making admissible against a party "a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship." Statements in this category, commonly known as "vicarious admissions," were not admissible under the traditional common law rule, which required "speaking authority" as codified in [Federal Rule of Evidence 801(d)(2)(C)].

*Zenith Radio Corp.*, 505 F. Supp. at 1239-40; *see also* Fed. R. Evid. 801(d)(2)(C) ("speaking authority," encompasses statements "made by a person whom the party authorized to make a statement on the subject"). In explaining the changes from the common law in adopting Rule 801(d)(2)(D) in 1972, the Advisory Committee explained:

> The tradition has been to test the admissibility of statements by agents, as admissions, by applying the usual test of agency. Was the admission made by the agent acting in the scope of his employment? ***Since few principals employ agents for the purpose of making damaging statements, the usual result was exclusion of the statement.*** Dissatisfaction with this loss of valuable and helpful

evidence has been increasing.  A substantial trend favors admitting statements related to a matter within the scope of the agency or employment.

Fed. R. Evid. 801(d)(2)(D) advisory committee's notes to 1972 proposed rules (emphasis added) (citations omitted).  And as a recent treatise explains:

> With respect to subject matter, **Rule 801(d)(2)(D) abandons the common law requirements "that the agent must have authority to make statements in a given area."  It is no longer the law, that a qualifying statement must be shown to have "been made by the employee at the instance of her employer**."  Instead, Rule 801(d)(2)(D) takes the "broader view," allowing statements to be admitted over a hearsay objection whenever an employee or agent "speaks on any matter within the scope of his agency or employment during the existence of that relationship."

*Wright & Miller's Federal Practice and Procedure: Federal Rules of Evidence* § 6776 (2026 ed.) (emphasis added) (citations omitted).  So, at common law—and in fact until the 1972 adoption of the Federal Rules of Evidence—an employee's statement could not be attributed to her employer as a statement of a party opponent absent speaking authority.  The Government thus cannot rely on 801(d)(2)(D)'s broad definition of a party opponent's statement to avoid the Confrontation Clause because it has not shown, and cannot show, that definition was the "understanding" at time of the adoption of the Clause.

And there is no evidence Defendants authorized their seven employees to speak to law enforcement at the Rodeway Inn on Defendants' behalf.  Nor is there evidence Defendants authorized their three employees to participate in government interviews or a grand jury pursuant to cooperation and immunity agreements.  So, under the Confrontation Clause, the statements are not attributable to Defendants as their own statements.  To the extent the Government seeks to offer them for their truth, they constitute testimonial hearsay and the Confrontation Clause bars their admission.

The cases upon which the Government relies are unpersuasive.  Neither *United States v. Romo-Chavez*, 681 F.3d 955, 961 (9th Cir. 2012), nor *United States v. Nazemian*, 948 F.2d 522, 525-26 (1996), involved statements made by a defendant's agent or employee and thus attributable to the defendant as purportedly non-hearsay pursuant to Rule 801(d)(2)(D).  The two district court cases, both decided before *Smith v. Arizona*, are likewise unpersuasive.  In *United States v.*

*Bhimani*, 492 F. Supp. 3d 376, 386-89 (M.D. Pa. 2020), the court admitted statements by an employee over the defendant's Confrontation Clause objection, relying on *Lilly v. Virginia*, 527 U.S. 116 (1999). *Id.* at 386-89. The *Bhimani* court explained, "as the *Lilly* decision recognized, firmly rooted hearsay exceptions are admissible over Sixth Amendment Confrontation Clause objections because the authors of that amendment 'obviously intended to respect certain unquestionable rules of evidence' in drafting the confrontation clause." *Id.* at 388-89 (quoting *Lilly*, 527 U.S. at 125)). So, *Lilly* analyzed the Confrontation Clause by considering whether "the evidence falls within a firmly rooted hearsay exception," such that the Framers would not have been expected to overturn it in drafting the Sixth Amendment. *See id.* at 124-25 (quotation marks and citation omitted). But *Lilly* was only a plurality opinion, and also predates *Crawford v. Washington*, 541 U.S. 36 (2004), which addressed *Lilly* and cast doubt on its reasoning. *See Crawford*, 541 U.S. at 56 & n.7. However, more importantly, the *Bhimani* court engaged in no independent analysis as to whether the hearsay exception found in Rule 801(d)(2)(D) was "firmly rooted." *See Bhimani*, 492 F. Supp. 3d at 388-89 ("We agree with the Fifth Circuit, the only court to decide the issue by published opinion, that hearsay exceptions under Rule 801(d)(2)(D) are firmly rooted." (quoting *United States v. Photogrammetric Data Services, Inc.*, 103 F. Supp. 2d 875, 885 (E.D. Va. 2000))). And the Fifth Circuit cases *Bhimani* relied upon did not acknowledge how Rule 801(d)(2)(D) broadened the party opponent's agent hearsay exception. Consequently, *Bhimani* fails to persuade.

In *United States v. Petraia Maritime Ltd.*, 489 F. Supp. 2d 90 (D. Me. 2007), the Confrontation Clause analysis occurred in a lengthy footnote. *See id.* at 95 n.4 ("Although it does not appear that the issue of the admissibility of a corporate defendant's vicarious statements has been decided by any court *post-Crawford*, courts which have addressed the admissibility of other categories of 801(d)(2) statements have found their admissibility to present no Confrontation Clause problems."). However, none of the footnote's cited cases squarely confronted whether Rule 801(d)(2)(D) admissions would comport with the Confrontation Clause as statements by the defendant. Instead, the cited cases either punted the question, or addressed other provisions of Rule 801(d), such as a statement "made by the party in an individual or representative capacity,"

11

*see* Fed. R. Evid. 801(d)(2)(A); or a statement "by the party's coconspirator," *see* Fed. R. Evid. 801(d)(2)(E).  And the cited cases appear to contradict *Smith v. Arizona*'s subsequent command the constitutional right to confrontation is not "dictated by state or federal evidentiary rules."  *See* 602 U.S. at 794 (cleaned up).

## CONCLUSION

For the above reasons, the Confrontation Clause bars admission of the Rodeway Inn Statements and the Cooperating Witness's Statements to the extent they are offered for the truth of the matter asserted.  So, the Court GRANTS Defendants' Motion in Limine No. 3 and DENIES the Government's Motion in Limine No. 1 in so far as it applies to those statements.  The Court therefore need not address Defendants' additional arguments regarding the translations or Federal Rule of Evidence 403.

The Court also GRANTS Defendants' motion for leave to file a reply, (Dkt. No. 1461), and GRANTS the motion to seal the cooperation agreements, grand jury testimony, and FBI forms regarding the Rodeway Inn interrogations, (Dkt. No. 1434).

On or before July 2, 2026, the designating party shall identify any portion of this Order that should remain under seal.

This Order disposes of Docket Nos. 1433, 1434, and 1461.

**IT IS SO ORDERED.**

Dated: June 29, 2026

JACQUELINE SCOTT CORLEY
United States District Judge

12